SC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anant Kumar Tripati, | No.  CV 18-00066-TUC-RM |
| Plaintiff, | |
| vs. | **ORDER** |
| Corizon Inc., et al., | |
| Defendants. | |

Plaintiff Anant Kumar Tripati, who is confined in the Arizona State Prison Complex, East Unit, in Florence, Arizona, filed a pro se civil rights Complaint under 42 U.S.C. § 1983[1] and an incomplete Application to Proceed In Forma Pauperis.[2]  (Doc.

---

[1]  On May 29, 2015, the Court issued an Order in *Tripati v. Corizon*, No. CV 13-0615-TUC-DCB, finding that Plaintiff did not require an accommodation in the form of a voice-activated typewriter to prosecute legal actions in court, Plaintiff lacked any physical basis for asserting blindness or inability to write legibly due to vision-related problems, and substantial evidence established that Plaintiff had the ability to write legibly and prosecute his legal actions in court without the need for extraordinary accommodation.  The Court ordered that reference to that order be included in future orders addressing new cases filed by Plaintiff.

[2]  Rather than submitting a certified six-month inmate trust account statement, Plaintiff submitted a one-page Inmate Bank Account sheet, which reflects that he has no spendable balance in his inmate trust account.  The Court will grant the Application, but notes that in a June 6, 2013 Inmate Letter Response, Defendant Julia Erwin incorrectly told Plaintiff that he could not proceed in forma pauperis and that he would not be considered indigent, unless he could show that his life was in danger, because he had accumulated three strikes under 28 U.S.C. § 1915(g).  (Doc. 1 at 24).  She further stated that the Arizona Department of Corrections would not provide Plaintiff an additional certified copy free of charge unless he paid in advance as stated in a letter from Director Ryan.  The determination whether Plaintiff has alleged an imminent danger of serious physical injury, which is the actual standard, is for the Court to make, not corrections officials.  Prison officials should provide copies of six-month inmate account statements

1, 3.)  Plaintiff also filed a motion for injunctive relief (Doc. 2), and four notices (Docs. 6, 7, 8, and 9).[3]

Although Plaintiff has at least "three strikes" under 28 U.S.C. § 1915(g),[4] the Court concludes that he alleges an imminent danger of serious physical injury based on his claim that since his transfer to the East Unit, effective treatment of his high blood pressure and pain has been discontinued, although both had been effectively managed while he was held at the Tucson Complex.  While Plaintiff has sufficiently alleged an imminent danger of serious physical harm such that he will be allowed to proceed in forma pauperis despite having three strikes, Plaintiff has not alleged facts to connect the discontinuation of previously effective treatment to specific Defendants.  Therefore, the Court will dismiss this portion of Count I for failure to state a claim.  The Court will also dismiss Counts III (in part), VII and VIII for failure to state a claim.  The Court will require Defendants Osler, Schletter, Moreno, and Ramos to respond to Count III (in part) of the Complaint.  The balance of Plaintiff's allegations in the Complaint will be dismissed as duplicative of claims raised in one or more of his previous cases and absent facts to support any intervening change in circumstances.

---

regardless whether a prisoner has accrued three strikes or they believe that he has alleged an imminent risk of serious physical injury.

[3]  Plaintiff's first three notices will be disregarded.  In the first notice, Plaintiff alleges that the Arizona Department of Corrections is failing to provide adequate healthcare via its private contractor, Corizon.  The second notice lists documents authored by Plaintiff available electronically.  The third is a table of cases filed by other inmates and in which Plaintiff claims various attorneys concealed, fabricated, or otherwise violated ethical or legal duties.  The fourth notice is discussed in connection with Count VII.

[4]  At least three of Plaintiff's prior prisoner actions have been dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted.  *See Tripati v. Schriro*, No. CV 97-0021-PHX-ROS (D. Ariz. May 22, 1997) (dismissed for failure to state a claim); *Tripati v. Felix*, No. CV 05-0762-PHX-DGC (D. Ariz. Oct. 14, 2005) (same); and *Tripati v. Thompson*, No. CV 03-1122-PHX-DGC (D. Ariz. Dec. 28, 2005) (same); *see also Tripati v. Schriro*, 541 U.S. 1039 (2004) ("As petitioner has repeatedly abused this Court's process, the Clerk is directed not to accept any further petitions in noncriminal matters from petitioner unless the docketing fee required by Rule 38(a) is paid and petition submitted in compliance with Rule 33.1."). In addition, Plaintiff is still subject to a 1993 pre-filing order in the Ninth Circuit Court of Appeals.

