

ANANT KUMAR TRIPATI 102081
POST OFFICE BOX 5000
FLORENCE,  ARIZONA 85132
Plaintiff Pro Per

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

ANANT KUMAR TRIPATI,

      Plaintiff,

Vs.

CORIZON INC; DR. CALVIN JOHNSON;WOODROW  MYERS;
HAROLD ORR;B. ANDERSON FLATT; TRACY NOLON;
JONATHAN WALKER; KAREY WITT;SCOTT BOWERS;
BECKEN PETTY O'KEEFE & COMPANY;LUCY LYONS;
DR. WINFRED WILLIAMS;DR. LUCY  BURCIAGA;
DR. CHRISTOPHER JOHNSON' CHRISTINA       ARMENTA;
JOANNAHGRAFTON-BURNS; TAMARA  PORTER;
ANGELA MARTINEZ; MARLENE BEDOYA;   JULIA ERWIN
; PANNAN DAYS;JULIETTE  RESPICIO-MORIARTY; DEBRA
HAN; HEATHER RICHARDSON; TIMOTHY LAWRENCE;
CHERYL DOSSETT; ELIZABETH VALENCIA; DR. DAVID
ROBERTSON; STACY CRABTREE; ANNE MARIE
SMITH-WHITSON;GLEN PACHECHO; DARYL JOHNSON;
ANNA JACOBS; CHARLES RYAN; BETTY ULLIBARRI;
MARK BRNOVICH; SUSAN ROGERS; KARYN KLAUSNER;
KELLEY JOAN MORRISSEY; PAUL EDWARD CARTER;
DR. GLEN BABICH; WEXFORD HEALTH SOURCES;
RICHARD PRATT; COURTNEY GLYNN; KEVIN CURRAN;
GEORGE OSLER; DANIEL MORENO; JOSE RAMOS;
GLENN SCHLETTER; JOSEPH SCOTT CONLON;
JONAH RAPPAZZO; BRANDI BLAIR; EDWARD HOCHULI;
CHALRES STEDMAN HOVER III; TIMOTHY REGIS GRIMM II;
KRISTIN WHITNEY BASHA; SAMUEL H. FOREMAN;
RENAUD COOK DRURY MESAROS PA;
WEBER GALLAGHER SIMPSON STAPLETON FIRE &
NEWBY LLP; JONES SKELTON HOCHULI;

Defendants.

CV 18- 0066RM

FIRST AMENDED
VERIFIED COMPLAINT

Page | 1

## JURISDICTION

1. This court has jurisdiction under 28 U.S.C. 1332 and 42 U.S.C. 1983. I am a British citizen and defendants of Arizona, Tennessee and Illinois. The amount in controversy exclusive of interest and costs exceeds $250,000. The events happened in the Lewis, Eyman, Florence, Douglas, Tucson complexes. This complaint relates to conduct May 22, 2016 to date.

## DEFENDANTS

2. CORIZON INC; is the health care provider in ADOC. DR. CALVIN JOHNSON; WOODROW MYERS; HAROLD ORR;B. ANDERSON FLATT;TRACY NOLON; JONATHAN WALKER; KAREY WITT;SCOTT BOWERS; are policy makers Of Corizon Inc in Tennessee. BECKEN PETTY O'KEEFE & COMPANY is the financial backer of Corizon without whom there would be no Corizon. Hereinafter BPOC

3. LUCY LYONS is a Corizon nurse; DR. LUCY  BURCIAGA a Corizon provider ; CHRISTINA ARMENTA a Corizon provider; TAMARA  PORTER a Corizon nurse; ANGELA MARTINEZ a Corizon nurse; in Tucson. DR. CHRISTOPHER JOHNSON DR. GLEN BABICH; Corizon provider; JOANNAH GRAFTON-BURNS Corizon provider in East Unit. DR. WINFRED WILLIAMS Corizon Regional Director.

4. ANNE MARIE SMITH-WHITSON Deputy Warden East Unit. KEVIN CURRAN Warden  Florence ; GEORGE OSLER Mailroom officer Florence ; DANIEL MORENO Mailroom officer Florence; JOSE RAMOS Mailroom officer Florence;   GLENN

SCHLETTER Mailroom officer Florence; MARLENE BEDOYA registered nurse; Debra Han was CO IV    PANNAN DAYS Deputy Warden; GLEN PACHECHO Deputy Warden; ANNA JACOBS Deputy Warden in Tucson. JULIA ERWIN    Legal Monitor ADOC ;JULIETTE  RESPICIO-MORIARTY Medical appeals ADOC ; HEATHER RICHARDSON Appeals ADOC; TIMOTHY LAWRENCE Regional Director ADOC ;  CHERYL DOSSETT Appeals ADOC ; ELIZABETH VALENCIA Appeals ADOC ; DR. DAVID ROBERTSON Medical manager ADOC ; STACY CRABTREE Classification Officer ADOC ; DARYL JOHNSON Legal Monitor ADOC ; CHARLES RYAN Director ADOC ; SUSAN ROGERS Counsel ADOC; KARYN KLAUSNER Counsel ADOC ; COURTNEY GLYNN Counsel ADOC; RICHARD PRATT Medical Director ADOC BETTY ULLIBARRI paralegal ADOCMARK BRNOVICH Attorney general; KELLEY JOAN MORRISSEY Asst. AG; PAUL EDWARD CARTER Asst. AG. , WEXFORD HEALTH SOURCES was healthcare provider. JOSEPH SCOTT CONLON; CHALRES STEDMAN HOVER III; TIMOTHY REGIS GRIMM II; KRISTIN WHITNEY BASHA; RENAUD COOK DRURY MESAROS PA; counsel Corizon. JONAH RAPPAZZO; BRANDI BLAIR; EDWARD HOCHULI;SAMUEL H. FOREMAN;WEBER GALLAGHER SIMPSON STAPLETON FIRE & NEWBY LLP; JONES SKELTON HOCHULI; Counsel Wexford.

