**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anant Kumar Tripati, | No. CV-18-00066-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Corizon Incorporated, et al., | |
| Defendants. | |

Pending before the Court are numerous miscellaneous motions. The Court addresses below all motions filed in August and September 2019, as well as a Motion to Disqualify the Arizona Attorney General (Doc. 61) that the Court previously took under advisement (*see* Doc. 100 at 15). Any pending motions filed in or after October 2019 will be resolved separately.

## I.     Motion to Disqualify the Arizona Attorney General (Doc. 61)

Plaintiff moves for an order disqualifying the Arizona Attorney General. He avers that Jonathan Henry Schwartz ("Schwartz") was his trial and sentencing judge and is currently a member of the Arizona Attorney General's Office. Defendants Daniel Moreno ("Moreno") and Jose Ramos ("Ramos") filed a Response, confirming that Assistant Attorney General Schwartz presided over Plaintiff's criminal case when he was a Maricopa County Superior Court Judge. (Doc. 72.) Defendants avow that Schwartz has been screened from this case. (*Id.*) Defendants later filed a Supplemental Response, asking the Court to deny Plaintiff's Motion and providing a more detailed overview of

the applicable law and Defendants' screening of Schwartz. (Doc. 76.)

Defendants attach to their Supplemental Response a declaration by Assistant Attorney General Paul Carter ("Carter"), who represents Defendants Moreno, Ramos, George Osler ("Osler") and Glenn Schletter ("Schletter") in this matter, as well as a declaration by Schwartz. (Doc. 76-1 at 2-4, 6-7.) In his declaration, Carter states that he has been assigned to defend *Tripati v. Corizon*, CV 13-615-TUC-DCB ("*Corizon*") and *Tripati v. Osler*, CV 18-66-TUC-RM ("*Osler*"). Immediately upon his receipt of Plaintiff's Motion to Disqualify the Arizona Attorney General's Office, Carter confirmed that Schwartz sentenced Plaintiff to a term of imprisonment in *State v. Tripati*, CR1992-008576 and CR1992-009620. (*Id.* at 2.) Upon confirming the conflict, Carter immediately contacted the Attorney General Office's Ethics Counsel, who prepared a screening memorandum to all persons who have or potentially will have information concerning *Corizon* and *Osler*. (*Id.*) The screening memorandum, which was issued on April 18, 2019, instructed recipients not to discuss or convey information regarding *Corizon* or *Osler* to Schwartz or his immediate staff; required all files maintained in and related to *Corizon* or *Osler* to be prominently marked as screened from Schwartz; required that Schwartz's access to electronic records concerning *Corizon* or *Osler* be restricted; and directed staff working with Schwartz not to communicate in any manner with him regarding *Corizon* or *Osler*. (*Id.* at 2-3.) Carter avers that physical and electronic *Corizon* and *Osler* files have been marked and restricted from Schwartz, in compliance with the screening memorandum. (*Id.* at 3.) He further avers that he has not disclosed material confidential information relating to *Corizon* or *Osler* to Schwartz and is unaware of anyone who has done so. (*Id.*) Finally, Carter promises that his office will respond promptly to any future written inquiries or objections by the parties or the Court regarding its screening procedure. (*Id.*)

Schwartz's declaration confirms his conflict and avers that he knows nothing about Plaintiff's two pending lawsuits other than what Plaintiff wrote in a July 2018 letter concerning Schwartz's conflict. (*Id.* at 6.) Schwartz states that he is aware of his ethical

obligations to be screened from Plaintiff's two pending lawsuits and that he intends to abide by the requirements of the Ethics Counsel's screening memorandum. (*Id.* at 7.)

Plaintiff filed Replies (Docs. 77, 80) in which, among other things, he complains that privileged documents regarding Schwartz's rulings and this case were seized from him; that his computer time has been restricted and he has been denied calls to counsel; that Corizon canceled medical treatment and Plaintiff's special-needs diet; that representation by the Arizona Attorney General creates an appearance of impropriety mandating disqualification; and that Ethics Rule 1.12 and Ethics Opinion 88-04 mandate disqualification. Plaintiff attaches his computer-use calendar, a restricted diet order, a letter he wrote to Carter, an inmate property/contraband receipt, newspaper articles, and an inmate request for paralegal assistance. (Docs. 77-1, 80-1.) In an Order dated July 24, 2019, the Court took this Motion under advisement. (Doc. 100 at 15.)

The Arizona Rules of Professional Conduct provide that "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer . . . unless all parties to the proceeding give informed consent confirmed in writing." E.R. 1.12(a). The merits of Plaintiff's underlying criminal case before former Judge Schwartz are not at issue in the above-captioned matter, but there is no dispute that Schwartz is disqualified from representation in this matter. Schwartz's disqualification is not directly in issue because he does not represent any party in this matter. Carter represents Defendants Osler, Moreno, Ramos, and Schletter, and thus the issue is whether Carter is disqualified from representation due to the disqualification of Schwartz, given that both attorneys now work for the Arizona Attorney General's Office. Arizona Rule of Professional Conduct 1.12(c) governs that issue:

> If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:
> (1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
> (2) written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance

with the provisions of this Rule, including a description of the particular screening procedures adopted; when they were adopted; a statement by the personally disqualified lawyer and the new firm that the parties' and tribunal's material confidential information has not been disclosed or used in violation of the Rules; and an agreement by the new firm to respond promptly to any written inquiries or objections by the parties or the tribunal about the screening procedure; and

(3) the personally disqualified lawyer and the new firm reasonably believe that the steps taken to accomplish the screening of material confidential information will be effective in preventing such information from being disclosed to the new firm and its client.

E.R. 1.12(c).

Upon review of Defendants' Response and Supplemental Response, and of the declarations of Carter and Schwartz, the Court is satisfied that the screening procedures put into place by the Arizona Attorney General's Office comply with Arizona Rule of Professional Conduct 1.12(c). Therefore, although Schwartz is disqualified from undertaking representation in this matter, Carter is not disqualified from continuing his representation. Plaintiff's Motion will be denied.

