Anant Kumar Tripati
102081 Box 5000
Florence Az 85132



FILED ✓
RECEIVED _____ COPY LODGED _____

JUN 26 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

United State Court of Appeal
Ninth Circuit

Anant Kumar Tripati,
            Plaintiff
            vs
Corizon Inc et al
        Defendant

Civ 18 0066 Rm
(Lons)

Notice of
Appeal of Doc 314
Tro/Injuction
course/
Requested

As the District Judge has

Mis-Interpreted :

                    First issue

① (a) Ex Parte Hull, 312
US 546 (1941) which forbids
Prison authorities from deciding
the Relevance of legal

—1—

PAPERS:

(b) Gomez v Vernon 255
F-3D 1118, 1133 (9th Cir 2011) which
FORBIDS Prison authorities From
Reviewing Privileged Documents

(c) Cody v Weber, 256 F3D
764, 768 -69 (8th Cir 2001) which
FORBIDS Prison officials From
seeking tactical advantage in
litigation

FACTS IN SUPPORT

(2) ADOC Legal services sent
Betty Ulibarri, A Paralegal

— 2 —

to search and seize legal
CDS- (SEE ATTACHED letter)
she searches it, And has
lost II legal CDS. She then
gave their contents to PRISON
Authorities- The Court
DENIED the injunction.

SECOND GROUND

(3) THE DISTRICT Judge has
Mis-INTERPRETED HECK v Humphrey
As Fully ARGUED in this
Reply

— 3 —

## FACTS IN SUPPORT

(4) Plaintiff incorporates the Facts in the attached Motion

## THIRD ISSUE

(5) The District Judge is Misinterpreting Rule 15(c) and 5I (D).

## FACTS

(6) <u>Keith v Volpe</u>, 858 F2d 467, 474 (9th Civ. 1994) provides the standards for supplemental pleadings — The District Judge

— 4 —

Misapplied <u>Keith</u>, not with-
standing to law Being clear

(7) She totally disregarded the
Order by Judge <u>Tuchi</u> that
I File a supplement.

(7) In <u>Jones v Blanas</u> 393
F3D 918 (9th Civ. 2004) this
Court stated that when the
opposing Party Has the
evidence — Summary Judgment
be denied

(8) The District Judge
is Taking offense — that —

—5 —

by Clear And Convincing
evidence — I have Shown
— Paul Edward Carter And
Lawyers for Corizon — have
Concealed And Falsified
evidence.

(9) Askup for that evidence —
Somehow — she Believes — is
Bad Strategy.

FOURTH ISSUE

(12 The DISTRICT Judge has
MISINTERPRETED the Law on
imputed DISqualification

— 6 —

## Request for Counsel

(1) Judges — other then Judge Marquez — Are finding that — based on the evidence I have presented — Defendants are concealing and falsifying evidence — being colorable (see attached (Means finding)

(2) I ask that Counsel be appointed.

Respectfully

Anant Kumar

—7—

# Frederick A. Romero Esquire
## *Attorney at Law*
**449 West Foothill Boulevard**
**Suite 170**
**Glendora, California 91741**
**Telephone: (213) 401-5724**
**Email: farlaw@msn.com**

*October 3*
~~September, 26~~ 2019

**Paul Edward Carter Esquire**
Assistance Arizona Attorney General
416 West Congress
Suite 200
Tucson, Arizona 85701

Re: Legal communications and information for Anant Kumar Tripati.

Dear Mr. Carter,

    I have been informed by my client, Anant Kumar Tripati, that you may have questions as to legal communications, documents and attorney client privilege among other various issues.

    The following information should provide clarity to several of the issues I understand were raised.

    To date, I have conducted extensive research on Mr. Tripati's arrest, convictions, and claims against the Arizona Department of Corrections, including information dating from June, 24th 1992 to current.

    These research are privileged and have been provided to my client on DVD, and CD formats for legal application and use.

    I have a duty to preserve attorney client and work product privilege, however, I can disclose the research does discuss information pertaining to:

    a. Mr. Tripati being the only person ever prosecuted for Deprivation of Reputation in the Community and Posting.
    b. The issues surrounding the Immunity granted to two of the State's key witnesses.
    c. The role and conduct by Judge Jonathan Henry Schwartz and Donald Conrad.
    d. Falsification of evidence in litigation involving prison authorities, and contracted prison medical providers Corizon and Wexford.
    e. 404 / 406 Evidence.
    f. A review of all cases 1992 to January 2019 in where ADOC \ Corizon have been parties.
    g. Legal background information on prison personnel who have been alleged in the violations of Mr. Tripati's rights.

1

h. The complete Parsons case and court ruling.
i. Among other issues.

In addition, I received a call from a prison official at the prison facility in Florence, attempting to intimidate me into stating I had not sent legal mail addressed to Mr. Tripati. I informed him I had in fact sent the legal mail, and it should be officially noted to that fact.

After inquiry into the matter, I received a letter form ADOC Legal Services in which they attempted to deny the officer had engaged the illicit request. As the correspondence continued it became clear it was an attempt to cover-up the unlawful act.

It also has become apparent several ADOC officials refuse to accept legal documents claiming the mail is from "unrecognized" addresses. Regardless of the actual physical address, all legal mail sent by myself or my office is clearly marked such. For clarity please note, I have engaged office locations at the following addresses since 1992.

- 9454 Wilshire Boulevard, Beverly Hills CA
- 404 South Figueroa, Los Angeles CA
- 449 W. Foothill, Glendora CA

There is a history of occasions where ADOC has improperly opened Mr. Tripati's legal mail addressed, and sent from me. In fact, in 2006 I was required to file a complaint with Judge Robert Myers Jr. against ADOC General Counsel as to the opening of legal mail, and falsifying records submitted to Judge Mark Armstrong in a case in which you were counsel.

Continued violations resulted in my contacting ADOC Director Charles Ryan in 2009 regarding ADOC management and destruction of legal documents, listed among other issues.

More to date, there appears to me issues with ADOC personnel I received a call from COIII Bell, and COIV Borhuszewicz informing me that absent my consent to advise them of the contents of any privileged communications I intend on discussing with my client, they will not allow me to speak to my client.

As a direct consequence of the of opening legal mail, Mr. Tripati is unable to obtain legal advice. Neither I nor others can provide him advice because ADOC is intercepting the mail, we cannot correspond in confidence.

It has come to my attention that 35 legal DVD/CD's taken on March 13, 2019, were searched for contraband and read by ADOC paralegals, not security personnel. it is also my understanding 11 of the 35 legal DVD/CD's are now "missing." The 11 legal DVD/CD's must be located.

It is also understanding that COIV Borhuszewicz had directed COII Negron to open and read Mr. Tripati's Legal mail, only at the intervention of a Lt. Brewer was COII Negron ordered not comply with the COIV's demand, as it is against the law.

To further compound these violations, on September, 3, 2019 Sgt. Ramos directed Mr. Tripati's medical records be seized. Again this is unlawful.

ADOC staff are fully aware of their boundaries for search of legal materials., they are not to determine what, if any legal document or information is relevant. Their only duty is to search for contraband materials unrelated to any legal issue.

Since March 13 2019 COIV Borhuszewicz has refused to allow Mr. Tripati to view any of his electronic legal documentation, unless my client waives his attorney client privilege. This is completely improper and illegal. Only the Federal Judge can make a relevancy decision

Based on research I've performed, I have derived the belief Mr. Tripati is in fact innocent of the charges brought against him. Furthermore, I have also determined he is being targeted and victimized by prison authorities while held in custody.

Attorney Daniel Montgomery (Deceased) of Tucson was in the process of getting together a team to assist Mr. Tripati in these challenges. In 2017 I had sent Mr. Tripati legal documents and information on three (3) DVD's, including Court orders concerning these challenges. Which were soiled by ADOC.