**I.      Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will not assess an initial partial filing fee. *Id.* The statutory filing fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

**II.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's

TERMPSREF

specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**III.    Complaint**

Plaintiff alleges that the Court has diversity and federal question subject matter jurisdiction. With respect to diversity subject matter jurisdiction, Plaintiff alleges that he is a British citizen and that all of the Defendants are citizens of Arizona, Tennessee, or Pennsylvania. Plaintiff alleges an amount in controversy in excess of $250,000.

In his eleven count Complaint, Plaintiff alleges claims for denial of constitutionally adequate medical care, violation of the Religious Land Use and Incarcerated Persons Act (RLUIPA), violation of legal mail rights, denial of access to the court, violation of equal protection, fraud upon the court, denial of access to records, cruel and unusual punishment in violation of the Eighth Amendment, takings in violation of the Fifth Amendment, and violations of state and federal Racketeer Influenced and Corrupt Organizations (RICO) Acts. Plaintiff seeks injunctive and other unspecified relief.

Plaintiff sues 56 Defendants, including Corizon Inc. ("Corizon"), a private corporation that has contracted with the Arizona Department of Corrections (ADC) to provide health care for ADC prisoners. Plaintiff also sues the following persons who are alleged to be Corizon policymakers: Dr. Calvin Johnson, B. Anderson Flatt, Tracy Nolan, Harold Orr, Jonathan Walker; and Scott Bowers. Further, Plaintiff sues Beecken, Petty, O'Keefe & Company (BPOC), a Chicago-based private equity management firm "founded in 1996 to invest in middle-market buy-out transactions, recapitalizations, and

growth platforms exclusively in the healthcare industry,"[5] as a Corizon financier.

In addition, Plaintiff sues the following current or former Corizon employees who are or were employed at ADC complexes: Regional Director Winfred Williams; Tucson Complex Medical Providers Christina Armenta, Dr. Lucy Burciaga; and Registered Nurses (RNs) Marlene Bedoya and Angela Martinez. Plaintiff also sues Tucson Complex Facility Health Administrator (FHA) Tamara Porter and grievance officer Lucy Lyons. Plaintiff sues Medical Providers at the Florence Complex as well, naming Dr. Glen Babich, Dr. Chris Johnson, and Joannah Grafton Burns as Defendants. Plaintiff also sues Corizon attorneys: Joseph Scott Conlon, Charles Stedman Hover III, Timothy Regis Grimm II,[6] Kristin Whitney Basha, and the law firm of Renaud, Cook, Drury, & Mesaros P.A.[7]

Plaintiff also sues Wexford Health Sources, Inc. ("Wexford"), which previously contracted with ADC to provide health care to ADC prisoners. In addition, he sues the following current or former attorneys and law firms that represent or have represented Wexford in previous cases filed by Plaintiff: Jonah Rappazzo, Brandi Blair, Edward Hochuli, Matthew R. Zwick, Samuel H. Foreman, and the law firms of Weber, Gallagher, Simpson, Stapleton, Fire & Newby, L.L.P., and Jones, Skelton, & Hochuli.[8]

In addition, Plaintiff sues various current or former ADC employees as follows:

---

[5] *See* http://bpoc.com (last visited Feb. 14, 2017).

[6] Plaintiff mistakenly spelled the last name as "Gimm" rather than "Grimm." (Doc. 1 at 2.)

[7] Hover, Conlon, Grimm, and Basha of Renaud Cook, represented Corizon and some of its employees in *Tripati v. Corizon*, No. 13-00615-TUC-DCB. The Ninth Circuit recently reversed and remanded dismissal of this case holding it was improper to dismiss the case as a sanction for Plaintiff's misrepresentations about his vision where those misrepresentations lacked a nexus to his underlying claims, *see* n. 2, *supra*. *Tripati*, CV 13-00615, Doc. 261.

[8] Zwick and Foreman of Weber Gallagher and Blair, Hochuli, and Rappazzo of Jones Skelton, represented Wexford in *Tripati v. Hale*, No. CV 15-00140-TUC-DCB, which Plaintiff filed in the Western District of Pennsylvania. *Tripati*, CV 15-00140, Doc. 43. The Pennsylvania court transferred the case to Arizona as the proper venue. *Id.* The Court dismissed Plaintiff's state RICO claim against Wexford for failure to state a claim. *Id.*, Doc. 56.