**PREVIOUS LAWSUITS**

5.  Plaintiff filed more than three complaints but as ADOC has lost Plaintiff's records he is unable to provide the information.

6. Tripati v Johnson et al CIV 11-0195 in this court. This was decided on summary judgment.

7. Tripati v Corizon CIV 13-0615 pending in this court Relates to conduct to May 2015

8. Tripati v Hale CV 15-0140 appeal reinstated.

9. Tripati v Corizon CV 16-0282 pending Relates to conduct till April 2016

## COUNT ONE VIOLATION OF EIGHTH AMENDMENT

## RELATES TO HEALTH CARE

## MY DIAGNOSED MEDICAL CONDITIONS

10. Plaintiff has been diagnosed with high blood pressure, hypoglycemia, urology issues, shakes, tremors, and food allerges to soy, wheat, daiy, beans, gluten, allergies, chronic pain, asthma, bronchial asthma, and possibly COPD.

11. Since Plaintiff has been placed on clonidine Plaintiff is having nightmares and defendants refuse to do anything to give Plaintiff something else.

## PRESCRIBED TREATMENT NOT FOLLOWED

## ABILITY TO CONTROL AND EFFECT

12. High blood pressure is both preventable and construable, left untreated it can cause heart atttack, heart failre, kidney falure, stroke, dementia and loss of vision. It is caused by sensitivity to salt, diet, and pain. People with high blood pressure have other medical conditions also.

13. Pain, shakes, tremors can be controlled by medcation. Plaintiff has been denied treatment for these conditions.

14. Plaintiff's blood pressure is on an averaaage 170/100 and generally over 150/90 and is monitored daily. However monitoring does not do anything if the pain, shakes, tremors are no treated.

15. Since June 2017 Plaintiff has been given Cadura, Finnasteride, Omeraprazole, Amlodipine, Cetrizine, Senna, Flonase, Losarton Potassium and Alvesco and someother medication.

## MEDICATION SINCE JUNE 2017 NOT HELPING

16. Monitoring by Corizon shows that the medications since June 2017 are not helping. Instead every time his blood pressure is taken is high and Plaintiff is given clonodine. It drops his blood pressure and it rises again.

17. Corizon providers refuse to review his medical record and see what treatment Corizon providers previously provided helped and does not help. They are giving Plaintiff the treatment that has not helped.

## DIET SINCE JUNE 2017

18. In June 2017 Dr. Chizoba Ngwube ordered an allergy diet for Plaintiff. She advised Plaintiff that she could not order the diet Plaintiff needs and ordered August 28, 2014 because Dr. David Robertson shall deny that diet. She also advised Plaintiff she could

not order Plaintiff receive an allergy diet without salt because it is against ADOC policy to order such a diet.

19. East Unit for a while gave Plaintiff a vegetarian diet without any allergy items and without salt. They have been directed    not to give Plaintiff that diet. As Plaintiff as a Hindu cannot eat meat Plaintiff  has not been able to eat the food that he is being given.

## DEFENDANTS KNEW EAST UNIT COULD NOT TREAT PLAINTIFF'S MEDICAL CONDITION

20. When Plaintiff was moved to East Unit Defendants knew that East Unit could not treat Plaintiff's medical condition because East Unit medical is not open 24 hours and Plaintiff could not continue to receive medication every eight hours as ordered August 28, 2014 and when Plaintiff received until he came to East Unit. They knew this posed a substantial risk of harm to Plaintiff.

21. February 1, 2018 and May 28, 2018 Plaintiff was advised he has bronchial asthma, COPD and other lung related issues due to second hand smoke. Plaintiff was previously on prednisone which relieved this condition and since he has been off prednisone his breathing problems ensued. However East Unit medical staff refuses to give Plaintiff prednisone.

## CHANGE BY CORIZON THAT HELPED

22. August 28th, 2014 the Chief Clinical Officer of Corizon changed Plaintiff's medication regime to every eight hours. She ordered Plaintiff receive prednisone, gabapentin, zyrtec,

doxazosin, finnasteride, flonase, senna and that helped Plaintiff's medical condition. She

also orderd there is no need for Plaintiff to eat meat as required by his religious tenets.

23. January 25, 2015 the Medical Director of ADOC C14119014 ordered  Plaintiff receive

that diet but Angela Martinez, Dossett, Valenica, Respicio-Moriarty, Robertson upon the

directives of Carter, Erwin, Richardson directed Plaintiff not be given that die.

24. Han was directed on April 21, 216 by Dossettt to file Plaintiff's grievance concerning her

conduct. Aware through e.mails that Plaintiff had been publishing  adverse information as

to ADOC, at the urging to Daryl Johnson, Klausner and others Han retaliated against

Plaintiff. She had Days, Pachecho, Armenta, Porter, Burciaga, Crabtree  for non medical

reasons, change Plaintiff's course of medical treatment, discharge Plaintiff from inpatient

care and ransfer Plaintiff to East Unit. They at the time were aware that East Unit cannot

take care of Plaintiff's medical needs.