**II.     Motion to Hold ADOC in Contempt (Doc. 103), Motion Under General Order 18-19 (Doc. 104), and Motion to Serve Schletter/Osler by Publication (Doc. 109)**

On January 29, 2019, the Court directed the Arizona Department of Corrections ("ADOC") to provide the last-known addresses of Defendants Schletter and Osler. (Doc. 41 at 15.) ADOC did not comply with the Court's Order. In his Motion to Hold ADOC in Contempt, Plaintiff asks that the Court hold ADOC in contempt and, as a sanction, require ADOC to accept service and forward it to Defendants Schletter and Osler. (Doc. 103.) In his Motion Under General Order 18-19, Plaintiff asks the Court to order the U.S. Marshal to serve a subpoena duces tecum on ADOC requesting the addresses of Schletter and Osler. (Doc. 104.) In his Motion to Serve Schletter/Osler by Publication, Plaintiff asks that the Court allow service by publication in accordance with Fed. R. Civ. P. 4(e)(1) and Ariz. R. Civ. P. 4.2(f), with the costs of such service to be taxed on ADOC. (Doc. 109.)

On August 13, 2019, non-party ADOC appeared specially to respond to Plaintiff's

Motion to hold ADOC in contempt, indicating it did not receive the Court's January 29, 2019 Order. (Doc. 110.) On the same date, Defendants Osler and Schletter waived service. (Doc. 111.) On September 12, 2019, Defendants Osler and Schletter joined (Doc. 135) Defendants Moreno and Ramos's Answer (Doc. 75) to Plaintiff's Second Amended Complaint (Doc. 42). On August 19, 2019, Plaintiff filed a Reply (Doc. 117), which—albeit while continuing to assert allegations of impropriety against defense counsel—appears to concede that the issues raised in Plaintiff's Motions are moot.

As Defendants Schletter and Osler have waived service and answered Plaintiff's Amended Complaint, the Court will deny as moot Plaintiff's Motion to Hold ADOC in Contempt (Doc. 103), his Motion Under General Order 18-19 (Doc. 104), and his Motion to Serve Schletter/Osler by Publication (Doc. 109).

**III.     Motion to Reconsider (Doc. 107), Motion for Leave to Take Telephonic Depositions (Doc. 126), and Motion for Protective Order (Doc. 139)**

In an Order dated July 24, 2019, the Court addressed various motions, applications, and notices filed by Plaintiff. (Doc. 100.) In his Motion to Reconsider, Plaintiff asks the Court to reconsider a portion of its July 24, 2019 Order contained on page 8, beginning at line 12. (Doc. 107.) In that portion of the Order, the Court denied Plaintiff's Motion to Modify Rule 31 Procedures (Doc. 74) as moot because the Motion did not appear to request any action on the part of the Court but, instead, appeared to be a discovery request that should have been served upon the opposing party rather than filed with the Court. (Doc. 100 at 8.)

In both his prior Motion to Modify Rule 31 Procedures (Doc. 74) and his currently pending Motion to Reconsider (Doc. 107), Plaintiff asks that particular witnesses—rather than opposing counsel—respond to written questions in lieu of oral depositions.[1] In his

---

[1] Plaintiff argues that the court in *Myers v. Andzel* provided for the use in prisoner cases of written interrogatories in lieu of oral depositions. No. 06 Civ. 14420(RWS), 2007 WL 3256879 (S.D.N.Y. Oct. 15, 2007). Plaintiff is incorrect. In *Myers*, the court denied a prisoner-plaintiff's motion for leave to take oral depositions of non-parties on the grounds that allowing the depositions "would negatively impact the discipline, morale, and effective functioning of the prison" and because the plaintiff was unable to obtain a proper transcription of the depositions and no authority requires the Government to pay for such costs. *Id.* at *1. The court further noted that interrogatories may not be

- 5 -

Motion for Leave to Take Telephonic Depositions, Plaintiff requests leave to conduct telephonic oral depositions due to defense counsel's refusal "to respond to discovery—in accordance with judicially created exceptions in prisoner cases." (Doc. 126 at 1 (citing *Turner v. Safley*, 482 U.S. 78 (1987).[2]) Plaintiff indicates that the oral depositions can be recorded using a Voice Over IP account, which can be opened for about $100. (*Id.* at 11-12.) Plaintiff does not indicate he would be able to pay for the Voice Over IP account.

On September 13, 2019, non-parties Borhuszewicz,[3] Dossett, Erwin, and ADOC Custodian of Records filed a Motion for Protective Order, requesting an order pursuant to Rule 26(c) protecting them from having to appear for and respond to Plaintiff's telephonic depositions. (Doc. 139.) Movants argue (1) that the Court's Scheduling Order limits the parties to seeking discovery from other parties; (2) Plaintiff's Motion for Leave to Take Telephonic Depositions fails to describe the information he seeks from the deponents, and the questions proposed in his prior Motion to Modify Rule 31 Procedures are irrelevant; and (3) Plaintiff has not identified an officer to prepare the record or transcripts of the requested depositions and has not shown that he has the financial ability to retain and compensate such an officer. (*Id.* at 5-6.)

Plaintiff filed a combined Reply in Support of Motion for Leave to Take Telephonic Depositions and Response to Motion for Protective Order. (Doc. 146.) Plaintiff argues that his proposed questions are relevant because Boschuweicz, Erwin, and Dossett were all personally involved in instructing that Plaintiff's legal mail be opened in his absence and that he be denied access to legal documents. (*Id.* at 3, 5, 7-8, 11-13.)

Movants filed a Reply in support of their Motion for Protective Order (Doc. 153), arguing that Plaintiff has not shown that Movants possess any relevant information about

---

used to obtain information from non-parties but that the plaintiff could serve subpoenas upon the non-parties pursuant to Rule 45 of the Federal Rules of Civil Procedure. *Id.* The court did not discuss or analyze Rule 31.

[2] The Court is unable to locate any material in *Turner* that appears to support Plaintiff's Motion.