For these reasons, I will continue assisting Mr. Tripati in his efforts to obtain remedy and relief.

Although the following information does not concern persons beyond the attorney and client, apparently there are questions as to Mr. Tripati's financial relationship with my firm. Although I represent Mr. Tripati in legal matters, I have received no payments to date, nor or have I been compensated by Mr. Tripati. As such, my client owes me and my firm amounts in access of seven figures for fees, expenses, and services.

I hope this clarifies any questions you may have.

Cordially,

Frederick A. Romero Esquire

3

— 13 —



ARIZONA DEPARTMENT OF CORRECTIONS
Case 2:19-cv-05838-DWL--JZB  Document 19-9  Filed 08/30/20  Page 14 of 37
Case 2:19-cv-05838-DWL--JZB  Document 19-9  Filed 06/23/21  Page 11 of 41

## Inmate Property/Contraband/Disposition Tracking

| LOCATION/UNIT | DATE *(mm/dd/yyyy)* | TIME |
|---|---|---|
| ASPF - F / EAST | 02.07.2020 | 12:22 |

| INMATE NAME *(Last, First M.I.) (Please print)* | ADC NUMBER | PROPERTY SEIZED BY |
|---|---|---|
| TRIPATI, A. | 102081 | LEGENDRE, R. #199 |

### SEIZED PROPERTY RECEIPT

| # | Description | Reason |
|---|---|---|
| 1 | MEDICAL RECORDS CD | CD |
| | | |
| | | |
| | | |
| | | |

*The above described contraband was seized from the suspect/inmate when he/she knowingly took said contraband into a correctional facility, or was found in possession of said contraband in violation of A.R.S. 13-2505.*

## CONTRABAND CONTROL / CHAIN OF EVIDENCE

Evidence Control Number:

| From | Date *(mm/dd/yyyy)* | Time | To | Initials |
|---|---|---|---|---|
| LEGENDRE, R. | 02.07.2020 | 12:25 | GARCIA, R. | |
| Property | 2.7.2020 | 1227 | Lega Storage Locker in Property | |
| | | | | |
| | | | | |
| | | | | |

## PROPERTY RELEASE

| INMATE SIGNATURE | DATE OF NOTIFICATION *(mm/dd/yyyy)* |
|---|---|
| Tripati Refused to Sign Witness 3Z01 | |

| CONTRABAND CONTROL NUMBER | NOTIFIED BY *(Staff Signature and Badge Number)* |
|---|---|
| | |

- [ ] I wish to donate the property listed above to the Department of Corrections
- [ ] I wish to have the property listed above destroyed by the Department of Corrections
- [x] **HOLD FOR:** Appeal *(This option applies only for publications excluded under Department Order 914, Inmate Mail)*. Inmate must timely submit Inmate Letter, Form 916-1 to initiate appeal process per Department Order 914, Inmate Mail.    In Legal Storage
- [ ] **SEND TO:**    Name _____    Address _____
- [ ] **HOLD FOR:**    Name _____    Address _____

| SIGNATURE OF PERSON PICKING UP PROPERTY | DATE PROPERTY PICKED UP |
|---|---|
| | |

| CONTRABAND CONTROL OFFICER *(Last, First M.I.) (Please print)* | BADGE NUMBER | DISPOSAL DATE *(mm/dd/yyyy)* |
|---|---|---|
| DESTRUCTION COMMITTEE MEMBER *(Last, First M.I.) (Please print)* | BADGE NUMBER | DISPOSAL DATE *(mm/dd/yyyy)* |
| DESTRUCTION COMMITTEE MEMBER *(Last, First M.I.) (If Inmate unavailable)* | BADGE NUMBER | DISPOSAL DATE *(mm/dd/yyyy)* |

Distribution:  Original – Property Officer
Copy – Inmate
Copy – CIU/Disciplinary *(as needed)*

909-6(e)
11/23/16



## Inmate Property/Contraband/Disposition Tracking

| LOCATION/UNIT | DATE *(mm/dd/yyyy)* | TIME |
|---|---|---|
| ASPC-F/East Unit | 06/01/2019 | 0613 |
| INMATE NAME *(Last, First M.I.) (Please print)* | ADC NUMBER | PROPERTY SEIZED BY *(Last, First M.I.) (Please print)* |
| Tripati | 102081 | S. Negron |

### SEIZED PROPERTY RECEIPT

| # | Description | Reason |
|---|---|---|
| 24 | Legal CD's | Long term storage |
| | Inmate Tripati states that 11 CD's that were seized are not | |
| | present | |
| | | |
| | | |
| | | |

*The above described contraband was seized from the suspect/inmate when he/she knowingly took said contraband into a correctional facility, or was found in possession of said contraband in violation of A.R.S. 13-2505.*

### CONTRABAND CONTROL/CHAIN OF CUSTODY

Evidence Control Number:

| From | Date *(mm/dd/yyyy)* | Time | To | Initials |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

### PROPERTY RELEASE

| INMATE SIGNATURE | DATE OF NOTIFICATION *(mm/dd/yyyy)* |
|---|---|
| | |
| CONTRABAND CONTROL NUMBER | NOTIFIED BY *(Staff Signature and Badge Number)* |
| 19-A03-255 | S. Negron |

- [ ] I wish to donate the property listed above to the Department of Corrections
- [ ] I wish to have the property listed above destroyed by the Department of Corrections
- [ ] **HOLD FOR:**  Appeal *(This option applies only for publications excluded under Department Order 914, Inmate Mail)*.  Inmate must timely submit Inmate Letter, Form 916-1 to initiate appeal process per Department Order 914, Inmate Mail.
- [ ] **SEND TO:**                  [ ] **HOLD FOR:**
  Name _____       Name _____
  Address _____    Address _____
  _____              _____
  _____              _____

| SIGNATURE OF PERSON PICKING UP PROPERTY | DATE PROPERTY PICKED UP |
|---|---|
| | |

| | BADGE NUMBER | DISPOSAL DATE *(mm/dd/yyyy)* |
|---|---|---|
| CONTRABAND CONTROL OFFICER *(Last, First M.I.) (Please print)* | | |
| DESTRUCTION COMMITTEE MEMBER *(Last, First M.I.) (Please print)* | BADGE NUMBER | DISPOSAL DATE *(mm/dd/yyyy)* |
| DESTRUCTION COMMITTEE MEMBER *(Last, First M.I.) (If Inmate unavailable)* | BADGE NUMBER | DISPOSAL DATE *(mm/dd/yyyy)* |

Anant Kumar Tripati 102081
Post Office Box 5000
Florence, Arizona 85132

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

ANANT KUMAR TRIPATI,                    CIV 18-0066   TUC RM (CONS)

     Plaintiff.

Vs.

CORIZON INC et al.,

    Defendants.