TERMPSREF

Director Charles Ryan; Florence Warden Kevin Curren; Legal Services employee Courtney Glynn; legal monitors Julia Erwin and Daryl Johnson; Grievance Officers Juliet Respicio-Moriarty, Heather Richardson, and Cheryl Dossett; Medical Directors Dr. David Robertson and Richard Pratt; Classification Officer Stacy Crabtree; Florence Complex Deputy Warden (DW) Anne Marie Smith-Whitson; Tucson Complex DWs Glen Pacheco, Panaan Days, and Anna Jacobs; and Corrections Officer (CO) IV Debra Han. Further, Plaintiff sues Florence Complex Mailroom Officers George Osler, Daniel Moreno, Jose Ramos, and Glenn Schletter.

Plaintiff also sues the current Arizona Attorney General Mark Brnovich, and current or former Assistant Arizona Attorneys General Susan Rogers, Karyn Klausner,[9] Kelley Joan Morrissey, and Paul Edward Carter.

Plaintiff describes Defendants Calvin Johnson, Flatt, Nolan, Orr, Walker, Bowers, Corizon, Wexford, Ryan, Erwin, Glynn, Rogers, Klausner, Daryl Johnson, Carter, Morrissey, Brnovich, Curran, and Smith-Whitson as policymakers for Corizon, ADC, or the Arizona Attorney General's Office.

**IV.  Duplicative Allegations Must Be Dismissed**

An in forma pauperis complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under 28 U.S.C. § 1915(e).  *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995); *see also McWilliams v. State of Colorado*, 121 F.3d 573, 574 (11th Cir. 1997) (repetitious action may be dismissed as frivolous or malicious); *Aziz v. Burrows*, 976 F.2d 1158 (9th Cir. 1992) ("district courts

---

[9]  According to information available online from the State Bar of Arizona, Ms. Rogers and Ms. Klausner no longer practice in this state.  Plaintiff has previously named Ms. Rogers, Ms. Klausner, Ms. Morrissey, and Mr. Carter as defendants in multiple cases filed in this Court.  *See Tripati v. Brewer*, CV10-00429-TUC-AWT (Rogers, Klausner, Morrissey, Carter), *Tripati v. Johnson*, CV11-00195-TUC-AWT (Rogers, Klausner), *Tripati v. Frame*, CV14-00026-TUC-DCB (Rogers, Klausner); *Tripati v. Carter*, CV14-02077-TUC-DCB (Rogers, Carter); *Tripati v. Johnson*, CV 11-00195-TUC-AWT (Carter); *Tripati v. Corizon*, CV 16-00282-TUC-DCB (Klausner, Rogers, Morrissey, Carter).  Those cases are closed.

may dismiss a duplicative complaint raising issues directly related to issues in another pending action brought by the same party"); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (repetitious litigation of virtually identical causes of action is subject to dismissal as malicious).

A significant portion of Plaintiff's allegations in the current Complaint duplicate claims and allegations asserted in one or more of Plaintiff's previous cases, in particular, *Tripati v. Corizon*, CV 16-00282-TUC-DCB, and *Tripati v. Johnson*, CV 11-00195-TUC-AWT. For that reason, Counts I (in part), II, IV, V, VI, and IX will be dismissed as duplicative without leave to amend.[10] Further, Counts X and XI will also be dismissed without leave to amend[11] because they are predicated on duplicative allegations, i.e., the

---

[10] In Counts I (in part) and II, Plaintiff alleges that he has been denied a vegetarian allergy diet to accommodate his claimed food allergies and his Hindu religion. In Count IV, he alleges denial of access to the court. In Count V, he alleges a denial of equal protection. In Count VI, he alleges wide-ranging fraud on the court in connection with several of his previously filed cases. In Count IX, he alleges a takings claim based on the loss of property that he raised repeatedly in previous cases.