25. Grafton, Chris Johnson, Babitch aware o the treatment Plaintiff received from Corizon in

Tucson and whch helped , refused to continue with that treatment. Smith-Whitson aware

that East Unit could not provide the treatment Plaintiff received in Tucson refused to send

Plaintiff to a unit where he could continue to receive that treatment.

## THE IMPACT OF NOT GETTING THE TREATMET

26. As Plaintiff is not getting that treatment his blood pressure i s high, pain gone worse, he is

falling down a few times each week, his breathing problems gone worse. Br. Babich has

directed  NP Karey not to reat Plaintiff's pain and not have Plaintiff seen by specialists, as

the costs is expensive and not give Plaintiff the treatment he received in Tucson which

helped.

27. Robertson, Dossett, Pratt aware of the conduct in this count affecting Plaintiff's serious medical needs, though they have had the authority to, refused to take any action to ensure Plaintiff receive the treatment that managed his condition.

## **FRAUD UPON THE COURT**

28. Carter, Klausner, Daryl Johnson, Burciaga, Williams, Respicio Moriarity, Robertson did not advise Judge A. Wallace Tashima in CIV 11-0195 that due to Plaintiff being on prednisone the RAST test results were invalid. They knew this fact that prednisone alters RAST results. Plaintiff lodged a complaint against Williams with the Arizona Medical Board which found probable cause to discpline him.

29. They submitted this material false evidence to Judge Tashima with knowledge that it was material and false. Had they adised the court that the results were inaccurate due to prednisone the results would have been different and Plaintiff would have prevailed.

30. When Plaintiff eats food with soy, wheat, dairy, beans, peanuts, gluten his blood pressure and blood sugar drop, he vomits and nearly died five times. He was hospitalized five times and has had about 40 medical emergencies in prison.

## **POLICIES OF CORIZON AND ADOC**

31. Defendants, and each of them, through e.mails sent by Daryl Johnson and Julia Erwin are aware that Plaintiff has written extensively about the policies and practices of Corizon/ADOC/ARIZONA Attorney General. He has authored Amazon Kindle books:

*Litigation Fraud By Government Counsel In Civil Litigation.

*Administrative Remedies In Prison.

*Release As A Remedy For Continuous Cruel And Unusual Punishment.

32. A few other books An Inexplicable Deformity (Discussing ADOC and Corizon) Remedy And Redemption (Discussing fraud upon the court by defendants) and others are due to be released by SureshotBooks.com

33. It is the policy and practice of ADOC/Corizon to delay/deny treatment for inmate serious medical needs. This was evidenced by a recent contempt citation by Magistrate Judge David Duncan against Corizon. During a hearing Ryan blamed Corizon for not providing inmates with treatment for their serious medical needs. Ryan aware of this and to ensure inmates are denied treatment gave Corizon $3,600,000 as a bonus and also reduced penalties for not providng treatment. Ryan also renewed Corizon's contract.

34. Corizon has no incentive of complying with the contract and providing inmates care that meets constitutional standards because it is getting rewarded. This is one of the factors why Plaintiff has not received the care.

35. Defendants and each of them have failed to perform their delegated duties, they have failed to exercise the power and authority they have, acting with deliberate indifference to Plaintiff's serious medical needs, causing him unecessary pain and suffering.

36. Defendants each of them knew or should have known that when a medical unit is not open 24 hours, Plaintiff cannot get medication every eight hours; they should not have changed the medication and should have continued with the care and as ordered by the Parsons injunction.

37. Plaintiff has since August 28, 2014 been complaining that he needs to be seen by specialists for his urology, neurology, pain, shakes, tremors, allergies and memory issues.

Due to Defendants refusal to have Plaintiff seen by specialists, and Defendants are themselves not specialists, Plaintiff's medical condition has worsened.

38. Nurses, doctors and other employees of Corizon  tell Plaintiff and every inmate that even if people die Corizon/ ADOC will not do anything. Their hands are tied and when they do anything, submit paperwork for consultants, surgery, order medication that  have been effective  supervisors refuse. The denial/delays are done for non-medical reasons and for the explicit purpose of making money for Corizon. Bonuses are paid to those involved in the process. Plaintiff has  been informed that payments made by Corizon reflect this.   In order to insulate itself and staff from liability, Corizon/ADOC  have  a "group of doctors" who sign off in the delays/denials for non-medical reasons without actually examining the patient/inmate. Plaintiff has  been informed and testimony in Parsons by  Corizon doctors show medical records show this. Their decisions, made by these group of doctors are not medical decisions.

39. ADOC/  Corizon is able to do this because most inmates do not file suit and when and if litigation is initiated, Corizon is able to delay the litigation for years. The savings and money made by Corizon implementing the policy is far greater than the total sums of money spent providing the care necessary. I have been informed examination of the lawsuits against Corizon, the sums spent defending these/paying the judgments when compared with the costs of care denied if they would have been provided support this.

40.    ADOC/  Corizon's unwritten policies and practices conflict with its written policies and guidelines and the written contracts Corizon has to provide inmates with health care.

## REFUSAL TO TREAT DIAGNOSED CONDITIONS

41. Chris Johnson,  Grafton,  , Smith-Whitson, Respicio-Moriarity, Dossett, Richardson, Crabtree,  Valencia,  Robertson, and Williams have refused to provide treatment for diagnosed conditions, treatment which was given and which managed Plaintiff's condition until their refusal.