[3] The filings by the non-party Movants and Plaintiff conflict in their spelling of this name.

his claims, that this Court does not have authority to intervene until Plaintiff demonstrates that he attempted unsuccessfully to resolve his recent mail issues administratively before bringing them to the Court's attention,[4] and that Plaintiff has acted frivolously and maliciously by propounding discovery requests on non-parties without first obtaining leave of Court to do so.

On September 16, 2019, Defendants Corizon, Glen Babich ("Babich"), and Charles Ryan ("Ryan") filed a Response to Plaintiff's Motion for Leave to Take Telephonic Depositions. (Doc. 140.) Defendants argue that Plaintiff's Motion for Leave to Take Telephonic Depositions is deficient because Plaintiff does not provide the names of the proposed deponents or information concerning what relevant information the proposed deponents may have concerning Plaintiff's claims, that Plaintiff does not specify how he intends to secure the presence of the deponents, and that Plaintiff does not state how he plans to pay for a transcription of the telephonic depositions or arrange for an officer appointed or designated under Federal Rule of Civil Procedure 28. (*Id.* at 1-2.) Plaintiff filed a Reply (Doc. 147), arguing that he named the proposed deponents in his original Motion to Modify Rule 31 Procedures (Doc. 74). Plaintiff also complains in the Reply about the medical care provided to inmates by Corizon and about Corizon's alleged concealment of evidence and alteration of records. (Doc. 147 at 3-14.)

Pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, a party may serve interrogatories, requests for production, and requests for admission on any other party. The Court's Scheduling Order contains numerical limits on the number of interrogatories, requests for production, and requests for admission that a party may serve. (Doc. 64 at 3.) However, contrary to the non-party Movants' argument, the Scheduling Order does not limit discovery to parties. Under Rules 30 and 31 of the Federal Rules of Civil Procedure, a party may "depose any person"—whether or not a party—by oral or written questions; furthermore, under Rule 45, a subpoena may

---

[4] The Court notes that Defendants did not file a motion to dismiss asserting failure to exhaust administrative remedies under the Prison Litigation Reform Act, and the deadline for doing so has expired. (Doc. 64 at 3.)

command a non-party to testify or produce documents, electronically stored information, or tangible things in that person's possession. Fed. R. Civ. P. 30(a)(1); Fed. R. Civ. P. 31(a)(1); Fed. R. Civ. P. 45(a)(1)(iii). Nothing in the Court's Scheduling Order alters these provisions of Rules 30, 31, and 45. Accordingly, the Court rejects the non-party Movants' argument that they need not appear for depositions merely because they are non-parties.

Absent certain exceptions not applicable here, a party may depose any person[5] by written questions under Rule 31 without leave of Court. Fed. R. Civ. P. 31(a)(1)-(2). The Court previously denied Plaintiff's Motion to Modify Rule 31 Procedures (Doc. 74) as moot because—despite its title—the Motion did not appear to request any action on the part of the Court. (Doc. 100 at 8.) Plaintiff's Motion for Reconsideration does not present any grounds for reconsidering the Court's prior denial of that Motion. *See* LRCiv 7.2(g)(1) (motions for reconsideration will ordinarily be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought" to the Court's "attention earlier with reasonable diligence"). However, to the extent that Plaintiff intended to request action on the part of the Court in his prior Motion to Modify Rule 31 Procedures, the Court alternatively finds that the prior Motion should be denied on the merits.

"At first glance, a deposition upon written questions may look like an inexpensive way for a prisoner to do discovery compared with a traditional deposition but it usually is not." *Picozzi v. Clark Cnty. Detention Ctr.*, No. 2:15-cv-00816-JCM-PAL, 2017 WL 4678472, at *3 (D. Nev. Oct. 16, 2017). Although Rule 31 allows for parties to exchange written direct, cross, redirect, and recross questions for a witness, absent the parties' stipulation to another procedure, *see* Fed. R. Civ. P. 29(a), an officer authorized under Federal Rule of Civil Procedure 28 must take the witness's deposition at a scheduled date and time and then prepare and certify a record of the deposition. Fed. R. Civ. P. 31(a)(5), (b). Accordingly, "[t]o obtain a deposition upon written questions, the prisoner is

---

[5] "A public or private corporation, a partnership, an association, or a governmental agency" may also be deposed by written questions. *See* Fed. R. Civ. P. 31(a)(4).

responsible to pay the witness fee, deposition officer fee, court reporter fee, and the cost of the deposition transcript." *Picozzi*, 2017 WL 4678472, at *4. A plaintiff's "indigent status does not entitle him to a waiver of [these] fees." *Id.* (denying indigent plaintiff's motion for deposition upon written questions where the plaintiff did not designate a deposition officer and had not shown he could pay any of the costs associated with written depositions); *see also Masterson v. Campbell*, No. CIV S-05-0192 JAM DAD P., 2009 WL 2824754, at *1 (E.D. Cal. Sept. 1, 2009) (denying motion to take written depositions where plaintiff had "not shown that he is able and willing to procure the services of an officer that could administer the written deposition, certify [the witnesses'] responses, and prepare a record").

Plaintiff has not identified a duly authorized deposition officer, nor has he designated a time and place for such an officer to take any witness's deposition by written questions. Plaintiff has also failed to show that he can pay the costs associated with taking depositions under Rule 31. Accordingly, to the extent that Plaintiff's prior Motion to Modify Rule 31 Procedures (Doc. 74) and Plaintiff's currently pending Motion for Reconsideration (Doc. 107) request leave of Court to take written depositions without complying with the procedures of Rule 31 of the Federal Rules of Civil Procedure, the Court denies that request on the merits.

For similar reasons, the Court will also deny Plaintiff's Motion for Leave to Take Telephonic Depositions (Doc. 126) and grant non-party Movants' Motion for Protective Order (Doc. 139). Oral depositions under Rule 30 must be conducted before an officer authorized under Rule 28. Fed. R. Civ. P. 30(b)(5). Although the parties may stipulate to a deposition being taken before any person, *see* Fed. R. Civ. P. 29(a), the parties have not so stipulated in this case. Plaintiff has not identified a duly authorized officer to oversee the oral depositions that Plaintiff seeks to take, nor has he shown that he can pay the costs associated with such depositions.