## MOTION TO EXCEED PAGE LIMITS

## COSOLIDATED REPLY TO DOCUMENTS

## DECLARATION

## TABLE OF CONTENTS

TABLE OF CASES

APPENDIX

*MOTION TO EXCEED PAGE LIMITS* .................................................................................................*1*

*COSOLIDATED REPLY* .................................................................................................*1*
*DEFENDANTS MISREPESENT EIGHTH AMENDMENT*.................................................................*2*
*PLATA ADDS TO HECK FN 7 AND CREATES AN EXCEPTION TO PRESIER LINE OF CASES FOR CRUEL AND UNUSUAL PUNISHMENT IN PRISON_____3*

*AS DEFENDANTS INTENTIONAL ACTS INTENDED TO CHASTISE OR DETER PLAINTIFF RELIEF IS PROPER*.................................................................................................*5*

*THE EIGHTH AMENDMENT & HUMAN DIGNITY HAVE BEEN OFFENDED AND AGGRAVATED BY GOVERNOR DUCEY'S EXECUTIVE ORDER MANDATING RELIEF*.................................................*7*

*THE CONDUCT I COMPLAIN OF IS UNACCEPTABLE TO CONTEMPORARY SOCIETY AND UNCONSTITUTIONAL MANDATING RELIEF*.................................................................................*9*

THE CONDUCT I COMPLAIN OF INTENTIONAL NOT ACCIDENTAL OR A MISTAKE HAS NEVER HAPPENED TO ANY ONE PERSON IN ANY PRISON SETTING AND NO DECISION EXISTS ADDRESSING THIS AS TO ANY ONE PRISONER...................................................................................10

NO PENOLOGICAL GOALS ARE SERVED BY THE CONDUCT WARRANTING RELIEF..............................15

HISTORY AND TRADITION OF EQUITYAS ADMINISTERD IN THIS COUNTRY  PRIOR TO INDEPENDENCE IN THE UNITED KINGDOM MUST BE CONSIDERED AND PLAINTIFF SATISFIES THE NEW TRADITIONAL TEST FOR PERMANENT INJUNCTIONS....................................................16

THE COURT MADE ABSOLUTELY CLEAR THAT THE EBAY TEST IS NOT  LIMITED TO PATENT LAW..........................................................................................................................................18

THE NEW TRADITIONAL TESTS WARRANT CONSIDERATION OF WHAT THE CHANCERY COURT WOULD HAVE DONE IN ENGLAND PRIOR TO INDEPENDENCE.........................................................19

DUE TO ABSENCE OF A CASE IN POINT BROWN CONTROLS...........................................................21

THERE ARE NO AVAILABLE REMEDIES UNDER PLRA...................................................................21

AS BOSCHUWEICZ DESTROYS GRIEVANCE RECORDS ..................................................................21

CONCLUSION .........................................................................................................................22

DECLARATION


## MOTION TO EXCEED PAGE LIMITS


Plaintiff moves to file the consolidated reply of    pages, which addresses  all

responses to doc  .


## COSOLIDATED REPLY

## DEFENDANTS MISREPESENT EIGHTH AMENDMENT

¶DeShaney v Winnebago 489 US 189, 200 (1987) states when the state deprives people of their ability to take care of themselves and be dependent on the state, it must provide them with necessities and uses "examples" which do not have all situations but just examples. In the response defendants misrepresent what encompasses the EIGHTH AMENDMENT. (See Declaration attached)[1]

---

[1] Traditionally the Eighth Amendment is used in the context of pain and sentences, but as DeShaney **states that is not exclusive application of the amendment,** only examples .

### *PLATA ADDS TO HECK FN 7 AND CREATES AN EXCEPTION*
### *TO PRESIER LINE OF CASES FOR CRUEL AND UNUSUAL PUNISHMENT IN PRISON*

¶  *Brown v. Plata*  adds to  *Heck fn 7 and creates an exception to*

*Presier* [2] . *line of cases for cruel and unusual punishment in prison*

*to*  include  human dignity overlooked by defendants.[3]

¶ Unfortunately,   human dignity has not played a prominent role in many of the

Court's opinions prior to Brown v. Plata  *See, e.g.*, Overton v. Bazzetta, 539 U.S.

126, 138 (2003) (Stevens, J., concurring) ("[I]t remains true that the restraints

and the punishment which a criminal conviction entails do not place the citizen

beyond the ethical tradition that accords respect to the dignity and intrinsic worth

of every individual.") (internal quotation marks omitted); Hope v. Pelzer, 536 U.S.

730, 745 (2002) ("Hope was treated in a way antithetical to *human dignity*-he was

hitched to a post for an extended period of time . . . .") (emphasis added);

---

[2] Austin v. United States, 509 U.S. 602, 628–29 (1993) (Kennedy, J.,concurring in part and concurring in the judgment) ("In recounting the law's history, we risk anachronism if we attribute to an earlier time an intent to employ legal concepts that had not yet evolved.").

[3] Indeed, the Supreme Court recently recognized that release from custody may be an appropriate remedy even for prisoners who themselves are not harmed by ongoing unconstitutional conditions of confinement. *See* Brown v. Plata, 131 S. Ct. 1910, 1940 (2011). *Plata*, 131 S. Ct. at 1922 (noting that persistent and uncorrected constitutional violations in a prison context may be appropriately remedied by ordering the release of prisoners to reduce the total prisoner population).

Hudson v. McMillian, 503 U.S. 1, 10-11 (1992) (quoting the dignity language from Estelle v. Gamble, 429 U.S. 97, 102-03 (1976)); Hutto v. Finney, 437 U.S. 678, 685 (1978).    When references to human dignity appear in the pages of the United States Reports, they have mostly been confined to concurrences Farmer v. Brennan, 511 U.S. 825, 851 (1994) (Blackmun, J., concurring); Rhodes v. Chapman, 452 U.S. 337, 361, 372 (1981) (Brennan & Blackmun, JJ., concurring).  and dissents. Florence v. Bd. of Chosen Freeholders, 132 S. Ct. 1510, 1527 (2012) (Breyer, J., dissenting); O'Lone v. Estate of Shabazz, 482 U.S. 342, 368 (1987) (Brennan, J., dissenting); Bell v. Wolfish, 441 U.S. 520, 579, 592-93 (1979) (Marshall & Stevens, JJ., dissenting); Meachum v. Fano, 427 U.S. 215, 23233 (1976) (Stevens, J., dissenting); Wolff v. McDonnell, 418 U.S. 539, 597 (1974) (Douglas, J., dissenting).

¶  *Brown v. Plata* **marks, perhaps, a change in the opposite direction due to its strong language embracing the vitality of human dignity as an appropriate concern for the courts in vindicating the rights of prisoners in Eighth Amendment cases.** [4]

---

[4] Rhodes v. Chapman, 452 U.S. 337, 345 (1976) ("It is unquestioned that '[c]onfinement in a prison is a form of punishment subject to scrutiny under the Eighth Amendment standards.'" (quoting Hutto v. Finney, 437 U.S. 678, 685 (1978))

¶ According to the Governor's executive order prisoners, the only people who must be provided with health care under the constitution, are not vulnerable group so tests are not needed on them, but those in nursing homes must be given tested, violates DeShaney, **because if anything prisoners must have been tested first because we are the only group for whom the state has the duty of care. This fact and this fact alone is deliberate indifference due to COVID 19**[5].

## AS DEFENDANTS INTENTIONAL ACTS INTENDED TO CHASTISE OR DETER PLAINTIFF RELIEF IS PROPER

¶.The source of the intent requirement is not the predilections of the Court[6], but the Eighth Amendment[7] itself, which bans only cruel and unusual *punishment*. If

---

[5] The governor made a political calculation not expecting a challenge. This exposes the Governor to liability. In the Kent University cases, the US Supreme Court found the governor liable for executive orders as to the National guard on the campus.

[6] Indeed, the Supreme Court recently recognized that release from custody may be an appropriate remedy even for prisoners who themselves are not harmed by ongoing unconstitutional conditions of confinement. *See* Brown v. Plata, 131 S. Ct. 1910, 1940 (2011). *Plata*, 131 S. Ct. at 1922 (noting that persistent and uncorrected constitutional violations in a prison context may be appropriately remedied by ordering the release of prisoners to reduce the total prisoner population).

the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify. *Wilson*, 501 U.S. at 300. Justice Scalia justified the point as implementing the plain meaning of the word, quoting Judge Posner: Duckworth v. Franzen, 780 F.2d 645, 652 (7th Cir. 1985)  "The infliction of punishment is a deliberate act intended to chastise or deter. This is what the word means today; it is what it meant in the eighteenth century . . . . [I]f [a] guard accidentally stepped on [a] prisoner's toe and broke it, this would not be punishment in anything remotely like the accepted meaning of the word, whether we consult the usage of "intended to chastise or deter"—one reads Justice Scalia's opinion expecting that in the next paragraphs it will choose the extent intent-focused standard, and attach *Whitley v. Albers*'s "malicious and sadistic" language to conditions-of-confinement cases. Here, however, Justice Scalia backed off. Whether reflecting his own judgment or because he could go no farther given others' views, 475 U.S. at 319. he wrote: "Having determined that Eighth Amendment claims based on official conduct that does not purport to be the penalty formally imposed for a crime require inquiry into state of mind, it remains for us to consider what state of mind applies in cases challenging prison conditions."