[11] In these counts, Plaintiff asserts state and federal RICO claims based upon the use of confidential settlement agreements in prisoner litigation. The use of confidential, as opposed to public, settlement agreements to settle litigation does not violate state or federal law and there are strong public policy and judicial reasons that support keeping settlement agreements confidential. *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,* 265 F.3d 1294, 1308 (Fed. Cir. 2001); *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 855-56 (2d Cir. 1998); *FireClean LLC v. Tuohy*, No. CV16-00604-TUC-JAS, 2018 WL 1811712, at *11 (D. Ariz. Apr. 17, 2018); *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, No. C05-03117, 2007 WL 4166030, at *4 (N.D. Cal. Nov. 19, 2007); *see also Grubaugh v. Blomo ex rel. County of Maricopa*, 359 P.3d 1008, 1012 (Ariz. Ct. App. 2015) (noting that confidentiality requirements supported Arizona's strong public policy of encouraging settlement rather than litigation); *Miller v. Kelly*, 130 P.3d 982, 984-986 (Ariz. Ct. App. 2006); *Southern Pac. Transp. Co. v. Veliz*, 571 P.2d 696, 697-98 (Ariz. Ct. App. 1977). Further, where a requesting party makes a sufficient showing of relevance and need, disclosure of such agreements may be compelled. *See e.g., Phillips ex rel. Estates of Byrd*, 307 F.3d at 1212; *Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993) ("Confidential settlements benefit society and the parties involved by resolving disputes relatively quickly, with slight judicial intervention, and presumably result in greater satisfaction to the parties. Sound judicial policy fosters and protects this form of alternative dispute

TERMPSREF

falsification and/or concealment of information or evidence allegedly relevant to Plaintiff's claims in prior cases, which Plaintiff raised in CV 16-00282.

The balance of Plaintiff's allegations in the Complaint assert violations based on new or altered circumstances that are not duplicative—specifically, Plaintiff's allegations in Count I that effective treatment of his high blood pressure, and perhaps other serious medical conditions, was discontinued when he was transferred to the East Unit of the Florence Complex from the Tucson Complex. Plaintiff also alleges in Count I that he was recently diagnosed with a serious lung issue and indicates that he has been denied prescribed treatment for that condition. In Count III, Plaintiff alleges that Defendants Osler, Schletter, Moreno, and Ramos have violated his First Amendment rights concerning legal mail. In Count VII, Plaintiff alleges that he has been denied access to records in violation of state law. In Count VIII, Plaintiff asserts that he is entitled to release pursuant to *Brown v. Plata*, 131 S.Ct. 1919, 1940 (2011), based on constitutional violations asserted elsewhere in the Complaint, including some allegations that are not being dismissed as duplicative. The Court will screen these allegations below.

**V.    Failure to State a Claim Under § 1983**

In Counts I (in part), III, and VIII, Plaintiff asserts violation of his constitutional rights. To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific

resolution."); *Hannah v. General Motors Corp.*, 969 F. Supp. 554, 558 (D. Ariz. 1996) (quashing subpoena where plaintiffs failed to articulate a legitimate reason for production); *see also Abbott Diabetes Care*, 2007 WL 4166030, at *4 (redacting portions of settlement agreement not relevant to claims). Thus, the use of confidential settlement agreements in litigation is neither disfavored nor illegal, and the production of such agreements upon a showing of need alleviates any policy concerns regarding public access. Accordingly, in addition to being duplicative, Plaintiff's RICO claims are patently meritless.

injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Further, to state a claim against a defendant, "[a] plaintiff must allege facts, not simply conclusions [to] show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). For an individual to be liable in his or her official capacity, a plaintiff must allege injuries resulting from a policy, practice, or custom of the agency over which that individual has final policy-making authority. *See Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2002). Further, there is no respondeat superior liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights, absent more, does not make him liable. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor in his personal capacity "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045. Further, under Ninth Circuit law, a defendant can be liable for failure to act. *Id.* Generally, whether a defendant's denial of administrative grievances is sufficient to state a claim depends on several facts, including whether the alleged constitutional violation was ongoing, *see e.g.*, *Flanory v. Bonn*, 604 F.3d 249, 256 (6th Cir. 2010), and whether the defendant who responded to the grievance had authority to take action to remedy the alleged violation, *see Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009).

### A.    Count I (in part)

In the non-duplicative portions of Count I, Plaintiff alleges the denial of constitutionally adequate medical care for his high blood pressure, pain, and recently diagnosed serious lung condition. Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to

1    treat the condition could result in further significant injury or the unnecessary and wanton

2    infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v.*

3    *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

4           "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d

5    1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must

6    both know of and disregard an excessive risk to inmate health; "the official must both be

7    aware of facts from which the inference could be drawn that a substantial risk of serious

8    harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825,

9    837 (1994). Deliberate indifference in the medical context may be shown by a

10   purposeful act or failure to respond to a prisoner's pain or possible medical need and

11   harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may

12   also be shown when a prison official intentionally denies, delays, or interferes with

13   medical treatment or by the way prison doctors respond to the prisoner's medical needs.