42. **Chris Johnson,    Grafton,    , Smith-Whitson, Respicio-Moriarity,    Dossett, Richardson, Crabtree,  Valencia,  Robertson,** and Williams engaged in the above conduct for the reasons above, due to the policies established by Corizon and to save Corizon money. ~~Catsaros, Moyse, Williams and Harvey~~ *EACH DEFENDANT* acted with deliberate indifference to Plaintiff 's serious medical needs inflicting upon Plaintiff unnecessary pain and suffering       pursuant to the pursuant to the prevailing customs, traditions and policies of Corizon.

43. Corizon Inc. and its Chief Executive Officer, Chief Medical Officer,  agents directed these activates from Brentwood They directed *EACH DEFENDANT* ~~Williams and~~ ~~Catsaros~~ to engage in  the conduct. Corizon, CEO of Corizon, CMO Corizon have put in place an unofficial policy of ensuring that inmates are denied medical care and that the care is not provided as mandated by the contract. Instead it is their unofficial policy and custom to make certain money is saved by denying/delaying medical care to inmates.

44. They have implemented this policy to save money by delaying/denying medical care for serious medical needs for non-medical reasons and in breach of the contract. They did this because very few inmates force the issues to be litigated and litigation taken a long time.

The monies they save are substantially greater than the amount of money they have to expend providing every inmate the treatment that the contracts mandate they provide.

45. Defendants acts of omissions are actionable to the same extent as acts of commission. They knew or reasonably should have known they were violating the eighth amendment , denying/delaying medical care for serious medical needs, were not taking actions for medical reasons but just to save Corizon money.

46. They had both the duty to act and the power and authority to correct the violations. They failed to act on prior complaints and knew violations were predictable. Defendants who are responsible for setting policy gave tacit authorization because the prime motivation was to save money for Corizon and at the expense of delaying/denying medical care for serious medical needs.

47. Each of these defendants acting under color of state law deprived and continues to deprive Plaintiff of his  right to be free of cruel and unusual punishment by inflicting upon Plaintiff unwanted pain and suffering and denying/delaying Plaintiff treatment for diagnosed conditions for non-medical reasons.

48. They injured Plaintiff as a direct and proximate cause thereof. Plaintiff  has problems walking without pain which is unbearable,   increased shakes, tremors, chest pain, cannot sleep, consistent allergy headaches, have been constipated for over 40 days. They acted with deliberate indifference and their conduct serves no legitimate penal goal.

49. Though Dossett, Porter, Lyons, Smith-Whitson, Pachecho, Bedoya, Days, Jacobs, Han, Erwin, Respicio-Moriarity, Richardson, Valencia, Robertson, have apparent authority to grant Plaintiff  relief, acting pursuant to Ryan's policy to deprive inmates of their eighth

amendment rights, they have refused to exercise that authority, and upon the acquiesce of Carter.

## DELIBERATE INDIFFERENCE

50. Defendants have acted with deliberate indifference to Plaintiff 's diagnosed serious medical needs, acting in accordance with Corizon and Ryan's customs, traditions, policies, inflicting upon Plaintiff unwanted pain and suffering.

51. Had BPOC not provided Corizon financial support after it knew or should have known that Corizon and its principals have had a history of delaying/denying treatment to inmates for their serious medical neeeds, none of the conduct would exist.

52. Had Ryan after becoming privy through reports, audits of Corizon that in Arizona Corizon was delaying/denying treatment to inmates for their serious medical needs, not given Corizon a $3,000,000 plus bonus and had he not reduced penalties, Corizon would not contnue with the conduct.

## INJURY

Plaintiff  has had to continually suffer unbearable pain, have pain in his  left side all the way to Plaintiff's head, fall down three to five times each week, cannot sleep, is constipated, cannot eat, has pain and problems urinating, has had to refuse treatment because by giving the 24 hour dosage in 8 to 9 hours, the medication is not effective to manage Plaintiff 's condition.

## ADMINISTRATIVE REMEDIES

Plaintiff  exhausted administrative remedies by submitting the appeal to the Director.

## COUNT TWO

## VIOLATION RLUIPA This Count Relates To RELIGION

## WHY THIS IS NOT PRECLUDED

53. Paul Carter concealed from the court that prednisone rendered the RAST results invalid. A April 26, 2016 e.mail from Erwin to Brennan that Plaintiff saw for the first time shows that this was don pursuant to their scheme to defraud the court.

54. This issue could not be raised in CIV 11-0195 because Carter perpetrated frud uon the court. He concealed from the Court the fact that the RAST test was inaccurate as Plaintiff was on prednsone and prednisone renders RAST invalid, a fact set foth by the Chief Clinical Officer of Corizon on August 28, 2014.

55. Plintiff is not asking for anythng out of the ordinary but a vegetarian diet that also accomodates his medical needs as ordered Auust 28, 2014. Days, Pachecho, Robertson Dossett, Richardson, Williams, Graton, Respicio-Moriarity, Glynn and Chris Johnson and each of them have refused to order Plaintiff receive the diet that comports to his religious tenets.

56. Plaintiff has no alternative means of exercising his rights as the Hindu faith forbids eating flesh, there is no valid rational connection for Defndants not to give Plaintiff that diet. No compelling government interest s served by Plaintiff not being given the diet and this is not the east restrictive means.