## IV. Motion for Leave to File Motion to Compel (Doc. 108)

In his Motion for Leave to File Motion to Compel (Doc. 108), Plaintiff requests

leave of Court to file a motion to compel against Defendants Corizon, Babich, and Ryan. Plaintiff indicates that these Defendants have refused to provide him with his medical records; emails concerning informal complaints concerning medical care submitted by Plaintiff to ADOC CO IIIs; emails from Corizon staff concerning Plaintiff's medical care; directives to Corizon employees concerning prisoner healthcare; performance measures; records of training of Corizon employees who made decisions concerning Plaintiff's medical care and any allegations and investigations against them for not following policies; false records and documents concerning alteration of medical records; escalation lists kept by Corizon; other complaints similar to Plaintiff's; charging orders; privileged information given to Corizon by ADOC employees; and investigations of Plaintiff's medical grievances by Corizon and ADOC. (*Id.*)

In Response, Defendants Corizon, Babich, and Ryan state that Plaintiff has arguably failed to attempt to resolve the parties' discovery dispute without Court intervention because he has refused to narrow his discovery requests to render them proportional to the allegations at hand. (Doc. 118.) However, Defendants agree that a discovery motion or hearing "will likely be the only way to resolve the ongoing dispute" and accordingly have no opposition to Plaintiff's Motion for Leave to File a Motion to Compel. (*Id.*) Plaintiff filed a Reply (Doc. 120) and a notice of additional authority (Doc. 119).[6]

There being no objection by Defendants, the Court will grant Plaintiff's Motion for Leave to File Motion to Compel. (Doc. 108.) Any motion to compel filed by Plaintiff shall include as attachments copies of the specific discovery requests and responses that are in dispute.

. . . .

_____

[6]     Plaintiff's Reply (Doc. 120) argues that Defendants have waived all objections and the Court should summarily direct the production of the information listed in Plaintiff's Motion for Leave to File Motion to Compel (Doc. 108). The Court reminds Plaintiff that his Motion for Leave to File Motion to Compel (Doc. 108) does not itself constitute a motion to compel, and thus Defendants had no obligation at this time to respond to the merits of Plaintiff's discovery dispute arguments. Once Plaintiff files a motion to compel, and the motion becomes fully briefed, the Court will determine whether it is appropriate to direct production of any information at issue in the motion to compel.

**V.      Motion for Leave to File Third Amended Complaint (Doc. 112) and Motion to Exceed Page Limit (Doc. 113)**

In his Motion to Exceed Page Limit (Doc. 113), Plaintiff requests leave to exceed by three pages the presumptive page limit in his Motion for Leave to File Third Amended Complaint (Doc. 112).  The Motion to Exceed Page Limit will be granted, and Plaintiff's 17-page Motion for Leave to File Third Amended Complaint (Doc. 112) will be considered properly filed.[7]

Plaintiff avers in his Motion for Leave to File Third Amended Complaint that he has deleted claims dismissed with prejudice, as directed by the Court.  (Doc. 112 at 1.) Plaintiff lists the claims and defendants deleted and added in his proposed Third Amended Complaint ("TAC") (lodged at Doc. 114), and he summarizes the allegations of the TAC.  (*Id.* at 1-17.)  Defendants Moreno and Ramos filed a Response (Doc. 123) opposing Plaintiff's Motion to Amend.  Defendants argue that Plaintiff has failed to show that justice requires granting leave to amend under Rule 15(a)(2) of the Federal Rules of Civil Procedure.  (*Id.*)  Plaintiff filed a Reply.  (Doc. 131.)

The district court has discretion in determining whether to grant or deny leave to amend, *Foman v. Davis*, 371 U.S. 178, 182 (1962), but leave should freely be given "when justice so requires," Fed. R. Civ. P. 15(a)(2).  In determining whether to grant leave to amend under Rule 15(a)(2), the Court considers whether there has been "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam) (quoting *Foman*, 371 U.S. at 182).

This is the fourth time that Plaintiff has sought to amend his Complaint.  The Court denied Plaintiff's first request to amend for failure to comply with LRCiv 3.4.

_____

[7]      Plaintiff previously filed a motion seeking leave to file a Third Amended Complaint (Docs. 47, 48), which this Court denied (Doc. 100 at 14).  Nevertheless, the Court will adopt Plaintiff's nomenclature and refer to the current proposed amended complaint as a proposed Third Amended Complaint.

(Doc. 28 at 2-3, 7.)  Although the Court later granted Plaintiff leave to file a Second Amended Complaint ("SAC"), it dismissed on screening the majority of claims raised in the SAC.  (Doc. 41.)  The only claims asserted in the SAC that remain pending are a portion of Count I and a portion of Count III.  (Doc. 41 at 5-10.)  Specifically, the Court ordered Babich to respond to the portion of Count I alleging deliberately indifferent medical care; ordered Corizon to respond to the portion of Count I alleging a policy and practice of delaying and denying treatment for inmates' serious medical needs; and ordered Ryan to respond to the portion of Count I seeking declaratory and injunctive relief based on ADOC's alleged policy of rewarding Corizon for providing constitutionally inadequate medical care.  (*Id.* at 5-8.)  The Court ordered Osler, Schletter, Ramos, and Moreno to respond to a portion of Count III alleging that they opened two pieces of legal mail from attorney Fred Romero.  (*Id.* at 9.)  The Court later denied Plaintiff leave to file a proposed Third Amended Complaint.  (Doc. 100 at 14; *see also* Docs. 47, 48.)