---

[7] Traditionally the Eighth Amendment is used in the context of pain and sentences, but as DeShaney states that is not exclusive application of the amendment, only examples .

¶ As Justice Kennedy wrote: Prisoners are shut away—out of sight, out of mind. It seems fair to suggest that, in decades past, the public may have assumed lawyers and judges were engaged in a careful assessment of correctional policies, while most lawyers and judges assumed these matters were for the policymakers and correctional experts. Davis v. Ayala, 135 S. Ct. 2187, 2209–10 (2015) (Kennedy, J., concurring).  *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015).

## THE EIGHTH AMENDMENT & HUMAN DIGNITY
## HAVE BEEN OFFENDED AND AGGRAVATED BY  GOVERNOR DUCEY'S EXECUTIVE ORDER MANDATING RELIEF

¶    The particular phrase "human dignity" was first used to vindicate individual rights in Justice Murphy's dissenting opinion in *Korematsu v. United States* 325 U.S. at 240 (Murphy, J., dissenting). Justice Murphy also relied on the constitutional recognition of human dignity in his dissent in *Screws v. United States*. 325 U.S. 91, 134-35 (1945) (Murphy J., dissenting). [8]

---

[8] Defendants are not at liberty to disregard the executive order hence they cannot test all prisoners. The governor made a political calculation not expecting a challenge. This exposes the Governor to liability. In the Kent University cases, the US Supreme Court found the governor liable for executive orders as to the National guard on the campus.

¶  Justice Brennan once famously wrote, "even the vilest criminal remains a human being possessed of common human dignity." Furman v. Georgia, 408 U.S. 238, 273 (1972) (Brennan, J., concurring).[9]

¶  Justice Brennan discussed his conception of human dignity and its constitutional dimensions at great length in *Furman v. Georgia*, where the Court held that the death penalty, as then applied throughout the United States, was unconstitutional.   . Building on the foundation laid in *Trop v. Dulles*, 356 U.S. 86 (1958).   Justice Brennan concluded that a punishment, in this case the death penalty, is "cruel or unusual" when "it does not comport with human dignity." He concluded that, at the most general level, government action does not violate the Eighth Amendment where it respects the intrinsic value of the individual subjected to punishment.

¶  Justice Brennan applied a four-factor analysis in concluding that the death penalty absolutely violated the Eighth Amendment by denigrating human dignity. "The primary principle is that a punishment must not be so severe as to be

---

[9] The First, Fifth, and Fourteenth Amendments also place some limitations on the state's power to punish. *See, e.g.*, Johnson v. California, 543 U.S. 499, 515 (2005) (equal protection); Sandin v. Connor, 515 U.S. 472, 487 (1995) (procedural due process); O'Lone v.Estate of Shabazz, 482 U.S. 342, 352-53 (1987) (religious exercise); Turner v. Safley, 482 U.S. 78, 99-100 (1987) (speech rights).

degrading to the dignity of human beings." The severity of the punishment referenced by Justice Brennan does not simply refer to the infliction of pain, but also to punishments that "treat members of the human race as nonhumans, as objects to be toyed with and discarded." A punishment also violates human dignity where the sheer enormity of the punishment imposed on the convicted is degrading in and of itself, as was the case in Trop. Moreover, severe punishment is inconsistent with human dignity where it is arbitrarily inflicted by the State. Punishment is arbitrarily inflicted "when, without reason, [the State] inflicts upon some people a severe punishment that it does not inflict upon others."

## THE CONDUCT I COMPLAIN OF IS UNACCEPTABLE TO CONTEMPORARY SOCIETY AND UNCONSTITUTIONAL MANDATING RELIEF

¶ The conduct I complain of is unacceptable to contemporary society.[10]

¶ Human dignity is also affected where a punishment is inflicted that is considered  "unacceptable to contemporary society." A determination that a punishment has been rejected by contemporary society, as a depredation on human dignity, requires the presence of "objective indicators," such as the contemporary and historical use of the punishment being examined,

---

[10] This satisfies the objective standard Toguchi v Chung, 391 F. 3d 1051, 1057 (9th Cir. 2004)



demonstrating a society's current accept____ ___ ___ form of punishment. Finally,

severe punishment does not comport with _____ dignity where it is excessive,"

that is, "unnecessary." "The infliction of a _____ punishment by the State cannot

comport with human dignity when it is n__ ____ ___ than the _pointless_ infliction of

suffering." [11]

### THE CONDUCT I COMPLAIN OF INTENTIONAL NOT ACCIDENTAL OR A MISTAKE HAS NEVER HAPPENED TO ANY ONE PERSON IN ANY PRISON SETTING AND NO DECISION EXISTS ADDRESSING THIS AS TO ANY ONE PRISONER

¶ "The conditions presenting the risk must be sure or very likely ˙Baez v. Rees,

128 S.Ct. 1510 (2008) repeated because it has going on since 1993.. [12]

¶ The conduct that I complain is intentional[13] not accidental [14] or a mistake.

---

11 In Atkins, the Court cited to Robinson for the proposition that even one day in jail as punishment forhaving the common cold would be deemed excessive and unconstitutional. Atkins v. Virginia,536 U.S. 304, 311 (2002) (citing Robinson, 370 U.S. at 667).

[12] This is credible evidence of continuous threat. Johnsen v Ryan, 2011 WL 3555720 at * 3 (D Ariz. 8/11/11)

[13] Powell; Osinlye; Weigel; Igwe, Stewart, Arhin , Minev. Babich, Centurion, Corizon   should not have refused to give me the medication that helped my condition just because ADOC and Corizon's policies have been changed to provide for inmates not to get the medication that helped my condition .
Corizon and its employees should have reviewed my medical record and their failure to review my records of treatment given to me by Corizon that helped my condition and to discontinue that treatment is objectively unreasonable.
Powell; Osinlye; Weigel; Igwe, Stewart, Arhin , Minev. Babich, Centurion, Corizon   engaged in the conduct in aware that my medical condition shall get worse.

Powell; Osinlye; Weigel; Igwe, Stewart, Arhin , Minev. Babich, Centurion, Corizon have since August 28. 2014 been complaining that he needs to be seen by specialists for his urology, neurology, pain, shakes, tremors, allergies and memory issues. Due to Defendants refusal to have Plaintiff seen by specialists, and Defendants are themselves not specialists, Plaintiffs medical condition has worsened.

Nurses, doctors and other employees of Corizon tell Plaintiff and every inmate that even if people die Corizon/Centurion ADOC will not do anything. Their hands are tied and when they do anything, submit paperwork for consultants, surgery, order medication that has been effective supervisors refuse. The denial/delays are done for non-medical reasons and for the explicit.

Purpose of making money for Corizon, Centurion. Bonuses are paid to those involved in the process. Plaintiff has been informed that payments made by Corizon reflect this. In order to insulate itself and staff from liability, Corizon/ADOC has a "group of doctors" who sign off in the delays/denials for non-medical reasons without actually examining the patient/inmate. Plaintiff has been informed and testimonies in Parsons by Corizon doctors show medical records show this. Their decisions, made by this group of doctors are not medical decisions.