14   *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

15          Deliberate indifference is a higher standard than negligence or lack of ordinary

16   due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor

17   gross negligence will constitute deliberate indifference." *Clement v. California Dep't of*

18   *Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*,

19   622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or

20   "medical malpractice" do not support a claim under § 1983). "A difference of opinion

21   does not amount to deliberate indifference to [a plaintiff's] serious medical needs."

22   *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care,

23   without more, is insufficient to state a claim against prison officials for deliberate

24   indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407

25   (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of

26   "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

27          Plaintiff alleges that until his transfer from the Tucson Complex, his serious

28   medical conditions, including high blood pressure and pain, were effectively treated, but

that effective treatment of these conditions, and of an intervening, but unidentified "serious lung issue," hasnot been provided at the East Unit.  Plaintiff sufficiently alleges that his high blood pressure is a serious medical need and that despite daily monitoring and medications for his blood pressure, it is not being effectively managed, as it had been while he was at the Tucson Complex.  However, he fails to specifically allege what care or medications he received at the Tucson Complex that he is not receiving in the East Unit and when, how, and by whom effective treatment was discontinued.  Similarly, although Plaintiff alleges that his "unbearable" pain was effectively managed at the Tucson Complex, and has not been effectively managed at the East Unit, he fails to specifically allege the care or medications he received at the Tucson Complex that has or have been discontinued in the East Unit and when, how, and by whom such treatment was discontinued.  Finally, Plaintiff alleges that he was recently diagnosed with serious lung issues, but he does not allege what he has been diagnosed with, any treatment prescribed for the condition, and when, how, or by whom he has been denied prescribed care.  As to all three conditions, Plaintiff fails to allege facts to support that prescribed treatment was not provided at the East Unit despite a Defendant's knowing, or having reason to know, that such denial of treatment posed a substantial risk of harm to Plaintiff.  For these reasons, the Court will dismiss these portions of Count I without prejudice.

### B.     Count III (in part)

In Count III, Plaintiff alleges that Defendants Osler, Schletter, Moreno, and Ramos have violated his legal mail rights and admitted in writing that they opened two pieces of incoming legal mail from Plaintiff's attorney, Fred Romero.  He also alleges that they confiscated three DVDs that contained research and evidence pertaining to Plaintiff's claims in court or evidence against "defendants."  (*Id.* ¶ 38.)   These Defendants will be required to respond to these portions of Count III.[12]

---

[12]     According to Plaintiff, these Defendants claimed to have opened the mail because it was not post-marked from California (presumably where Romero practices), and because they obtained "the lawyers permission."  (Doc. 1 at ¶ 37.)  Plaintiff alleges that "[t]he lawyer" denied that he granted permission and claimed that he had been threatened by Defendants, but did not deny that he had sent the mail to Plaintiff.  (*Id.*)

Plaintiff further alleges the following:  Erwin, Glynn, Dossett, and Curran prevented Plaintiff from communicating with counsel by "opening, seizing and publishing contents of [his] legal mail" concerning his claims in CV 16-00282, pending appeals, collateral challenges to his criminal convictions, pending petitions for review, and certiorari.  Curran, Erwin, and Glynn advised Plaintiff that they will continue to open and read his legal mail that he receives from the United Kingdom and Australia.  Finally, Plaintiff contends that "Defendants" have violated clearly established law and "had Brnovich put in place a policy that his employees not advise ADOC [not] to violate clearly established law, [and but for such policy] the misconduct would not be." (*Id.* ¶ 41.)  These allegations are too vague and conclusory to state a claim for relief.  Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action.  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pleaded.  *Id*.  Plaintiff fails to allege approximately when or how often incoming legal mail has been opened by any Defendant other than Osler, Schletter, Ramos, or Moreno, or whether such mail was clearly labeled as legal mail by the sender.  Plaintiff also fails to allege facts to support how the alleged opening of other incoming legal mail impeded his ability to seek relief as to his conviction or sentence or prejudiced him in any civil litigation.  Therefore, the Court will dismiss the portions of Count III asserted against Defendants other than Osler, Schletter, Ramos, and Moreno for failure to state a claim.