57. Defenants have done so pursuant to Ryan's policies and practices to impede the ability of inmates to practice their religions

## INJURY

Plaintiff    is forbidden by Hinduism from eating meat and defendants refuse to accommodate his  religious and medical needs. The vegetables are readily available and Jewish, Muslim inmates readily get the vegetables.

## EXHAUSTION

Plaintiff exhausted remedies.

## COUNT THREE

## VIOLATION OF FIRST AMENDMENT THIS COUNT RELATES TO COUNSEL

58. Every piece of legal mail Plaintiff receives has the name of a lawyer with is/her address. Osler, Schletter, Moreno, Ramos admitted in writing that on July 20, 2017 they opened two pieces of legal mal to Plaintiff from attorney Fred Romero properly adressed.  This is not the fist time this has happened and previously Plaintiff believes they were opened in error.

59.  Osler, Schletter, Moreno, Ramos  disciplined Plaintiff and the ticket was dismissed.

60. They took privileged communications from that mail and published them on ADC computers. According to them they opened the legal mail as the post mark was not from California and they obtained the lawyers permission. However the lawyer states he gave no such permission. According to counsel they clled him and threatened him unless he authorized them to opening the mail.

61. At no time has Plaintiff waived his attorney/client privilege.

62. Defendants seized 3 DVD's with research and evidnce relating to pending cases, as well as other acts and evidence against Defendants.

63. Erwin, Glynn, Dossett, Curran by authorizing the opening, seizing, publishng the contents of his  legal mail from counsel  have prevented Plaintiff from communicating with counsel concerning this case, CV 16-00282, pending appeals, pending challenges to his criminal convictions. Specifically Plaintiff's legal mail has been opened about eight times in Plaintiff's absence  and the research as well as evdence in those destroyed/lost, thereby preventing Plaintiff from adequately presenting his claims. As a direct consequence a great deal of evidence/research, core to these cases, have been seized by Defendants.

64. Erwin, Glynn, Dossett, Curran specifically advised Plaintiff they shall open privileged communications from Plaintiff's  Solicitors in the United Kingdom and Australia concerning his transfer pursuant to the COE Treaty. They opened and continue to do so.

65. Defendants and each of them have violated their own policies whch forbid opening of legal mail and clearly estabilshd federal law.

### INJURY

Plaintiff is unable to obtain advice from counsel as to his treaty transfer, CIV 16-00282 which was dismissed, certiorari which has not been filed, pending appeals and challenges to his criminal convictions.

### EXHAUSTION

Plaintiff exhausted remedies.

### COUNT FOUR

### CHRISTOPHER 536 U.S.  415 (2002) CLAIM RELATES TO LEGAL ACCESS

66. E.mails and records destroyed by Defendants which they had the duty to preserve and which they knew were potential evdience that pertain to the allegations in this complaint,

including draft e.mails which are 801(d)(2) statements were intentionally destroyed by Defendants. With the destroyed e.mails and documents Plaintiff would have prevailed in CIV 11-0195 chalenging his denial of a medical/religious diet and retaliation for filing grievances; He would have prevailed in CIV 15-0140 where he was challenging Wexford haveing a practice of delaying/denying treament for serious medical neeeds; he would have prvailed in CIV 16-00282 where he complains of being denied treatment for his serius medical needs, etaliaton, fraud upon the court; he would have prevailed in CIV 01-18741; 02-14210; 02-14211; 02-15874; 99-20757 where he complains that ADOC has the authorized establshed procedure of losing inmate property and denying them compensation.

## INJURY

Plaintiff's claims have been defeated due to the foregoing.

## EXHAUSTION

Plaintiff exhausted remedies.

## COUNT FIVE

## VIOLATION OF FOURTEENTH AMENDMENT This Count Relates To Equal Protection

67. Defendants Corizon, Williams, Burciaga, Johnson, Grafton, Armenta, Martinez, Porter, Lyons, Smith-Whitson, Bedoya, Days, Jacobs, Han, Erwin, Respicio-Moriarity, Dossett, Richardson, Crabtree, Valencia, Robertson, Carter, , Morrissey, Rogers, Klausner , Ryan, Erwin, Daryl Johnson, Pachecho Johnson, Flatt, Nolan, Waker, , Witty, Orr, Bowers , and each of them in violation of Village Of Willowbrook v Olech, 528 U.S.

562, 564-65 (2000) Aliciea v Howell, 387 F. Supp. 2d 227 (W.D.NYK 2005) intentionally singled Plaintiff out causing Plaintiff   to be denied the same or similar treatment, as all other inmates similarly situated and without any rational basis.

68. They singled Plaintiff out because they had  knowledge through the attachment to the April 26, 2016 e.mail by Erwin sent originally by Daryl Johnson in 2000 that Plaintiff had challenged their conduct and was puboishing materials adverse to them; that Plaintiff filed grievances, challenged their actions and policies in courts, and publicized their actions against Plaintiff.. They do not treat other inmates who engage in similar activities in the same manner. Carter directed defendants not to follow their own regulations when it involves Plaintiff  and made special regulations. They directed them to engage in the constitutional torts in ths complaint . .As stated above they singled Plaintiff out in matters relating to legal materials, religion, health care, education, and loss of property.

69. They concealed from the courts that Prednisone alters the immune system and prevents RAST, though the Chief Clinical Officer of Corizon advised them of this and the Arizona Medical Board initiated disciplinary proceedings against Williams.

70. They directed employees to act contrary to prison regulations causing constitutional torts in counts one to thirteen . It is ADOC policy to destroy emails and documents which they know from their experience are potential evidence.