Plaintiff's currently pending Motion to Amend was filed within the deadline for moving to amend pleadings (*see* Doc. 100 at 16), and the Court accordingly does not find undue delay.  However, the docket reflects potential bad-faith or dilatory motive on Plaintiff's part.  Plaintiff's prolific filings evidence a tendency to re-hash previously litigated issues, to raise a plethora of far-ranging and oftentimes vague and disjointed allegations against a multitude of individuals, and to ignore the limits that this Court's screening orders have imposed on the scope of this litigation.  Plaintiff's proposed 28-page TAC lists 55 defendants and raises claims that would greatly expand the scope of this litigation, thereby causing further delays and prejudicing the current defendants.  Furthermore, it appears that granting leave to file the TAC would be futile, as most of the claims raised in the TAC would likely be dismissed on screening.  The proposed TAC does not cure the deficiencies that led the Court to previously dismiss portions of Counts I and III, and the allegations supporting the remaining Counts raised in the proposed TAC are vague, conclusory, disjointed and, in some instances, duplicative of previously

litigated claims and/or indecipherable.  Plaintiff's Motion to Amend will be denied.

**VI.    Motion for Leave to File Motion to Compel Against Ramos and Moreno (Doc. 115)**

Plaintiff seeks leave to file a Motion to Compel against Ramos and Moreno.  (Doc. 115.)  In support of this request, Plaintiff summarizes numerous discovery requests and asserts in conclusory fashion that the requests seek relevant information.  (*Id.* at 1-7.) Plaintiff also attaches a letter to him from defense counsel Carter, dated August 7, 2019. (*Id.* at 13-14.)  In the letter, Carter states that Ramos and Moreno stand by their discovery responses and decline to amend or supplement them because the documents that Plaintiff seeks are irrelevant and a search for them would be disproportional to the needs of this case.  (*Id.*)

Defendants Ramos and Moreno filed a Response (Doc. 124), arguing that Plaintiff's Motion fails to comply with the discovery-dispute procedure outlined in this Court's Scheduling Order because (1) Plaintiff fails to show that he made a sincere effort to resolve his conflict through personal consultation; (2) Plaintiff fails to specify the result of the parties' personal consultation and the matters remaining in dispute; and (3) Plaintiff has sought discovery regarding matters irrelevant to his claims, demonstrating that he is pursuing this case frivolously, maliciously, and in bad faith.  Plaintiff filed a Reply (Doc. 132), arguing that Carter advised him in no uncertain terms that he would not provide Plaintiff's requested discovery.

> The Court's Scheduling Order provides:
> The parties shall not file written discovery motions without leave of Court. In the event of a dispute over discovery matters, the parties must engage in personal consultation regarding the dispute and must make a sincere effort to resolve the conflict expeditiously.  *See* LRCiv 7.2(j).  If a discovery dispute cannot be resolved despite the party's sincere efforts, either party may file a request for a telephonic conference or for permission to file a written discovery motion; such a request must specify the results of the parties' personal consultation and the matter(s) remaining in dispute.

(Doc. 64 at 2-3.)

The Court finds that the August 7, 2019 letter attached in support of Plaintiff's Motion to Compel sufficiently indicates that Plaintiff attempted to resolve the parties'

discovery dispute through personal consultation prior to filing his Motion for Leave to File Motion to Compel. Given Defendants' unequivocal refusal to amend or supplement their discovery responses, it does not appear that further attempts at resolving the parties' dispute through personal consultation would be fruitful. Furthermore, Plaintiff's summary of the discovery requests that he asserts Defendants refused to respond to is sufficient to satisfy the Scheduling Order's requirement of specifying the results of the parties' personal consultation and the matters remaining in dispute. Accordingly, the Court will grant Plaintiff leave to file a Motion to Compel against Ramos and Moreno. Plaintiff shall attach to the Motion to Compel copies of the specific discovery requests and responses at issue.

**VII. Motion to Declare Indemnification of Ryan and ADOC Employees (Doc. 116)**

In this Motion, Plaintiff argues that the Court should declare invalid indemnification by Corizon, and indemnification of ADOC employees by ADOC, because Plaintiff's move to the East Unit was made in bad faith, maliciously, and as retaliation. (Doc. 116 at 4-8.) Defendants Corizon, Babich, and Ryan filed a Response (Doc. 122), which Defendants Moreno and Ramos joined (Doc. 125). Defendants argue that Plaintiff's request is unsupported and premature. (Doc. 122 at 1-2.) Plaintiff filed a Reply. (Doc. 133.)

The Court agrees with Defendants that Plaintiff's request is premature, as there has been no finding of liability or wrongdoing in this case and no award of damages. The Court also agrees with Defendants that the cases relied upon by Plaintiff, *Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996), and *Cornwell v. City of Riverside*, 896 F.2d 398 (9th Cir. 1990), do not support Plaintiff's request. Plaintiff's Motion will be denied.

**VIII. Motion to Allow Search of Corizon and ADOC's Computers (Doc. 127)**

In this Motion, Plaintiff requests leave to search Corizon's computers because "counsel for Corizon . . . cannot be trusted with providing the relevant evidence." (Doc. 127 at 1.) Plaintiff alleges that Corizon has a history of falsifying records, and that Corizon and Ryan have attempted to artificially limit discovery. (*Id.* at 2-3, 5.) Plaintiff

attaches excerpts of a brief filed in the Ninth Circuit case *Parsons v. Ryan*, No. 18-16368 and alleges that the excerpts should be judicially noticed. (Doc. 127 at 2; Doc. 127-1.)[8]

Defendants Corizon, Babich, and Ryan filed a Response opposing Plaintiff's Motion. (Doc. 143.) Defendants argue that Plaintiff's allegations of falsification of medical records are unsupported and irrelevant to the claims remaining in this case. (*Id.* at 1-2.) Defendants further argue that Plaintiff's requested relief is not proportional to the needs of this case and is "nothing more than an attempt to skirt the Court's rules regarding discovery disputes." (*Id.* at 2.) Plaintiff filed a Reply in support of his Motion, arguing that he asked Corizon's attorney for the documents at issue in his Motion, that she refused to provide them, and that he should either be allowed to search Corizon's computers or Corizon should be required to provide the requested information. (Doc. 150.)