ADOC/ Corizon/Centurion are able to do this because most inmates do not file suit and when and if litigation is initiated. Corizon/Centurion/ADOC is able to delay the litigation for years. The savings and money made by implementing the policy is far greater than the total sums of money spent providing the care necessary. I have been informed examination of the lawsuits against Corizon/ADOC/Centurion the sums spent defending these/paying the judgments when compared with the costs of care denied if they would have been provided support this.

ADOC/ Corizon's/Centurions unwritten policies and practices conflict with written policies and guidelines and the written contracts Corizon/Centurion has to provide inmates with health care. (SUPP COMP para 30-38 )

[14] I filed a request for emergency relief and notified the court Doc 145 declarations were false. ,April 21, 2020 I was informed Ramos and Erwin allowed Kinser, Mansano, and Garcia to break the seal in 19 legal boxes, in my absence and remove documents. Kinser, Mansano, Garcia removed confidential documents in violation of DO 902.10.2 which included affidavits from Cotter, Weathers, Ballinger etc. who were my witnesses now dead.

*Gomez v. Vernon,* 255 F.3d 1118 (9th Cir 2001) states as a prisoner, I retain my

attorney client privilege. Prison authorities cannot read my legal papers but can search them.

My lawyers Romero, Montgomery and others sent me privileged documents on 35 CD's. When I received these they were searched for contraband and none was found. These CD's contain privileged documents addressing my criminal case, pending cases, research, and strategy. The conduct serves no legitimate penal goals and I presented these through the grievance process that has been frustrated by Boschuweicz destroying the grievance records.

Ryan, McWilliams, Erwin, Kepney, Glynn, Curran, Shuman, Ramos, Young, and Boschuweicz directed Ullibarri to conduct a special search on March 13, 2019 for 79 days of these CD's. The search was not a security search, but a special search of legal documentation. They upon my objection, and without me present, searched the CD's, read and shared their privileged content with Corizon, ADOC legal services, and other attorneys. The conduct serves no legitimate penal goals and I presented these through the grievance process that has been frustrated by Boschuweicz destroying the grievance records.

Ullibarri, Bohuszewicz, Bell, Erwin in have 11 CD's. Detinue mandates they return these. No legitimate penal goal is served by the conduct.

The 11 CD's have 9 CD's from Montgomery with documents and evidence as to the challenge to my convictions and evidence to challenge decisions in CIV 11 - 0195. CIV 15-0140, CIV 13-0615, CIV 16-0282, CIV 99-20757 and to prosecute this case and 18- 0066RM see attached. The conduct serves no legitimate penal goals and I presented these through the grievance process that has been frustrated by Boschuweicz destroying the grievance records.

Corizon and ADOC took adverse action as to legal access based on the stolen privileged documents.

Bohuszewicz, Erwin, McWilliams, Curran, O'Brien, Kepney, Ullibarri, Glynn, advised me I will not have legal access to view my own privileged legal documents unless I waive privilege, and consent to Ullibarri telling me what I can send to the court. This is in direct violation of Ex Parte Hull. Since February 12, 2019 they have discouraged and hampered my legal access and are preventing me from meaningfully presenting my claims.

.Every piece of legal mail receive has the name of the lawyer, his/her address. Osler, Schletter, Romero, Ramos admitted in writing that they on July 20, 2017 opened two pieces of my legal mail from attorney Fred Romero properly addressed. This is not the first time this has happened and when this happened previously I advised CO III Brennan and asked that staff be careful.

.Osler, Ramos, Schletter, Moreno disciplined me and the ticket was dismissed.

They took privileged communications from these mail and published them on ADOC computers. According to them they opened the mail as the paperwork was not from California and they obtained the lawyer's permission before they opened the mail. However the lawyer states he did not give any such permission. They called counsel and threatened him according to counsel. Counsel states they were forcing him to say that he did not send the mail but he refused to say so, because he sent the mail. At no time have I waived my privilege or authorized Defendants to open, read, publish any communications to/from my lawyers.

Erwin, by authorizing opening, seizing and publishing contents of my legal mail have prevented me from communicating with my counsel concerning this matter, claims in CIV 16-0282, pending appeals, collateral challenge to my criminal convictions, my pending petitions for review and certiorari.

Curran, Erwin and Glynn advised me they shall continnue to open and read my legal mail that I receive from my solicitors in the United Kingdom and Australia and have continued to do so.

Defendants Osler, Schletter, Moreno, and Ramos seized 3 DVD's with research and evidence relating to pending cases, as well as other acts and evidence against named Defendants.

.Osler, Schletter, Moreno, and Ramos informed in declarations I was a suspect for abusing legal mail being investigated SSU and this is false.

Erwin, Glynn, Dosset, Cuman, by authorizing the opening, seizing, publishing the contents of his legal mail from counsel have prevented Plaintiff from communicating with counsel concerning this case. CV 16-00282. Pending appeals, pending challenges to his criminal convictions. Specifically Plaintiff's legal mail has been opened about eight times in Plaintiffs absence and the and the research was well in those destroyed/lost, thereby preventing Plaintiff from adequately presenting his claims. As a direct consequence a great deal of evidence/research, core to these cases, have been seized by Defendants.

Erwin, Glynn, Dossett. Curran specifically advised me that these are not legal mail and will be opened. As a consequence I have no counsel.

ERWIN, Glynn, Ramos, Bochuweicz, Ramos, Osler, Shinn, Moreno. Shletter, Mansano, Garcia, Kinser, Young, Ullibarri, Johnson and each of them have violated their own policies which forbid opening of legal mail and clearly established federal law. The conduct serves no legitimate penal goals and I presented these through the grievance process that has been frustrated by Boschuweicz destroying the grievance records.

(Count 3 Supp  Para 117 – 134)

¶    Justice Brennan concluded    punishment violates the Eighth Amendment
when it degrades human dignity. The four general principles that he elucidated in
his concurring opinion were aimed at providing "means by which a court can
determine whether a challenged punishment comports with human dignity."
His analysis in *Furman* used human dignity as the metric to determine when
punishment crosses the line, but did not alter the ability of the government to
reduce the liberty of individuals convicted of committing a crime.

¶    Arizona legislature    determined since my sentencing that community
standards require for  my crimes 9    years not 52 years incapacitation[15]. The
Direction of Legislative Change Gregg v. Georgia, 428 U.S. 153, 175 (1976)
(plurality opinion); see also Roper v. Simmons, 543 U.S. 551, 564 (2005) (stating
that "[t]he beginning point [of the Eighth Amendment analysis] is a review of
objective indicia of consensus, as expressed in particular by the enactments of
legislatures that have addressed the question"); Penry v. Lynaugh, 492 U.S. 302,

---

[15] Weems v. United States, 217 U.S. 349, 382 (1910) ("[T]he fault is in the law;
and, as we are pointed to no other under which a sentence can be imposed, the
judgment must be reversed, with directions to dismiss the proceedings."). The
Court declined to consider the fixed imprisonment term of the sentence
separately from the conditions of confinement imposed by the *cadena temporal*
sentence because they had been imposed pursuant to statute and, therefore,
had to be considered jointly as punishment. *Id.* at 381.

331 (1989) (indicating that the "clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures"), abrogated by Atkins v. Virginia, 536 U.S. 304, 312 (2002 )

### NO PENOLOGICAL GOALS ARE SERVED BY THE CONDUCT
### WARRANTING RELIEF

¶ In exercising its independent judgment, in the context of a sentence, the Supreme Court considers "the culpability of the offenders at issue [16]in light of their crimes and characteristics, along with the severity of the punishment in question. . . . In this inquiry the Court also considers whether the challenged sentencing practice serves legitimate penological goals." Coker v. Georgia, 433 U.S. 584, 597 (1977) (plurality opinion) ("[T]he Constitution contemplates that in the end our own judgment will be brought to bear on the question of the acceptability of the [] penalty under the Eighth Amendment.").