### C.   Count VIII

Plaintiff designates Count VIII as an Eighth Amendment claim for cruel and

---

Plaintiff also alleges that these Defendants issued a disciplinary charge to him, apparently in relation to his use of the prison mail system, and ADC's website reflects that Plaintiff was charged with conspiracy to commit a class B felony. *See* https://corrections.az.gov/public-resources/inmate-datasearch (last visited May 24, 2018). However, this charge was later dismissed.  (*See* Doc. 2 at 21, dismissing disciplinary because standard of proof not met).

TERMPSREF

1    unusual punishment, citing *Brown v. Plata*, 563 U.S. 493, 131 S.Ct. 1910, 1940 (2011),

2    which Plaintiff claims "provides for courts to release prisoners for continuous cruel and

3    unusual punishment." (Doc. 1 ¶ 59.) Plaintiff states that he, with Justin Thrasher

4    "discuss this extensively in Amazon Kindle Release From Custody for Continuous

5    Infliction Of Cruel And Unusual Punishment In Prisons, ASIN # B078X3h748 were we

6    discuss the infliction in ADOC." (*Id.*) Plaintiff claims that the conduct alleged in his

7    Complaint entitles him to release pursuant to *Brown*. He claims that "Defendants have

8    continued to deny [him] treatment for [his] serious medical needs, refused to allow [him]

9    to practice [his] religion, denied [him] access to courts, and singled [him] out." (*Id.* ¶

10   61.) He claims that "[t]hey have acted with deliberate indifference inflicting upon [him]

11   undue and unnecessary pain and suffering." (*Id.* ¶ 62.)

12          *Brown* addressed a remedial order entered in a California prisoner class action that

13   capped the number of prisoners in custody at 137.5% of capacity due to conceded

14   systemic deficiencies in medical and mental health care caused by overcrowding. The

15   Supreme Court upheld that order and found that it was not overbroad. The order at issue

16   in *Brown* does not even arguably apply to Arizona prisons or prisoners and Plaintiff is not

17   entitled to any relief pursuant to *Brown*. Otherwise, Plaintiff merely seeks release based

18   on the asserted violations alleged elsewhere in his Complaint, most of which are being

19   dismissed as duplicative and the remainder of which are being dismissed for failure to

20   state a claim. For the reasons discussed, Count VIII will be dismissed for failure to state

21   a claim.

22   **VI.    Failure to State a Claim under State Law**

23          Plaintiff designates Count VII as a claim for denial of access to records in

24   violation of Arizona Revised Statute § 39-291 and claims that statute "allows this court to

25   review this claim." (Doc. 1 ¶ 51.) He alleges that Defendant Ryan has a duty to provide

26   ADC prisoners with healthcare, education, food, safety, and security. He contends that if

27   a private entity performs any of these functions such functions do not thereby become

28   private. Plaintiff states that he asked Ryan for "contract monitoring reports, contract

- 13 -

compliance reports, policies, documents submitted with bids, grievances, CGAR Reports, CGAR CAPS, notices of substantial non-compliance, contract terminations, information reports, notice of claims, grants for programs for the nine months Wexford had the contract and for Corizon, Keefe, Trinity, Education for the period 1/1/16 to date."[13] Plaintiff alleges that prisoners Kenneth Wayne Reed and Carlos Bernal were provided records without cost, but that he was informed on January 16, 2018 that he would not be allowed to view the records until he paid in advance. Plaintiff states that he was so informed by Defendant Glynn, among others not named as Defendants. Plaintiff asserts that he was singled out for different treatment. Plaintiff was also told that he would not be given records about himself and that he should ask *Parsons*' counsel.[14] Plaintiff contends that *Parsons*' counsel does not have a duty to provide Plaintiff with the requested records, but that Ryan does have such a duty.

Plaintiff appears to have supplemented the allegations in Count VII with a notice (Doc. 9) filed on May 21, 2018. This notice contains two attachments. (Doc. 9 at 2.) The first is an August 22, 2016 cover letter from Liza McCain, a Program Projects Specialist for the Public Access Unit of ADC addressed to a "Mr. DelFin" concerning a public records request submitted by Inmate Kenneth Reed. The cover letter stated that records responsive to a request from Reed were attached with redactions of personal identifying information and information that, if released, could endanger the life or safety of persons. McCain stated that "Inmate Reed was given permission to **view** the Corizon contracts on a CD from the Director," but that Reed was not to print any of the information on the CD, although Reed was allowed to take notes on what he found. (*Id.*)

---

[13]  Plaintiff's refers to Keefe and Trinity, apparently two private entities that have contracted with ADC to provide certain services to prisoners. Plaintiff has not named either as a defendant in this case. Plaintiff's references to CGAR Reports and Caps refers to ongoing monitoring in *Parsons v. Ryan*, CV 12-00601-PHX-DKD (D. Ariz.), a prisoner class action concerning medical care provided to ADC inmates. On Oct. 14, 2014, a Settlement Stipulation was entered in *Parsons*, which was approved on February 25, 2015. *Id.* Doc. 1185. Ongoing proceedings concerning compliance with the terms of the Settlement Stipulation continue.