71. Brnovich refused to promulgate appropriate policies to ensure that persons are not singled out.

72. They acted pursuant to ADOC and Corizon's policies to single out those who challenge them and their policies.

## INJURY

Plaintiff has been singled out as set forth in this complaint. . . This is atypical and substantial hardship in relation to ordinary incidents of prison life in 3 yards and no inmate is subjected to this in a 3 yard except Plaintiff.. This type of conduct does not happen in 3 yards.

## EXHAUSTION

Plaintiff exhausted remedies by appealing to the Director grievance .

## COUNT SIX

## FRAUD UPON THE COURT This Count Relates To LEGAL ACCESS

73. When Plaintiff received the attachment to the Erwin e.mail in April 2016 and read its contents he was shocked that since 2000 ADOC, defendants Daryl Johnson and others have targeted him and asked employees to retaliate against him and destroy documents/evidence.   The conduct of ADOC has been continuous and hence pursuant to Page v United States, 729 F.2d 81, 821 and n 21 (D.C. Cir. 1984) Selby v Caruso, No 13-1248 (6th Cir. 10/31/13) this court has jurisdiction and this is timely. These events arose in 2000 and are continuing.

## WHY THIS COULD NOT BE RAISED PREVIOUSLY

74. The attachment to the April 26, 2016 Erwin email which Plaintiff saw for the first time in July 2016, confirm a September 2008 Johnson memo that evidence be destroyed. This is why this could not be raised previously.

75. Defendants and each of them as is shown below have the policy of practicing fraud upon the courts, on issues central to the litigation. In cases they are named as

parties, they conceal and falsify evidence that "relate to matters in controversy in such a way as to interfere with the rightful decision of the case. There is a nexus between their actionable conduct and the merits of the case." Pursuant to this plan, scheme, practice of their, they engaged in the conduct against Plaintiff, destroyed, concealed falsified evidence, so that the claims Plaintiff has are defeated and they prevail.

76.    They intentionally and pursuant to their practice concealed and falsified evidence.

## WHEN DID PLAINTIFF LEARN OF THIS

77.    Plaintiff discovered this after he read the attachment to the Erwin e.mail of April 26, 2016.

78.    Carter and Morrissey wear two hats, one as an attorney and other as policymakers. In CV 11-0195 defendants concealed the fact Plaintiff could not take RAST and argued Plaintiff must take RAST. Take these away they would not have prevailed. They knew these were materially false arguments but did so pursuant to their policy above to conceal/falsify evidence to prevail.

79.    In CV 99-20757 Superior Court they concealed emails and documents showing there are too many complaints as to loss of property. They did this to show that post deprivation remedies are adequate. With the emails and documents Plaintiff could have shown the post deprivation remedies are inadequate they knew this to be materially false. With this evidence the results would not be the same. They did so pursuant to their policy above. They did the same in CV 02-14210, CV 02-14211.

80.    ADOC has no law libraries and paralegals are not allowed o conduct legislative history research on statutes.  ADOC lost Plaintiff's property and legal materials Tripati v

Arizona 199 ARIZ. 222 (2000), CV01-18741; 02-14210-02-14211; 02-15874 and Ryan,

Carter, Morrissey misrepresented to the courts that ARS13-201.01(L) bars me relief.

They knew or should have known this to be false because the statue does not apply to

those whose crimes happened before April 2, 1994 and Plaintiff's crime happened in

1992.

81.    Had they not made this material misrepresentations Plaintiff's sate tort remedies

would not have been  foreclosed for me. Take away this material misrepresentation

Plaintiff would have prevailed.

## AUTHORIZED PROCEDURE AND NO REMEDY

82.    It is ADOC policy to destroy emails and documents which they know from their

experience are potential evidence. There is no available post deprivation or administrative

remedy in the ADOC available to Plaintiff, as applied to him  by way of special policies

made by Carter, Klausner, Daryl Johnson, Erwin ,Ryan, Rogers, Robertson, Morrissey for

Plaintiff , that conflicts with ADOC written policies for all inmates.

83.    Intentionally acting pursuant to authorized established, Dossett, Respicio-

Moriarity, Smith-Whitson, Jacobs, days, Pachecho, Robertson, Richardson, Valencia,

Daryl Johnson, Erwin have refused to exercise their authority pursuant to ADOC policy to

afford Plaintiff relief, which they have the duty and power to.

84.    Plaintiff 's property and legal materials have been lost or destroyed at least 16

times and Plaintiff  prevailed in grievances at least 12 times. At the urging of Carter and

Morrissey Plaintiff was refused just compensation. The post deprivation remedies are

inadequate, ineffective and unavailable for Plaintiff.

85.    Defendants Morrissey, Klausner, Dossett, Respicio-Moriarity, Smith-Whitson, Jacobs, Days, Pacheco, Robertson, Richardson, Valencia, Daryl Johnson, Erwin, Rogers, Carter have concealed the number of complaints of property loss during litigation so as to prevail. They concealed emails, grievances, and other complaints. It is very common for them to falsify evidence and conceal evidence to prevail in litigation, as evident in above.

86.    They have done this pursuant to ADOC authorized established procedures approved by Ryan.

87.    Brnovich refused to promulgate appropriate policies to ensure that his employees such as Carter and Morrissey not direct agencies to violate constitutional torts thereby causing defendants to deny me adequate post deprivation remedies. Klausner, Erwin, Daryl Johnson, Dossett, Richardson, Jacobs, Pachecho, Smith-Whitson, Days have the apparent authority to prevent such denials, but they refused to exercise that authority.