The Court agrees with Defendants that Plaintiff has not complied with the discovery-dispute procedures outlined in the Court's Scheduling Order. (Doc. 64 at 2-3.) If Plaintiff believes that Corizon has not adequately responded to discovery requests, Plaintiff shall comply with the Court's discovery-dispute procedures. Plaintiff's Motion to Allow Search of Corizon and ADOC's Computers will be denied.

## IX. Motion to Modify Scheduling Order (Doc. 129)

In his Motion to Modify Scheduling Order filed on September 5, 2019, Plaintiff requests that discovery deadlines set forth in the Court's Scheduling Order be extended by 180 days. (Doc. 129 at 10.)[9] As support for this request, Plaintiff states that he received 8,000 pages of medical records on August 30, 2019 but was prevented from reviewing them; that he has filed two Motions for Leave to File Motions to Compel, a Motion to Take Oral Depositions, and a Motion to Allow Search of Corizon and ADOC's computers; that two subpoenas served on the Arizona Medical Board and Arizona Nursing Board have not been responded to; that Plaintiff is awaiting an expert report

---

[8] The Court declines to judicially notice the excerpts, as Plaintiff has not shown that they are a proper subject of judicial notice. *See* Fed. R. Evid. 201(b).

[9] Plaintiff also requests an order shortening time, without specifying what deadline he seeks to shorten. (*Id.* at 10.)

regarding falsification of medical records; and that Plaintiff has moved to file a TAC. (*Id.* at 1, 4-5.) Plaintiff also complains that he is being prevented from reviewing documents until after Betty Ullibarri reviews them and determines it is appropriate for him to review them; he requests that the Court order that Betty Ullibarri cannot determine what evidence he can review. (*Id.* at 6-10.)

Defendants Moreno, Osler, Ramos, and Schletter filed a Response (Doc. 144), arguing that Plaintiff has not shown good cause for his requested 180-day extension. Defendants also complain that the Court's Screening Order did not enforce the three strikes provision of 28 U.S.C. § 1915(g) with respect to Plaintiff's mail claim, as nothing in Plaintiff's pleadings suggests he was placed in imminent danger of serious physical injury by the factual allegations underlying the mail claim. (Doc. 144 at 2-3.) Defendants ask the Court to deny Plaintiff's Motion to Modify Scheduling Order and to order Plaintiff to show cause why his claims should not be dismissed based on his frivolous and malicious prosecution of this matter. (*Id.* at 4.) Plaintiff filed a Reply. (Doc. 152.)

The Court previously granted a request by Plaintiff to extend deadlines set forth in the Court's Scheduling Order. (Doc. 100 at 16.) The Court's revised schedule set a September 16, 2019 deadline for disclosure of initial expert testimony; an October 7, 2019 deadline for disclosure of witness lists; and a November 4, 2019 discovery deadline. (*Id.*) On October 15, 2019, the Court extended to November 13, 2019 the deadline for the Arizona Medical Board and Arizona State Board of Nursing to respond to Plaintiff's subpoenas. (Doc. 164.)

The Court finds that Plaintiff's Motion fails to set forth good cause for extending the expert disclosure deadline; however, given the Arizona Medical Board and Arizona State Board of Nursing's extended deadline for responding to Plaintiff's subpoenas, and given that the Court in this Order is granting Plaintiff leave to file two Motions to Compel and granting issuance of one additional subpoena, the Court finds good cause to extend the discovery deadline and the deadline for disclosing witness lists. The Court

declines to extend these deadlines by the full 180 days requested by Plaintiff but will grant a 60-day extension. The Court will also grant a corresponding extension of the deadlines for filing dispositive motions and for filing the Joint Proposed Pretrial Order.

The Court declines to address Plaintiff's allegations concerning Betty Ullibarri because those allegations are not properly raised in a Motion to Modify Scheduling Order. Likewise, the Court declines to address Defendants' arguments concerning the Court's Screening Order. If Defendants believed that the Court's Screening Order was erroneous or that *in forma pauperis* status was improvidently granted, they could have filed a motion to dismiss seeking reconsideration of the Screening Order, or a motion to revoke *in forma pauperis* status. They did not do so. The Court also declines to address Defendants' request that Plaintiff be ordered to show cause why his claims should not be dismissed for frivolous and malicious prosecution, as it is not proper to embed such a request in a response to a motion for extension of deadlines. If Defendants feel that Plaintiff's conduct in this litigation is vexatious and warrants sanctions. they are free to file an appropriate motion.

## X.  Emergency Application to Enjoin Ramos and Erwin (Doc. 130)

In his Emergency Application to Enjoin Ramos and Erwin, Plaintiff indicates that on September 3, 2019, Defendant Ramos—by Order of non-parties Erwin and others—directed that Plaintiff's medical records be seized, thereby frustrating this litigation. (Doc. 130.) Plaintiff attaches an inmate property/contraband receipt which appears to be dated September 3, 2019 and which indicates that medical records from a lawyer were seized from Plaintiff. (Doc. 130-1.) Defendants Moreno, Osler, Ramos, and Schletter filed a Response in opposition. (Doc. 145.) Defendants argue that Plaintiff provides no facts to support his Motion and that "the unverified hearsay statements he has provided fail to establish that he is entitled to the extraordinary remedy of an injunction." (*Id.* at 1; *see also id.* at 4.) Defendants note that it is not clear from Plaintiff's Motion which documents were allegedly seized, for what purpose they were seized, or how the alleged seizure is frustrating this litigation. (*Id.* at 1-2, 4.) Defendants also argue that Plaintiff

has not shown that he attempted to exhaust administrative remedies prior to seeking the Court's intervention. (*Id.* at 2-4.) Plaintiff filed a Reply (Doc. 151), arguing that he grieved this issue in A03033019 and he has no available administrative remedy; that Ramos directed CO II Negron to seize his medical records; and that Julia Erwin and Boschuweicz sent emails indicating a paralegal must review all legal documents for relevancy before Plaintiff is allowed to view them.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must show (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of a preliminary injunction, (3) that the balance of equities tips in its favor, and (4) that a preliminary injunction is in the public interest. *Id.* at 20.[10] Although a nexus between the preliminary relief and ultimate relief sought is normally required, such a nexus is not necessary "where the preliminary relief is directed to the prisoner's access to the Courts." *Prince v. Schriro*, CV08-1299-PHX-SRB, 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009) (citing *Diamontiney v. Borg*, 918 F.2d 793, 796 (9th Cir. 1990)).