¶ **The precedent indicates that the Court's evaluative posture can be described in the following way: the more serious the punishment, the more serious the scrutiny. On several occasions, "[t]he Court has recognized the severity of sentences that deny convicts the possibility of parole." Graham v. Florida, 560 U.S. 48, 70 (2010).**

---

[16] The actions I complain of fall within FRCIVPR15 (c) attempted to be alleged.

¶ No legitimate penological goals is served by the conduct.[17]

## HISTORY AND TRADITION OF EQUITYAS ADMINISTERD IN THIS COUNTRY  PRIOR TO
## INDEPENDENCE IN THE UNITED KINGDOM MUST BE CONSIDERED AND PLAINTIFF SATISFIES THE NEW TRADITIONAL TEST FOR PERMANENT INJUNCTIONS

¶ In eleven different cases the U.S. Supreme Court from nearly as many substantive areas has deeply entrenched the "no adequate remedy at law" requirement for equitable relief, and it has repeatedly underscored the distinction between legal and equitable remedies. The new equity cases are Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962 (2014); US Airways, Inc. v. McCutchen, 133 S. Ct. 1537 (2013); CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011); Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139 (2010); Nken v. Holder, 556 U.S. 418 (2009); Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008); Munaf v. Geren, 553 U.S. 674 (2008); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006); Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356 (2006); Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002);

---

[17] For the governor to totally disregard the duty of the state to prisoners and only order people in nursing homes be tested first is deliberate indifference. The governor made a political calculation not expecting a challenge. This exposes the Governor to liability. In the Kent University cases, the US Supreme Court found the governor liable for executive orders as to the National guard on the campus.

Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 312 (1999).

¶ The first question is about the boundaries of equitable remedies. [18]It is a threshold question, and in analogy to administrative law it could be called "Equity Step Zero." If the answer to the first question is yes, then the second question becomes relevant. It is about the content of the law of equitable remedies. Most of the new equity cases answer one or the other of these questions, not both.

¶ The Court's most important decision in decades on the standards for a permanent injunction is eBay v. MercExchange. What makes the influence of the eBay decision surprising is how accidental it appears to have been. At issue in the case was whether a certain kind of patent holder—one who does not participate in the relevant market— would get a permanent injunction against infringing products more or less automatically. Writing for the Court, Justice Thomas framed the question in terms of whether traditional equitable principles applied to patent cases. The Court's answer was unanimous: the "traditional test" for permanent injunctions applies to "disputes arising under the Patent Act."

---

[18] The public safety/interest is not compromised as my sentence under current law the legislature has found should be 9.25 and the misconduct, seizing destroying privileged legal documents etc in addition to being unlawful offends contemporary and well established legal standards.

¶ In resolving this question, the Court instructed lower courts to apply "well-established principles of equity." According to those principles, the Court said, "a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief," showing: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

### THE COURT MADE ABSOLUTELY CLEAR THAT THE EBAY TEST IS NOT LIMITED TO PATENT LAW

¶     In Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156–57 (2010) (quoting eBay, 547 U.S. at 391 THE COURT MADE ABSOLUTELY CLEAR THAT THE EBAY TEST SHOULD NOT BE LIMITED TO PATENT LAW    "A plaintiff must demonstrate . . . that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (emphasis added). If there is no reason[19] to think an injunction would affect the public interest, either for good or ill, then this part of the test is satisfied.

---

[19] Streeter v. Hopper, 618 F.2d 1178, 1181-82 (5thCir. 1980) (holding in a § 1983 case that the district court properly ordered plaintiff prisoners removed from a prison where they faced a serious threat of injury from officers and other prisoners; defendants were given latitude to select the prison to which plaintiffs were transferred "where their safety could be assured")

## THE NEW TRADITIONAL TESTS WARRANT CONSIDERATION OF WHAT THE CHANCERY COURT WOULD HAVE DONE IN ENGLAND PRIOR TO INDEPENDENCE

¶ The Court has also extended the eBay test to the law of preliminary injunctions.[20]  An initial step in this direction came in Munaf v. Geren,  where lower federal courts had issued preliminary injunctions blocking the transfer of American citizens to Iraqi custody for criminal trial. Writing for the entire Court, Chief Justice Roberts rebuked the lower courts for failing to engage in the proper analysis for a preliminary injunction.  "We begin with the basics," he said, and he proceeded to emphasize that a preliminary injunction is "an extraordinary and drastic remedy" that is "never awarded as of right."  He also noted that federal courts should issue a preliminary injunction only after a showing of "likelihood of success on the merits," a step elided by the lower courts. Chief Justice Roberts then moved from critique of the preliminary injunction to the merits. He said that to consider the merits in this procedural posture had "long been the rule" in "the ordinary practice in equity as administered in England and this country."

¶ Individually, none of these points in Munaf was remarkable. It has often been said that preliminary injunctions are extraordinary, that they are not awarded as of right, and that they require a showing of some likelihood of success on the merits.  But all of these points were elective: the Court could easily have

---

[20] The executive order requires preliminary relief.

reversed in Munaf without even considering the soundness of the preliminary injunction. Munaf underscores the Court's emphasis on the distinctiveness of equitable remedies and the importance of considering equity's past.

¶    The Court    is insisting that a trial judge who wants to give an equitable remedy must make an explicit finding that legal remedies are not adequate (i.e., the finding that allows a departure from the norm of legal remedies).

¶    The  Court has not made it difficult to make that finding. See, e.g., Nken v. Holder, 556 U.S. 418, 437 (2009) (Kennedy, J., concurring) (describing a "stay of removal" as "an extraordinary remedy that should not be granted in the ordinary case" and calling for "empirical data on the number of stays granted"). Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962, 1976 n.19 (suggesting that a plaintiff who proves copyright infringement "will likely gain forward-looking injunctive relief stopping the defendant's repetition of infringing acts

¶    In eBay, for example, the Court said "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." The tests that the Court has given for permanent injunctions (eBay), preliminary injunctions (Winter), and stays (Nken) all structure the decision making of a district court, yet every part of every test involves ample discretion. Likewise, in Petrella, the Court recognized that lower courts have "considerable leeway" when "fashioning equitable remedies."

## DUE TO ABSENCE OF A CASE IN POINT
## BROWN CONTROLS

¶ "Inhumane prison conditions often are the result of cumulative actions and inactions by numerous officials inside and outside the prison, sometimes over a long period of time" Wilson v. Seiter,  501 US 294 (1991) This is obduracy or wantonness not inadvertence or good faith error" [21]

¶"With all deliberate speed provisions" of Brown v Bd of Edu  349 US 294, 301 (1954) allow this court to discuss the obstacle face and fashion a remedy. None of the cases cited by counsel apply because no single person has faced this situation that I have.[22]

## THERE ARE NO AVAILABLE REMEDIES UNDER PLRA
## AS BOSCHUWEICZ DESTROYS GRIEVANCE RECORDS

¶ "The  conduct serves no legitimate penal goals and I presented these through the grievance process that has been frustrated by Boschuweicz destroying the

---

[21] In response to motion to disqualify the Attorney General this court disqualified Jonathan Schwartz as Paul Carter represented he is the only person who has anything to do with my case and no one else has anything. He stated there was a Chinese wall. The filings by the Attorney General show this to be false. Since that decision Kinser et al seized my privileged documents and they pertain to the Schwartz orders. This is evidence of continuous threat.