[14]  *See* n. 13, *supra.*

TERMPSREF

The second attachment to the notice is an Inmate Informal Complaint Response dated January 23, 2018 to Reed from Corrections Officer III Radford in which Radford reported that Central Office had agreed to allow Reed to view the Paralegal Services contract between the State of Arizona and Ms. Ulibarri, which was to be mailed on a CD to Radford's attention to set up a viewing schedule. (*Id.* at 3.)

Title 39 of the Arizona Revised Statutes is entitled "Public Records," but it contains only sections 101 to 221; there is no § 291. Section 39-121.01(D)(1) provides that, subject to § 39-121.03,[15] a custodian of records for a public body[16] may require a person requesting copies of public records to pay in advance for copying and postage charges. Subsection (D)(2) provides that if requested, the custodian of records of an "agency" shall furnish an index of records or categories of records that have been withheld and the reasons for withholding them from the requesting person, but the custodian "shall not" include in the index information that is expressly made privileged or confidential by statute or court order. Ariz. Rev. Stat. § 39-121.01(D)(2). However, "agency" as used in subsection (D)(2) "does not include . . . the state department of corrections." *Id.*

Plaintiff does not allege that Ryan is the custodian of public records. Nor, contrary to Plaintiff's assertion, has Plaintiff identified any basis for his claim that Ryan has a duty to disclose ADC records to him. Further, Arizona law specifically allows a custodian of records to require payment in advance for costs. Accordingly, Plaintiff has failed to state a claim for a violation of state law in Count VII.

To the extent that Plaintiff claims that he was treated differently than two other

---

[15]  Section 39-121.03 concerns requests for copies, printouts, or photographs for commercial purposes.

[16]  Defined as "this state, any county, city, town, school district, political subdivision or tax-supported district in this state, any branch, department, board, bureau, commission, council or committee of the foregoing, and any public organization or agency, supported in whole or in part by monies from this state or any political subdivision of this state, or expending monies provided by this state or any political subdivision of this state." Ariz. Rev. Stats. § 39-121.01(A)(2).

prisoners, he does not allege that he sought the same records as those sought by Reed, and fails to describe what records were sought by Inmate Bernal.  Thus, Plaintiff's notice, in conjunction with his allegations, do not support a claim under the Equal Protection Clause, either.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (plaintiff asserting "class of one" equal protection claim must "allege[] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"); *see also SeaRiver Maritime Financial Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002)..   Therefore, Count VII will be dismissed.

**VII.   Claims for Which an Answer Will be Required**

In Count III (in part), Plaintiff alleges that Defendants Osler, Schletter, Moreno, and Ramos admitted in writing that on July 20, 2017, they opened two pieces of incoming legal mail from Plaintiff's attorney, Fred Romero.  Plaintiff also claims that "[t]hey took privileged communications from these mail [sic] and published them on ADC computers." (Doc. 1 ¶ 37.)  And according to Plaintiff, Defendants Osler, Schletter, Moreno, and Ramos claimed to have opened the mail because it was not post-marked from California (presumably, the state where Romero practices) and because they had obtained "the lawyers permission."  (*Id.*)   He also alleges that they confiscated three DVDs from him concerning legal matters.  These Defendants will be required to respond to Count III (in part).  *See Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204 (9th Cir. 2017) (allegation that legal mail opened outside prisoner's presence on two occasions stated a claim).

**VIII.  Plaintiff's Motion for Injunctive Relief**

As noted above, Plaintiff has filed a motion for injunctive relief.  A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008).  A preliminary injunction also is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the

burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter*, 555 U.S. at 24 (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right". A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

In his motion, Plaintiff initially asks the Court to order Defendant Erwin, or other appropriate ADC officials, to provide him with a six-month inmate trust account statement. The Court will deny this request as moot, as the Court is granting Plaintiff leave to proceed in forma pauperis based on his submissions.