## INJURY

Due to fraud by the other party to the suit Plaintiff, , the losing party did not know the evidence and was prevented from having a fair opportunity to present them upon the trial. Plaintiff's property has been repeatedly lost in retaliation and there are no available adequate post deprivation remedies. This is atypical and substantial hardship in relation to ordinary incidents of prison life in 3 yards and no inmate is subjected to this in a 3 yard except Plaintiff . This type of conduct does not happen in 3 yards.

## EXHAUSTION

Plaintiff exhausted remedies.

## COUNT SEVEN

## DENIAL OF ACCESS TO THE RECORDS

88.    DEPARTMENT ORDER 201.01.1.6 shows ryan is the custodian of records. There is no provision in DO 201 for ADOC to charge inmates or anyone for reviewing the records. A.R.S. 39-291 allows this court to review this claim as it is integrally tied to the other claims. Ryan has the duty to provide inmates with healthcare, education, food, safety, security and these are public functions. If a private entity performs this function this does not become pirvate.

89.    Plaintiff asked Ryan to provide his CO III on CD's for viewing  contract monitoring reports, contract compliance reports,  certain tchnical manuals, policies, documents, documents submitted with bids, grievances, CGAR reports, CGAR CAPS, notices of substantal non-compliance, contract  terminations, information  reports, notice of claims, grant for education/programs received in nine months,  information as to Wexford for the Nine months and information on Corizon, Wexford, Trinity, Keefe for 1/1/16 to date.

90.    Plaintiff also asked for all e.mails, memos, letters, information reorts, reorts that reference Plaintiff.

91.    As inmates cannot go and get these ADOC places these on CDS and send these to the COII for inmates to view. It charges no fees for this. NO COPIES ARE GIVEN TO INMATES. Inmate Bernal, Reed have been given access to similar records to view on CDs and at no charge.

92.    In bad faith ADOC refused to give  Plaintiff access to these records  demanding a fee Glynn and Dossett advised Plaintiff that absent a fee he will not be allowed to view these records.

93.    Plaintiff should be given these records and as to record withheld a Vaughn type index provided.

### INJURY

Plaintiff is denied access to public records he is entitled to..

### EXHAUSTION

Plaintiff exhausted remedies.

### COUNT EIGHT

### VIOLATION OF EIGHTH AMENDMENT RELATES TO CRUEL AND UNUSUAL PUNISHMENT

94.    Brown v Plata, 131 S.Ct. 1910, 1940 (2011) provides release as a remedy for continued cruel and unusual punishment by priosn offficals.

95.    It is already established in Parsons that ADOC inflicts cruel and unusual punishment on inmates and the contempt finding shows it is continuous.

96.    The conduct in this complaint shows I am being continuously subjected to cruel and unusual punishment serving no penal or legitimate governmental oal and this entitles Plaintiff to release. Plaintiff is being subjected to continuous pain and suffering

### INJURY

Plaintiff is being inflicted continuously cruel and unusual punishment.

## EXHAUSTION

Plaintiff exhausted remedies.

## COUNT NINE

## TAKING WITHOUT JUST COMPENSATION

## WHY THIS IS NOT PRECLUDED

97.    Paul Carter concealed from the court that prednisone rendered the RAST results invalid. A April 26, 2016 e.mail from Erwin to Brennan that Plaintiff saw for the first time shows that this was don pursuant to their scheme to defraud the court.

98.    Pursuant to Ryan's authorized established procedure and policies to lose/dstroy/seize inmate property Plaintiff's property was taken without just compensaton and  acording to Carter and Morrissey there is no available state remedy. There is no available ost deprivation remedy as those who administer the remedy have been told not to afford inmates relief.

99.    Plaintiff was convicted of crimes before 1994 and Carter and Morrissey advised courts that A.R.S. 31-201.01(L) does not afford Plaintiff any reief. This is false as the statute does not apply to those convicted before the effective date of the statute.

100.    ADOC lost Plaintiff's legal materials, law books, typewriter, research on DVDs. These wre taken intentionally and pursuant toRyan's policy that staff lose/destroy/seize inmate property.

101.    Had RYAN appropriately trained, disciplined, screened, enorced his writte policies, this loss would not be.

## INJURY

Plaintiff is being denied just compensation for his property lost.

## EXHAUSTION

Plaintiff exhausted remedies.

## COUNT NINE

## VIOLATION OF STATE RICO

102.    .Arizona allows RICO claims for personal injury Hannosh v Segal,  328 P.3d 1049 (2014).The Ninth Ciruit in Living Designs Inc v. E.I.DuPont, 2005 U.S.App.Lexis 26468 (Dec. 5, 2005) in the context of concealing evidence to induce settlements, the court found a vlid RICO claim, no litigation immunity to the parties and counsel, stating the lawfirms formed a distinct enterprise.

103.    Defendants Conlon, Rappazzo, Blair, Hoculi, Hover, Grimm, Basha, Zwick, Foreman (hereinafter "Attorney Defendants") and they are capable of holding legal and/or beneficial interest in property.

104.    Renaud Cook Drury Mesaros PA; Becken Petty, Ryan, Rogers, Morrissey, Glynn, Klausner, Rogers, Daryl Johnson, Erwin, Weber gallagher Simpson Stapleton Fire & Newby LLP, jones Skelton Hochuli, Corizon, Wexford, ADOC and the Arizona Attorney General by their association in fact from a separate and distinct enterprise within the meaning of Living Designs (hereinafter "Lawfirm Enterprise") engaged in and the activities of which affect interstate commerce.