The inmate property/contraband receipt attached to Plaintiff's Motion indicates that medical records were seized from Plaintiff and thus provides some evidentiary support for Plaintiff's Motion. Defendants' Response to Plaintiff's Motion does not include any attached declarations or other documentary evidence addressing the seizure of medical records and whether it was directed by Ramos and Erwin. Defendants also do not address Plaintiff's allegations that legal documents and discovery materials are being screened for relevancy before he is allowed to view them.

The Court will take Plaintiff's Motion under advisement pending supplemental briefing. Within fourteen days of the date this Order is issued, Defendants shall file a

---

[10] The Court may grant injunctive relief only against the parties or their officers, agents, servants, employees, and attorneys, or persons in active concert with the parties or their officers, agents, servants, employees, and attorneys. Fed. R. Civ. P. 65(d)(2). Erwin is not a party to this litigation, but it is unclear whether he acted in active concert with Ramos to seize Plaintiff's medical records.

supplemental response—including attached declarations and other documentary evidence as appropriate—that addresses Plaintiff's allegations concerning the seizure of medical records from Plaintiff on September 3, 2019 and the alleged screening of Plaintiff's documents and discovery materials for relevancy. Plaintiff may file a supplemental reply within seven days of service of Defendants' supplemental response.

## XI.   Motion to Modify Prior Order (Doc. 142)

In its Order dated July 24, 2019, the Court granted Plaintiff's request for the issuance of a subpoena duces tecum to the Arizona Medical Board. (Doc. 100 at 9-11, 15.) In his Motion to Modify, Plaintiff avers that counsel for the Arizona Medical Board advised him that Dr. David Robertson, Dr. Bonnie Goodman, and Dr. Aydjeji Cadele are licensed as osteopathic physicians, and that Plaintiff has learned that Dr. Christopher Johnson is also a D.O. (Doc. 142 at 1-2.) Accordingly, Plaintiff asks the Court to modify its prior Order to allow the issuance of a subpoena to the Arizona Board of Osteopathic Examiners. (*Id.* at 2; Doc. 142-2.)

Non-party Dr. David Robertson, D.O., filed a Response in opposition. (Doc. 154.) Dr. Robertson avers that he is employed on ADOC's Health Services Monitoring Board as a Medical Program Monitor and that he has not provided medical care to any ADOC inmates for over seven years. (*Id.* at 1.) Dr. Robertson argues that Plaintiff's Motion does not indicate what relevant information he believes Dr. Robertson's Arizona Board of Osteopathic Examiners file contains, as Dr. Robertson's professional record, credentials, and treatment of Plaintiff are not at issue in this case. (*Id.* at 2.) Dr. Robertson further opines that Plaintiff is on a fishing expedition and there is a high probability that Plaintiff wants the information contained in Dr. Robertson's file in order to misuse it in the future. (*Id.*)

Plaintiff filed a Reply (Doc. 159), in which he states that he has never misused information and that his medical records show that in 2015, 2016, and 2017, Dr. Robertson by email directed Corizon to cancel orders as to Plaintiff.

The Court construes Plaintiff's Motion to Modify Prior Order as an Application

1   for Issuance of Subpoena pursuant to General Order 18-19, which provides:

2       [A]ny self-represented litigant who wishes to serve a subpoena must file a
3       motion with the Court for issuance of the subpoena. The motion must (1) be
        in writing, (2) attach a copy of the proposed subpoena, (3) set forth the
4       name and address of the witness to be subpoenaed and the custodian and
        general nature of any documents requested, and (4) state with particularity
5       the reasons for seeking the testimony and documents. The assigned judge
        shall determine whether the requested subpoena shall issue. Issuance of the
6       subpoena shall not preclude any witness or person subpoenaed, or other
        interested party, from contesting the subpoena.

7   Gen. Order 18-19.  Plaintiff's Motion, when read in conjunction with his prior Motion

8   (Doc. 84), sufficiently complies with General Order 18-19.  Accordingly, the Court will

9   grant the Motion.  However, the Court notes that its granting of Plaintiff's Motion does

10  not preclude Dr. Robertson, any other witness or person subpoenaed, or any other

11  interested party, from contesting the subpoena.  Gen. Order 18-19.

12  **XII.    Motion to Declare DI 380/902 Unconstitutional (Doc. 148)**

13          In this Motion, Plaintiff argues that ADOC's Director's Instruction 380, which

14  outlines procedures for inmates' use of tablets, and ADOC's Department Order 902,

15  which governs inmates' court access, are unconstitutional on their face and as applied.

16  (Doc. 148 at 4-5.)  Plaintiff then complains that his CDs/DVDs are missing and that he is

17  not permitted to view his medical records and discovery unless an ADOC paralegal

18  determines the documents are relevant.  (*Id.* at 5-6.)  He requests an order declaring DI

19  380 and DO 902 unconstitutional.  (*Id.* at 12.)  He also requests that he be allowed to

20  download and access legal cases using a tablet; allowed access to other education sites on

21  a tablet; and allowed to prepare, store, view, and print legal papers, research, and

22  discovery on a tablet.  (*Id.* at 12-13.)

23          Defendants filed a Response (Doc. 156), in which they argue that Plaintiff

24  provides no evidence showing that Defendants have done anything according to an

25  unconstitutional policy that has implicated Plaintiff's right to court access in this case.

26  Plaintiff filed a Reply.  (Doc. 163.)

27          The constitutionality of DR 380 and DO 902 is not at issue in the claims pending

28  in this case.  To the extent that Plaintiff is alleging that documents are being screened for

relevancy before he is permitted to view them, this allegation is more appropriately addressed by way of the supplemental briefing that the Court has ordered on Plaintiff's Emergency Application to Enjoin Ramos and Erwin (Doc. 130). The Court will deny Plaintiff's Motion to Declare DI 380 and DO 902 unconstitutional.