[22] Pervear v. Massachusetts, 72 U.S. (5 Wall.) 475, 479-80 (1866).Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, 551 U.S. 701, 718-719 (2007) ("The fact that it is possible that children of group members will not be denied admission to a school based on their race—because they choose an undersubscribed school or an oversubscribed school in which their race is an advantage—does not eliminate the injury claimed.")

grievance records[23]."(Supp Para 116, 134, 209

## **CONCLUSION**

¶ ***Brown v. Plata*** **adds to** ***Heck fn 7 and creates an exception to Presier*** **. line of cases for cruel and unusual punishment in prison to include human dignity which has been overlooked by defendants.** with instructions the U S Marshall put me on a flight to UK so that they are sure I have departed.[24]

Respectfully submitted,

Anant Kumar Tripati

---

[23] Farmer v. Brennan, 511 U.S. 825, 847 (1994) (establishing that a prison official may be held liable for an Eighth Amendment violation absent taking "reasonable measures" to address the substantial risk of a constitutional violation) ) see also Ross Blake,136 S Ct 1850, 54-55(2016)

[24] In *Koon v. United States*, the Supreme Court expressly recognized in context of sentencing guidelines that a sentencing court may consider "susceptibility to abuse" in prison as a factor for a downward departure in extraordinary or unusual circumstances. 518 U.S. 81, 111 (1996)

 

February 19, 2020

RE:    **Anant Kumar Tripati**
       **Case 13.897**
       **United States of America**

Dear Petitioner:

I am pleased to address you in order to inform you that the Inter-American Commission on Human Rights examined the petition referred to above and adopted its Report on Admissibility No. 219/19 on October 24, 2019, copy enclosed, in compliance with Article 37 of the Commission's Rules of Procedure.

In accordance with Article 36(2) of the Commission's Rules of Procedure, petition number P-459-08 has been registered as case number 13.897, as cited above. I ask that you utilize the latter reference in all future communications.

Pursuant to Article 37(1) of its Rules of Procedure, the Commission has set a period of four months, as from the date of the present communication, for you to present additional observations regarding the merits.

Further, as provided for in Article 37(4) of the Rules of Procedure, the Commission places itself at the disposal of the parties with a view toward reaching a friendly settlement of this matter, in compliance with Article 40 of the Rules of Procedure of the IACHR.

Accordingly, I request that you present your response to that offer as soon as possible.

Sincerely,

**Marisol Blanchard**
**Assistant Executive Secretary, a.i.**

Anant Kumar Tripati

2/19/2020-RS-3280644



IACHR  Inter-American
Commission on
Human Rights



OEA/Ser.L/V/II.
Doc. 246
24 October 2019
Original: English

# REPORT No. 219/19
# PETITION 459-08
## REPORT ON ADMISSIBILITY

## ANANT KUMAR TRIPATI
## UNITED STATES OF AMERICA

Approved electronically by the Commission on October 24, 2019.

Cite as: IACHR, Report No. 219/19, Petition 459-08. Admissibility. Anant Kumar Tripati. United States of America. October 24, 2019



Organization of
American States

www.cidh.org

## I.    INFORMATION ABOUT THE PETITION

| | |
|---|---|
| Petitioner | Anant Kumar Tripati[1] |
| Alleged victim | Anant Kumar Tripati |
| Respondent State | United States |
| Rights invoked | Articles 5 (right to humane treatment); 8 (right to a fair trial); 12 (freedom of conscience and religion) and 24 (right to equal protection) of the American Convention on Human Rights[2] and other international treaties[3] |

## II.    PROCEEDINGS BEFORE THE IACHR[4]

| | |
|---|---|
| Filing of the petition | April 17, 2008 |
| Additional information received during initial review | August 30 and October 12, 2011; February 8 and November 14, 2012 |
| Notification of the petition | September 24, 2013 |
| State's first response | October 22, 2014 |
| Additional observations from the petitioner | January 12, 2015; November 11 and December 4, 2017 |
| Additional observations from the State | August 10, 2015 |

## III.    COMPETENCE

| | |
|---|---|
| *Ratione personae:* | Yes |
| *Ratione loci:* | Yes |
| *Ratione temporis:* | Yes |
| *Ratione materiae:* | Yes, American Declaration of the Rights and Duties of Man[5] (ratification of the OAS Charter on June 19, 1951 and in conformity with Article 20 of the IACHR's Statute and Article 51 of its Rules of Procedure) |

## IV.    DUPLICATION OF PROCEDURES AND INTERNATIONAL *RES JUDICATA*, COLORABLE CLAIM, EXHAUSTION OF DOMESTIC REMEDIES AND TIMELINESS OF THE PETITION

| | |
|---|---|
| Duplication of procedures and international *res judicata* | No |
| Rights declared admissible | Articles I (life, liberty and personal security), II (equality before law) III (religious freedom and worship), IV (freedom of investigation, opinion, expression and dissemination), X (inviolability and transmission of correspondence), XI (the preservation of health and well-being), XVIII (fair trial), XXV (protection from arbitrary arrest) and XXVI (due process of law) of the American Declaration |
| Exhaustion or exception to the exhaustion of remedies | Yes, in the terms set forth in Section VI |
| Timeliness of the petition | Yes, in the terms set forth in Section VI |

## V.    SUMMARY OF ALLEGED FACTS

1.    Mr. Anant Kumar Tripati (hereinafter "Mr. Tripati" or the "alleged victim") claims to be "falsely imprisoned" in the United States since 1992 and that his arrest, prosecution and conviction were the result of fabricated charges and the collusion between the state courts, attorneys and law enforcement officers which has affected his rights. Moreover, the alleged victim claims to have been the subject of retaliatory action while in prison, including the denial of food and medical treatment, the destruction of his

---

[1] The petition was initially presented by Mr. Frederick A. Romero, whose representation of Mr. Tripati was rescinded on May 5, 2015.
[2] Hereinafter, "the American Convention" or "the Convention."
[3] Articles 7, 9 and 14 of the International Covenant on Civil and Political Rights; and Articles 5, 7, 8, 10, 18 and 30 of the Universal Declaration on Human Rights.
[4] The observations submitted by each party were duly transmitted to the opposing party.
[5] Hereinafter, "the American Declaration" or "the Declaration."

personal belongings and legal documents, and the refusal to grant him access to legal counsel, resources and material.

2.      The petition alleges that Mr. Tripati lived in California where he founded Legal Research Associates in Beverly Hills. He claims that he was investigating corruption and other illegal activities of authorities of Maricopa County and Arizona's judicial system and that these authorities took retaliatory measures against him upon learning that he intended to expose his findings.

3.      In this regard, he claims that the Maricopa County District Attorney's Office fabricated evidence against him and falsely accused him of attempting to defraud the state of Arizona in a bail bond scheme concerning the release of four persons held in the Maricopa County jail. He claims that as a result of these charges a California court ordered his arrest and the seizure of his property. He states that authorities from the states of California and Arizona arrested him at his workplace on June 24, 1992, and seized documents that were not included in the court order, such as those concerning the corruption and illegal activities of the judicial authorities of Maricopa County, which were later deliberately destroyed by these authorities.

4.      Furthermore, Mr. Tripati affirms that he was denied the right to a fair trial since he was not provided with effective assistance of counsel in both the trial court and on appeal, and because the prosecution intimidated witnesses and presented perjured testimony as evidence. Likewise, he alleges that the public defender assigned to him was overworked and failed to present evidence that was fundamental to his case and that the trial court also prevented him from presenting evidence in his defense. On November 30, 1993 he was convicted and sentenced to 28 years for fraudulent schemes, 20 years for attempted fraudulent schemes and 4 and a half years for false swearing, resulting in a prison sentence of 52 and a half years without the possibility of parole.