Plaintiff also seeks injunctive relief as to treatment for his high blood pressure. As discussed herein, Plaintiff fails to allege facts to support that any Defendant has acted with deliberate indifference to his blood pressure. Indeed, in his Complaint, Plaintiff

states that he is being provided several blood-pressure medications, albeit not, according to Plaintiff, the same medications he previously received.[17])  Plaintiff has not alleged or shown a likelihood of success on the merits of this claim or that there are serious questions going to the merits such that he is entitled to relief under the sliding-scale test. Accordingly, the Court will deny Plaintiff's motion without prejudice.

## IX.    Warnings

### A.    Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis.  Failure to comply may result in dismissal of this action.

### B.    Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### C.    Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit an additional copy of every filing for use by the Court.  *See* LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.    Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including

---

[17]  Plaintiff alleges that he receives Cardura, Lisinopril, Amlodipine, and Clonipin, which, according to information available at https://medlineplus.gov/druginfo/meds, are used to treat high blood pressure (last visited May 25, 2018).

TERMPSREF

these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis.  Failure to comply may result in dismissal of this action.

**IT IS ORDERED:**

(1)    Plaintiff's Application to Proceed In Forma Pauperis (Doc. 3) is **granted**.

(2)    As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(3)    Counts I (in part), II, IV, V, VI, X, and XI are **dismissed** with prejudice from this case as duplicative.

(4)    Counts I (in part), III (in part), VII, and VIII of the Complaint (Doc. 1) are **dismissed** for failure to state a claim without prejudice and with leave to amend.

(5)    Every Defendant except Defendants Osler, Schletter, Moreno, and Ramos is **dismissed** without prejudice.

(6)    Defendants Osler, Schletter, Moreno, and Ramos must answer Count III (in part).

(7)    The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Osler, Schletter, Moreno, and Ramos.

(8)    Plaintiff must complete[18] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not

---

[18] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works.  Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

TERMPSREF

1  provide service of process if Plaintiff fails to comply with this Order.

2      (9)    If Plaintiff does not either obtain a waiver of service of the summons or

3  complete service of the Summons and Complaint on a Defendant within 90 days of the

4  filing of the Complaint or within 60 days of the filing of this Order, whichever is later,

5  the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m);

6  LRCiv 16.2(b)(2)(B)(ii).

7      (10)   The United States Marshal must retain the Summons, a copy of the

8  Complaint, and a copy of this Order for future use.

9      (11)   The United States Marshal must notify Defendants of the commencement

10  of this action and request waiver of service of the summons pursuant to Rule 4(d) of the

11  Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this

12  Order.  **The Marshal must immediately file signed waivers of service of the**

13  **summons.  If a waiver of service of summons is returned as undeliverable or is not**

14  **returned by a Defendant within 30 days from the date the request for waiver was**

15  **sent by the Marshal, the Marshal must**:

16          (a)    personally serve copies of the Summons, Complaint, and this Order

17      upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure;

18      and

19          (b)    within 10 days after personal service is effected, file the return of

20      service for Defendant, along with evidence of the attempt to secure a waiver of

21      service of the summons and of the costs subsequently incurred in effecting service

22      upon Defendant.  The costs of service must be enumerated on the return of service

23      form (USM-285) and must include the costs incurred by the Marshal for

24      photocopying additional copies of the Summons, Complaint, or this Order and for

25      preparing new process receipt and return forms (USM-285), if required.  Costs of

26      service will be taxed against the personally served Defendant pursuant to Rule

27      4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the

28      Court.

**TERMPSREF**

1    (12)   **A Defendant who agrees to waive service of the Summons and**

2  **Complaint must return the signed waiver forms to the United States Marshal, not**

3  **the Plaintiff.**

4    (13)   Defendants must answer the Complaint or otherwise respond by

5  appropriate motion within the time provided by the applicable provisions of Rule 12(a) of

6  the Federal Rules of Civil Procedure.

7    (14)   Any answer or response must state the specific Defendant by name on

8  whose behalf it is filed.  The Court may strike any answer, response, or other motion or

9  paper that does not identify the specific Defendant by name on whose behalf it is filed.

10    (15)   Plaintiff's motion for injunctive relief (Doc. 2) is **denied**.

11    Dated this 12th day of June, 2018.

15    Honorable Rosemary Márquez
16    United States District Judge

TERMPSREF