105.    A.R.S. 13-2301.C.7 defines a criminl syndicate as "an combination of persons enterprises engaging in, or having the purpose of engaging, on a continuing basis in conduct that violates any one or more povisions of any felony statute."

106.    Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty violated A.R.S. 13-2308.A.1 by their conduct in this complaint.

107.    Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty pursuant to the scheme or artifice to defraud set forth in this comlaint knowingly obtained from Plaintiff the benefits set foth in the complaint by means of the material omissions set forth in this comlaint violating A.R.S. 13-2310.

108.    Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty violated A.R.S. 13-2312.A.B.

109.    Corruptly   Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty engage in and continue to engage in the conduct in this complaint to influence or impede judges in Arizona, other states, Arizona officils, judges of the United States District Court and Circuit  Courts in the performance of their duties.

110.    Corruptly   Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty engaged in the following unlawful acts amongst others: They violated A.R.S. 13-2308.A.1; 13-2312.A.B; 2310; 18 U.S. C. 1503 in  Arizona State Court Cause Numbers: 1 CA CV 15 0788; 1 CA CV 13-0602; Ninth Circuit Cases 17-15549; Idaho cause Numbers 15 CV 00132; 14 CV 00460 Arizona Cause Numbers CV 14 1825; CV 13 01747;  CV 11-2470; CV 13 01925;  CV 10- 2564; CV 13- 13 0200; CV 10 1668; CV 11 0097. CIV 11-0195; CIV 13-0615; CIV 15-0140; CIV 99-20757; CIV 02-14210; CIV 02-14211; CIV

02-15874  (cases in which Plaintiff was the Plaintiff) They concealed e.mails, 801(d)(2) statements, grievances, complaints, submitted boiler plate objections, submitted fals declarations/affidavits that contradicted documents prepared at the times of the incidents. They did this knowingly and with knowledge of their matriality and falsity.

111.    Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty have devised a scheme which calls for, in the event of violations of inmate rights being established, the execution of "confidential settlementt agreements." The purpose of these agreements is to increase their profits, continue with the violations, and ensure the matter is not made public. This is against the public policy of truth seeking, fairness nd ensuring proper adjudication of claims on their merits. By so doing they are able to inflict and continue to inflict harm upon inmates and this injury was and is foreseeable when these confidential settlement agreements are entered into in bad faith.

112.    During the discovery process in all litigation corruptly Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty aware of these agreements, deny their existence, and fail to disclose their existence, and advise judges eviewing the motions to compel when filed that these agreements are not relevant and were entered in good faith. They fail to disclose to the judges these agreements were entered in bad faith and their purpose was to make a profit and continue with the type of misconduct.

113.    Corruptly Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty as officers of the court are aware that they must be candid to the courts and not take any action that corrupts the truth seking process. They howver to prevent the judicial machinery from performing in its usual manner it impartial task of adjudicating cases on

the merits, with reckless disregard to the truth, engage in the misconduct. Their conduct is not protected by the attorney client/work product privilege because they engage in the conduct to committ new crimes.

114.    Attorney Defendants Lawfirm Enterprise, Corizon, Wexford, Becken Petty as a consequence of the violation of A.R.S. 13-2314.04.A; 13-2312.A.B; 13-2310.A by a pattern of unlawful activity conducted through the Lawfirm Enterprise caused Plaintiff and are causing Plaintiff reasonably foreseeable injury.

115.    By illegally controlling the Lawfirm Enterprise through the unlawful activity in this complaint, which Attorney Defendants Lawfirm Enterprise, Corizon, Wexford, Becken Petty acquired  control their their unlawful activity  they have caused Plaintiff reasonably foreseeable injury.

116.    Corruptly Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty have devised and control the Lawfirm Enterprise  through its proceeds  by acquiring or maintaining control by investment in the Lawfirm Enterprise.

117.    Corruptly Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty have devised and control the Lawfirm Enterprise  received income, directly and/or indirectly from the pattern of unlawful activity described in this complaint. They used or invested directly  and/or/indirectly parts of such income in the acquisition or conrrol  or an interest in or establishment of the Lawfirm Enterprise.

118.    Corruptly Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty  employed by or associated with  the Lawfirm Enterprise  conducted or participated in the control of the affairs of the Lawfirm Enterprise through a pattern of unlawful acts.

119.    Corruptly Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty  aware that their actions violated clearly established federal and state law agreed to and engaged n the course of conduct in this complaint causing Plaintiff reasonably foreseeable injury, refusing to exercise their power, authority, ability to prevent the conspiracy, conspired  violating A.R.S. 13-2314.04.

120.    Their conduct is continuous and openended. Attorney Defendants, Lawfirm Enterprise, Corizon, Wexford, Becken Petty  and each of them committed at least two acts of unlawful activity.

## INJURY

121.    Plaintiff has been subjected to injury  as fully set forth in this complaint.

## EXHAUSTION

Plaintiff exhausted remedies.

## PRAYER FOR RELIEF

Plaintiff demands a trial by jury, damages, costs, fees and an order that the practices complained of stop.

Declared    under    the    penalty    of    perjury    as    being    true    and    correct    on

ANANT KUMAR TRIPATI

PLAINTIFF PRO PER