## XIII.  Motion to Enjoin Systematic Destruction of Records by ADOC (Doc. 149)

In this Motion, Plaintiff alleges that ADOC has a systematic policy of destroying records that it should know are customarily requested during the normal and ordinary course of litigation, and that this policy has prevented Plaintiff from obtaining documents sought during discovery in this case.  (Doc. 149 at 1, 2-7.)  Plaintiff seeks an order enjoining ADOC from destroying records that are customarily requested in litigation. (*Id.* at 7.)  In support of his request, Plaintiff attaches a copy of the Arizona State Library, Archives, and Public Records Division's general records retention schedule.  (149-1.)

Defendants Moreno, Osler, Ramos, and Schletter filed a Response (Doc. 157), arguing that this case has nothing to do with ADOC's records retention policies, that ADOC is not a party in this litigation, that Plaintiff has failed to show that he complained to ADOC about the destruction of relevant records, and that Plaintiff has further failed to show that ADOC has destroyed any relevant records.  Plaintiff filed a Reply.  (Doc. 163.) Plaintiff attaches to his Reply an inmate grievance response dated July 26, 2016 explaining that, due to limited storage space, the ADOC email system does not store emails for more than 104 calendar days.  (Doc. 163-1.)  Plaintiff also attaches a letter from Frederick Romero to Paul Carter; a witness list from Defendants Moreno, Osler, Ramos, and Schletter; and various responses to requests for production.  (Doc. 163-1 at 2-19.)

ADOC is not a party to this litigation.  *See*  Fed. R. Civ. P. 65(d)(2).  Furthermore, to the extent that Plaintiff is arguing that ADOC's alleged destruction of records has prevented Plaintiff from receiving requested discovery in this case, Plaintiff has not followed the Court's discovery-dispute procedures and does not clearly explain which discovery requests are at issue.  The Court will deny Plaintiff's Motion to Enjoin

Systematic Destruction of Records by ADOC.

**IT IS ORDERED**:

1. Plaintiff's Motion to Disqualify the Arizona Attorney General (Doc. 61) is **denied**.

2. Plaintiff's Motion to Hold ADOC in Contempt (Doc. 103) is **denied as moot**.

3. Plaintiff's Motion Under General Order 18-19 (Doc. 104) is **denied as moot**.

4. Plaintiff's Motion to Serve Schletter/Osler by Publication (Doc. 109) is **denied as moot**.

5. Plaintiff's Motion for Reconsideration (Doc. 107) is **denied**.

6. Plaintiff's Motion for Leave to Take Telephonic Depositions (Doc. 126) is **denied**.

7. Non-party Movants' Motion for Protective Order (Doc. 139) is **granted**.

8. Plaintiff's Motion for Leave to File Motion to Compel against Defendants Corizon Health, Inc., Glen Babich, and Charles Ryan (Doc. 108) is **granted**. Within **fifteen (15) days** of the date this Order is filed, Plaintiff may file a Motion to Compel against Defendants Corizon, Babich, and Ryan. Plaintiff shall attach to the Motion copies of the specific discovery requests and responses at issue.

9. Plaintiff's Motion to Exceed Page Limit (Doc. 113) is **granted**. Plaintiff's 17-page Motion for Leave to File Third Amended Complaint (Doc. 112) is considered properly filed.

10. Plaintiff's Motion for Leave to File Third Amended Complaint (Doc. 112) is **denied**. The Clerk of Court shall NOT file Plaintiff's proposed Third Amended Complaint (lodged at Doc. 114).

11. Plaintiff's Motion for Leave to File Motion to Compel Against Defendants Ramos and Moreno (Doc. 115) is **granted**. Within **fifteen (15) days** of the

date this Order is filed, Plaintiff may file a Motion to Compel against Defendants Ramos and Moreno. Plaintiff shall attach to the Motion copies of the specific discovery requests and responses at issue.

12. Plaintiff's Motion to Declare Indemnification of Ryan and ADOC Employees (Doc. 116) is **denied**.

13. Plaintiff's Motion to Allow Search of Corizon and ADOC's Computers (Doc. 127) is **denied**.

14. Plaintiff's Motion to Modify Scheduling Order (Doc. 129) is **partially granted and partially denied as follows:**

    A. Plaintiff's Motion to extend the expert disclosure deadline is **denied**.

    B. Plaintiff's Motion to extend the witness-list disclosure and discovery deadlines is **partially granted**, as follows:

        i. The deadline for disclosure of witness lists is extended to **December 6, 2019**.

        ii. The discovery deadline is extended to **January 3, 2020**.

        iii. The dispositive motion deadline is extended to **February 3, 2020**.

        iv. A Joint Proposed Pretrial Order shall be filed within **thirty (30) days** after resolution of the dispositive motions filed after the end of discovery or, if no such motions are filed, on or before **February 15, 2020**.

15. Plaintiff's Emergency Application to Enjoin Ramos and Erwin (Doc. 130) is **taken under advisement**. Within **fourteen (14) days** of the date this Order is issued, Defendants shall file a supplemental response—including attached declarations and other documentary evidence as appropriate—that addresses Plaintiff's allegations concerning the seizure of medical records from Plaintiff on September 3, 2019 and the screening of documents for relevancy. Plaintiff may file a supplemental reply within **seven (7) days** of

service of Defendants' supplemental response.

16. Plaintiff's Motion to Modify Prior Order (Doc. 142), which the Court construes as an Application for Issuance of Subpoena pursuant to General Order 18-19, is **granted**. The Clerk of Court is directed to issue the subpoena appearing at Doc. 142-2, and the U.S. Marshal is directed to serve the subpoena.

17. Plaintiff's Motion to Declare DI 380/902 Unconstitutional (Doc. 148) is **denied**.

18. Plaintiff's Motion to Enjoin Systematic Destruction of Records by ADOC (Doc. 149) is **denied**.

Dated this 15th day of November, 2019.

Honorable Rosemary Márquez
United States District Judge