5.      The petition indicates that the alleged victim appealed his 1993 conviction to the Court of Appeals of the state of Arizona, which issued its judgment on February 22, 1996, finding no fundamental error and affirming the conviction and sentences. He claims to have filed numerous appeals, motions and habeas petitions since then in order to seek relief from his criminal conviction and for the violation of his constitutional rights under the U.S. Civil Rights Act. He claims that proceedings regarding the violation of his civil rights ended when the U.S. Supreme Court denied his *writ of certiorari* on February 19, 2008.[6]

6.      The petitioner alleges that prison authorities have taken retaliatory actions against him as a result of his continued efforts to litigate his case and as a result of complaints lodged by him against the Arizona Department of Corrections (hereinafter, "ADOC"). In this regard, he claims that they have denied him access to adequate medical service, have destroyed files relating to his case and denied him access to his counsel and have denied him food prepared in accordance with his Hindu religious beliefs. They have also denied him access to legal resources and information afforded to other inmates and placed him at the farthest end of the prison to restrict access to those resources.

7.      According to the petition, the alleged victim has attempted to obtain relief from these measures by communicating them to several authorities. Moreover, in 2017, in order to respond to a request for information from the IACHR, the petitioner requested the U.S. District Court for the District of Arizona to provide him with an electronic copy of judicial documents pertaining to his case since his copies had been lost or destroyed by the ADOC and he did not have funds to pay for new copies. The District Court considered that while it may be able to pay for service of process on behalf of an indigent litigant and, in certain cases, to pay the costs of printing the record on appeal and preparing a transcript of proceedings, the same does not authorize the Court to pay the costs for an indigent litigant's general copy requests. It therefore rejected his request and noted that he could obtain the copies he desired by submitting a written request accompanied by an appropriate payment of 50 cents per page plus a 64 dollar retrieval fee to retrieve his case file from the archives.

8.      The United States emphasizes that the U.S. criminal justice system embodies the protections enumerated in the American Declaration and that the petitioner benefited from such safeguards in this case, especially at his criminal trial and through multiple layers of judicial review. In addition, it manifests that by

---

[6] The Commission has not been informed if the petitioner had legal representation throughout all of these proceedings.

August 2015 the petitioner has filed no fewer than 43 civil cases, the latest of which was a *habeas corpus* petition filed on July 27, 2015, which was still pending a resolution at the time.

9.       The State indicates that it does not find any basis for this matter to be considered under the Rules of Procedures of the Commission. Furthermore, it indicates that the petitioner fails to state facts that establish a violation of the rights in the American Declaration and has yet to exhaust the domestic remedies.

## VI.    EXHAUSTION OF DOMESTIC REMEDIES AND TIMELINESS OF THE PETITION

10.       Both parties indicate that over the past 25 years Mr. Tripati has continued to file numerous appeals and motions seeking the revision of his conviction, both in criminal and civil proceedings. The alleged victim claims that he exhausted domestic remedies on February 19, 2008, the date on which the U.S. Supreme Court rejected the *writ of certiorari* that he filed regarding the violation of his civil rights, and that he then proceeded to file his petition before the IACHR in a timely manner on April 17, 2008. On the other hand, the State, in its submissions filed on August 10, 2015, alleges that since filing his petition before the IACHR, Mr. Tripati has continued to pursue other legal remedies, the latest of which was a habeas petition filed on July 27, 2015, and which was still pending a decision at the time. The IACHR has not received additional information concerning the current status of the habeas petition.

11.       The IACHR recalls that whenever a State alleges a failure to exhaust domestic remedies, it must indicate which remedies should have been pursued and, in addition, demonstrate that they are suitable for remedying the alleged violation. In the present case, the State has indicated that Mr. Tripati has not exhausted domestic remedies due to a pending habeas petition filed on July 27, 2015. However, the Commission recalls that the purpose of the requirement of the exhaustion of domestic remedies is to provide the State with an opportunity to remedy the alleged violation, and the information provided by the parties demonstrates that by 2015 the petitioner had already exhausted roughly 40 remedies in challenging his conviction and the alleged constitutional violations, including previous *habeas* petitions. Accordingly, the IACHR considers that the petitioner was not required to exhaust the habeas petition filed in July 2015 before presenting his petition before the Commission.

12.       In light of the foregoing, the IACHR considers that the petitioner exhausted domestic remedies on February 19, 2008, the date on which the U.S. Supreme Court rejected the *writ of certiorari* that he filed in civil proceedings concerning the alleged violation of his constitutional rights. Furthermore, having exhausted domestic remedies on February 19, 2008, and presented the petition on April 17, 2008, the Commission considers that the requirement of Article 32.1 of the petition has also been met.

13.       With respect to the alleged denial of food and medical treatment, the IACHR notes that Mr. Tripati filed multiple medical grievances to the ADOC, many of them subsequent to filing the present petition before the IACHR. Moreover, with respect to the alleged destruction and alteration of evidence, the denial of access to counsel, the opening of his legal correspondence and the denial of access to legal resources, the case file also contains multiple letters sent to the prison warden and the ADOC concerning these matters between 2009 and 2016. In accordance with the doctrine of the IACHR, the analysis concerning the requirements set forth in Article 32.1 of the IACHR Rules of Procedure shall be carried out in light of the situation existing at the moment when it decides on the admissibility or inadmissibility of a petition.[7]

## VII.    COLORABLE CLAIM

14.       Without prejudging the merits of the complaint, after examining the position of the parties, and pursuant to the requirements set out in Articles 31 to 34 of its Rules of Procedure, the Inter-American Commission decides to declare the petition admissible for the purpose of examining the alleged violation of the rights set forth in Articles I (life, liberty and personal security), II (equality before law) III (religious freedom and worship), X (inviolability and transmission of correspondence), XI (preservation of health and

---

[7] IACHR, Report No. 15/15, Petition 374-05. Members of the Trade Union of Workers of the National Federation of Coffee Growers of Colombia. Colombia. March 24, 2015, para. 41. Accord I/A Court H.R., *Case of Wong Ho Wing v. Peru.* Preliminary Objection, Merits, Reparations and Costs. Judgment of June 30, 2015. Series C No. 297. paras. 25-28.

well-being), XVIII (fair trial), XXV (protection from arbitrary arrest) and XXVI (due process of law) of the American Declaration in the detriment of Mr. Tripati.

15.     Furthermore, the IACHR will assess at the merits stage whether the alleged denial of judicial documents to an indigent litigant free of cost could constitute a violation of articles IV (freedom of investigation, opinion, expression and dissemination) of the American Declaration.

16.     The IACHR lacks competence *ratione materiae* to declare violations of rights embodied in instruments that are not a part of the inter-American system of human rights. However, in accordance with basic norms of interpretation, the Commission can take the terms of the Universal Declaration of Human Rights and the International Covenant on Civil and Political Rights into account in applying the American Declaration.

17.     Lastly, the IACHR prompts that it has no competence *ratione materiae* to declare violations of the American Convention due to the State has not yet ratified such instrument. However, in accordance with basic norms of interpretation, the Commission can take the terms of the Convention into account in applying the American Declaration.

**VIII.    DECISION**

1.     To find the instant petition admissible in relation to Articles I, II, III, IV, X, XI, XVIII, XXV and XXVI of the American Declaration; and

2.     To notify the parties of this decision; to continue with the analysis on the merits; and to publish this decision and include it in its Annual Report to the General Assembly of the Organization of American States.

Approved by the Inter-American Commission on Human Rights on the 24th day of the month of October, 2019. Esmeralda E. Arosemena Bernal de Troitiño, President; Joel Hernández García, First Vice President; Antonia Urrejola Noguera, Second Vice President; Margarette May Macaulay, Francisco José Eguiguren Praeli, Luis Ernesto Vargas Silva and Flávia Piovesan, Commissioners.

The undersigned, Paulo Abrão, Executive Secretary of the Inter-American Commission on Human Rights, in keeping with Article 49 of the Commission's Rules of Procedure, certifies that this is an accurate copy of the original deposited in the archives of the IACHR Secretariat.

Paulo Abrão
Executive Secretary

4