SH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anant Kumar Tripati,<br><br>            Plaintiff,<br><br>v.<br><br>Corizon Incorporated, et al.,<br><br>            Defendants. | No.   CV 18-00066-TUC-RM<br><br>Consolidated with: CV 18-03313-PHX-RM<br><br>**ORDER** |

Plaintiff Anant Kumar Tripati, who is currently confined in the Arizona State Prison Complex ("ASPC")-Florence, East Unit, brought this pro se civil rights action pursuant to 42 U.S.C. § 1983. Before the Court is Defendant Shuman's Motion for Summary Judgment, which Plaintiff opposes. (Docs. 439, 447.)[1] Plaintiff also has several motions pending before the Court. (Docs. 448, 453, 454.)

**I.    Background**

In his Second Amended Complaint, Plaintiff sued several Corizon and Arizona Department of Corrections ("ADC") officials. (Doc. 42.) On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment medical claim against Defendants Babich, Corizon, and Ryan in his official capacity only ("Corizon Defendants") in Count One and a First Amendment mail claim against Defendants Osler, Schletter, Moreno, and Ramos ("ADC Defendants") in Count Three. (Doc. 41.) The Court

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 441.)

directed these Defendants to answer and dismissed the remaining claims and Defendants. (*Id.*)

Defendant Ryan subsequently retired from the ADC, so the Court substituted current ADC Director David Shinn for Ryan as a Defendant in his official capacity only and dismissed Ryan from the action. (Doc. 228.)

Subsequently, the Court consolidated this action with Plaintiff's lawsuit in case number 18-CV-03313-PHX-JJT (JFM) and added several claims and Defendants. (*See* Doc. 261.) Specifically, upon screening Plaintiff's Second Amended Complaint in CV 18-03313 pursuant to 28 U.S.C. § 1915A(a), the Court determined that, liberally construed, Plaintiff stated the following claims: (1) an Eighth Amendment medical care claim in Count One against Defendants Corizon, Stewart, Arhin, Minev, Powell, Osinloye, Weigel, Igwe, Shuman, and Centurion regarding their alleged failure to treat Plaintiff's high blood, pressure, heart condition, and COPD; (2) an Eighth Amendment medical care claim in Count One against Defendants Young, Bohuszewicz, and Shuman regarding their alleged failure to provide Plaintiff a low-salt allergy diet; and (3) a First Amendment retaliation claim in Count One against Defendants Bohuszewicz and Shuman for allegedly filing a false disciplinary report against Plaintiff for filing administrative grievances. (Docs. 45 and 60 in CV 18-03313.)

On September 3, 2020, the Court granted summary judgment to Defendants Shinn, Corizon, Babich, Osler, Schletter, Moreno, and Ramos as to Plaintiff's claims against them in the original action. (Doc. 371.)

On February 5, 2021, the Court granted summary judgment to Consolidated Defendants Shuman, Bohuszewicz, and Young for Plaintiff's failure to exhaust the claims regarding his low-salt medical diet; the Court also granted summary judgment to Consolidated Defendants Arhin, Igwe, Minev, Osinloye, Powell, Stewart, Weigel, Corizon, and Centurion after determining that they were not deliberately indifferent to Plaintiff's serious medical needs. (Doc. 436.)

Defendant Shuman now moves for summary judgment and argues that Plaintiff failed to exhaust the available administrative remedy as to the remaining medical care claim. (Doc. 439.)

## II. Plaintiff's Motions

In his Motion for Leave to Supplement, Plaintiff once again accuses Defendants of concealing e-mails that are relevant to his claims in this action and refers to an Order in an unrelated case involving a different plaintiff as support for his argument. (Doc. 448.) The Court has already addressed Plaintiff's claims regarding these e-mails and determined that all relevant e-mails have been disclosed to Plaintiff:

> Based on the parties' averments at the discovery dispute conference, it appears that emails relevant to the remaining claims in this case have been provided to Plaintiff. Even accepting Plaintiff's averment that the ADOC Defendants disclosed only emails related to them, the Court finds the disclosure sufficient, as the ADOC Defendants are not obligated to disclose information beyond what is relevant to the claims asserted against them. The Court accepts the Centurion and Corizon Defendants' averment that no further emails exist beyond what has already been disclosed or made available to Plaintiff.

(Doc. 428 at 3.) Accordingly, Plaintiff's Motion for Leave to Supplement will be denied. The Court will also deny Plaintiff's Motion for Extension of Time to file a reply to the Motion for Leave to Supplement. (Doc. 454.)

Plaintiff also seeks an extension of time to file a reply in support of his Rule 56 Declaration (Doc. 447), which the Court has construed as a response to Defendant Shuman's pending Motion for Summary Judgment (*see* Doc. 452 (construing Rule 56 Declaration as summary judgment response). (Doc. 453.) A reply to the Rule 56 Declaration would essentially amount to a surreply to Defendant Shuman's Motion for Summary Judgment. The Local Rules do not authorize filing a surreply. *See* LRCiv 7.2 (providing for response and reply memoranda only). Moreover, Defendant's Reply in Support of the Motion for Summary Judgment does not raise any new arguments in support

of summary judgment. Thus, a surreply is not proper or necessary, and Plaintiff's Motion for Extension of Time to reply to his Rule 56 Declaration will be denied.

### III.     Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and to show (1) that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and (2) that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

. . .

## IV. Exhaustion

### A. Legal Standard

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

. . .

### B.   ADC Grievance Procedure

ADC has adopted Department Order ("DO") 802, *Inmate Grievance Procedure*, to address prisoners' complaints regarding their conditions of confinement. (Doc. 440 (Def's. Statement of Facts) ¶¶ 7–8.) The version of DO 802 effective October 16, 2016 was the applicable version at the time that Plaintiff's claim in his Complaint arose. (*See* DO 802, *Inmate Grievance Procedure*, Doc. 440-2 (Def.'s Ex. A, Attach. 2).)

Pursuant to DO 802, prisoners with medical complaints must first attempt to resolve their complaints through informal means, such as discussing the issue with staff or submitting an Inmate Informal Complaint Resolution Form to their unit Correctional Officer ("CO") III. (*Id.* at 18–19, DO 802 § 2.0.)

If the prisoner is unable to resolve his or her medical issue informally, the prisoner may submit a Formal Grievance to the unit CO IV Grievance Coordinator, who will log the grievance and forward it to the Contract Facility Health Administrator ("FHA") for a response. (*Id.* at 20–21, DO 802 § 5.0.) Within 15 workdays of receiving the Formal Grievance, the FHA must investigate the grievance and prepare a written response. (*Id.*, DO 802 § 5.1.) The decision of the FHA is final and constitutes exhaustion of the medical grievance. (*Id.*, DO 802 § 5.2.)

If a prisoner does not receive a timely response from the designated prison official at any point during the grievance process, the prisoner may proceed to the next stage of the grievance process the day after the response was due. (*Id.* at 18, DO 802 § 1.10.)

### C.   Plaintiff's Relevant Grievance Records

Plaintiff has been housed at the ASPC-Florence, East Unit since April 22, 2016. (Doc. 440 ¶¶ 5–6.) Plaintiff filed his Second Amended Complaint in CV 18-03313 on July 29, 2019. (Doc. 40 in CV 18-03313.) With respect to his remaining medical care claim against Defendant Shuman, Plaintiff alleges that Defendant Shuman ordered the medical staff to stop performing blood pressure checks 4 to 6 times per day as previously ordered by a cardiologist, and that as a result of Defendant Shuman's actions, Plaintiff's blood pressure has degraded and is no longer controllable. (*Id.* at 13.)

### 1. Plaintiff's East Unit Grievance History

The ASPC-Florence, East Unit Grievance Log shows that Plaintiff submitted the following grievances: grievance number A03-068-019 received on September 30, 2019 regarding hypertension treatment; grievance number A03-054-018 received on August 1, 2019 regarding blood pressure treatment; grievance number A03-058-019 received on August 13, 2019 regarding contrabanded books; grievance number A03-045-019 received on July 22, 2019 regarding the paralegal not responding to requests; grievance number A03-051-019 received on July 24, 2019 regarding the paralegal reviewing CDs; grievance number A03-032-019 received on March 28, 2019 regarding seizure of legal materials; grievance number A03-033-019 received on March 28, 2019 regarding review of evidence/research; grievance number A03-025-019 received on February 7, 2019 regarding denial of treatment; grievance number A03-003-019 received on January 15, 2019 regarding legal calls being recorded; grievance number A03-093-018 received on October 5, 2018 regarding "Sgt Young"; grievance number A03-077-018 received on September 10, 2018 regarding release of medical records; grievance number A03-066-018 received on July 26, 2018 regarding file review/medications; and grievance number A03-067-018 received on July 26, 2018 regarding "deny certify bank[.]"  (Doc. 440-3 at 13–15, 19–21, 26–28 (Def.'s Ex. B, Attach. 1).)

The ASPC-Florence, East Unit Grievance Log also shows that Plaintiff submitted the following grievances, which were returned as unprocessed: unprocessed grievance regarding "Sgt Ramos & Medical Shoes" received on October 11, 2019; and unprocessed grievance regarding "COIV & CO III Bell" received on May 24, 2019.  (*Id.* at 33, 38.)

### 2. Plaintiff's East Unit Medical Grievances

#### a. Grievance A03-025-019

On January 10, 2019, Plaintiff submitted an Inmate Informal Complaint Resolution to COIII Mendoza in which he complained that the Corizon medical staff had changed his medication from keep on person ("KOP") to directly observed therapy ("DOT") and that this was "aggravating [his] condition."  (*Id.* at 50 (Def.'s Ex. B, Attach. 3).)

On February 1, 2019, COIII Mendoza responded: "I have scanned the informal complaint to ADON [Assistant Director of Nursing] Kabongo of East Unit via E-mail on 01//11/2019 . . . As of 02/01/2019, I have not received a response from ADON Kabongo within the timeframe allotted to respond.  Therefore I am responding to your informal complaint as unresolved at my level." (*Id.* at 51.)  COIII Mendoza informed Plaintiff that he had 5 workdays to submit a formal grievance. (*Id.*)

On February 4, 2019, Plaintiff submitted an Inmate Grievance—which was logged as number A03-025-019—complaining that Corizon had refused to continue with the treatment approved by the Chief Clinical Officer on August 28, 2016 and refused to have Plaintiff seen by specialists, and these refusals had aggravated Plaintiff's medical conditions. (*Id.* at 52.)  Specifically, Plaintiff asked to be prescribed Gabapentin 900mg every 8 hours, Zyrtec, Prednisone, Senne tabs, Doxazosin, Finasteride, Flonase, and Prilosec, and to be seen by an allergist. (*Id.*)

On March 28, 2019, FHA Adam Perkins responded:

> All orders must be reviewed at the maximum annually.  The decision to order any medication, diagnostic test, Special Needs Order or offsite specialty consult is a clinical decision based on the practitioner's medical judgment.  This is not an administrative decision based on the dictates of the patient.  If you feel you are still having issues, please submit an HNR [Health Needs Request] requesting to be seen for the issue.
>
> . . .
>
> Currently, you have received treatment for your conditions and are seen by medical staff daily.  At this time, if you have any further follow up issues specific to this grievance, please follow up with an inmate letter to the ADON of your unit.  At this time I find this matter RESOLVED and closed.
>
> . . .
>
> [T]his response is final, and constitutes exhaustion of all remedies within the Department.

(*Id.* at 53.)

**b.     Grievance A03-054-019**

On July 3, 2019, Plaintiff submitted an Inmate Informal Complaint Resolution to COIII Bell complaining that Centurion was denying him treatment for high blood pressure, pain, shakes, and tremors by refusing to give him treatment that had helped in the past. (*Id.* at 56 (Def.'s Ex. B, Attach. 4).)

On July 17, 2019, ADON E. Pontious responded that: "Your concern has been researched including a review of your Medical Records. I am providing you with the following response: An off-site consult with Cardiology is ordered. The consult is currently pending the UM [Utilization Management] teams [sic] review." (*Id.* at 57.)

Plaintiff subsequently submitted an Inmate Grievance—which was logged as grievance A03-054-019—complaining that he was being denied medical treatment for his high blood pressure. (*Id.* at 58–59.)

On August 14, 2019, Assistant FHA Trina Randall responded to the grievance as follows:

> A provider several times per month sees you, twice so far in August. You are seen by nursing often also. The decision to order any medication, diagnostic test, Special Needs Order or offsite specialty consult is a clinical decision based on the practitioner's medical judgment. This is not an administrative decision based on the dictates of the patient. If you feel you are still having issues, please submit an HNR requesting to be seen for the issue.
>
> . . .
>
> Currently, you have received treatment for your conditions and are seen by medical staff daily. At this time, if you have any further follow up issues specific to this grievance, please follow up with an inmate letter to the ADON of your unit. At this time I find this matter RESOLVED and closed.
>
> . . .
>
> [T]his response is final, and constitutes exhaustion of all remedies within the Department.

(*Id.* at 60.)

1         **c.**  **Grievance A03-068-019**

2    On September 9, 2019, Plaintiff submitted an Inmate Informal Complaint Resolution to COIII Hernandez complaining that "experts" who had reviewed Plaintiff's records were concerned about his hypertension, but when he saw the prisoner medical provider on September 5, 2019, the provider stated that "she was not concerned about [Plaintiff's] hypertension." (*Id.* at 63 (Def.'s Ex. B, Attach. 5).)

  On September 27, 2019, COIII Hernandez responded that: "Your concern has been researched including a review of your medical records. I am providing you with the following response: An offsite consult for a renal artery ultrasound is placed, per cardiology recommendations, for further evaluation of persistent high blood pressure." (*Id.* at 64.) Plaintiff was informed that he had 5 workdays to file a Formal Grievance on the issue. (*Id.*)

  Thereafter, Plaintiff submitted an Inmate Grievance—which was logged as number A03-068-019—complaining that the treatment the providers were giving him was making his medical condition worse. (*Id.* at 65.)

  On October 1, 2019, FHA Randall responded that:

> You are currently pending a renal artery ultra sound [sic], as recommended by the cardiologist. The decision to order any medication, diagnostic test, Special Needs Order or offsite specialty consult is a clinical decision based on the practitioner's medical judgment. This is not an administrative decision based on the dictates of the patient. If you feel you are still having issues, please submit an HNR requesting to be seen for the issue.
>
> . . .
>
> Currently, you have received treatment for your conditions and are pending a[n] ultra sound [sic]. At this time, if you have any further follow up issues specific to this grievance, please follow up with an inmate letter to the ADON of your unit. At this time I find this matter RESOLVED and closed.
>
> . . .

>[T]his response is final, and constitutes exhaustion of all remedies within the Department.

(*Id.* at 66.)

### D. Discussion

Defendant has presented evidence that there was an administrative remedy available to Plaintiff as outlined in the grievance process under DO 802. Plaintiff asserts that between February 2018 and June 2019, he submitted 12 grievances that were destroyed by Grievance Coordinator Bohuszewicz. (Doc. 447 at 1 (Pl. Decl. ¶¶ 2–3).) But Plaintiff does not claim that any of these grievances pertained to his remaining claim against Defendant Shuman regarding the frequency of his blood pressure checks. Moreover, although the Ninth Circuit has held that if prison officials prevent or thwart a prisoner from using an administrative remedy, it is rendered "unavailable" for the purposes of exhaustion, the record does not support a finding that the grievance process was unavailable to Plaintiff. *See Sapp v. Kimbrell*, 623 F.3d 813, 823–24 (9th Cir. 2010) ("a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted"). To the contrary, there is ample evidence that Plaintiff was able to submit various grievance documents during the time he claims his grievances were destroyed. The East Unit Grievance Log shows that Plaintiff submitted several grievances regarding a variety of issues, including medical complaints, between February 2018 and September 2019. This evidence confirms that Plaintiff had access to the grievance process during the relevant time, and Plaintiff has not created a genuine issue of fact that the grievance process was unavailable to him.

Additionally, the unrefuted record shows that Plaintiff did not complete the grievance process with respect to his claim that Defendant Shuman ordered the medical staff to stop performing blood pressure checks on Plaintiff 4 to 6 times per day. Plaintiff fully exhausted grievances A03-025-019, A03-054-019, and A03-068-019, but these grievances did not mention the frequency or adequacy of Plaintiff's daily blood pressure checks. Grievance A03-025-019 only concerned Plaintiff's allergy and pain medications. In grievances A03-054-019 and A03-068-019, Plaintiff generally complained that he was

not receiving the hypertension treatment that he had received in the past, but these grievances were not sufficient to provide notice to prison officials concerning Plaintiff's particular claim against Defendant Shuman regarding his blood pressure checks. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution").

Even if grievances A03-054-019 and A03-068-019 were construed to include Plaintiff's claim regarding his blood pressure checks, he failed to exhaust these claims prior to filing the Second Amended Complaint. The PLRA mandates that a prisoner must exhaust administrative remedies *before* filing a lawsuit invoking 42 U.S.C. § 1983; exhausting administrative remedies during the course of the lawsuit does not comply with the requirement. *Vaden*, 449 F.3d at 1050-51; *McKinney v. Carey*, 311 F.3d 1198, 1120-21 (9th Cir. 2002). The statute itself states that "[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted." 42 U.S.C. § 1997e(a). Plaintiff received responses from the FHA to grievances A03-054-019 and A03-068-019 on August 14, 2019 and October 1, 2019, respectively. But Plaintiff filed his Second Amended Complaint in CV 18-03133—in which he first alleged the blood pressure check claim against Defendant Shuman—on July 29, 2019. (Doc. 40 in CV 18-03133.) Thus, Plaintiff was still awaiting final responses from the FHA to grievances A03-054-019 and A03-068-019 when he first alleged the blood pressure check claim against Defendant Shuman on July 29, 2019. Therefore, Plaintiff failed to satisfy the PLRA requirement that a prisoner fully exhaust the grievance process before filing suit. *See Cano v. Taylor*, 739 F. 3d 1214, 1220 (9th Cir. 2014) (holding that the date of filing an amended complaint can be used in determining whether exhaustion had occurred before filing the claim for claims not pleaded in the initial complaint).

The unrefuted record shows that the grievance process in DO 802 was available to Plaintiff and that Plaintiff failed to complete this process before filing his remaining claim against Defendant Shuman. Accordingly, Plaintiff's remaining medical care claim against

Defendant Shuman will be dismissed for failure to exhaust the available administrative remedies.

**IT IS ORDERED:**

(1) Defendant Shuman's Motion for Summary Judgment (Doc. 439) is **granted**.

(2) Defendant Shuman and Plaintiff's medical care claim against Defendant Shuman regarding blood pressure checks are **dismissed without prejudice** for failure to exhaust the available administrative remedy.

(3) Plaintiff's Motion for Leave to Supplement (Doc. 448) is **denied**.

(4) Plaintiff's Motions for Extension of Time (Docs. 453, 454) are **denied**.

(5) There being no claims or Defendants remaining in this action, the Clerk of Court is directed to enter judgment in favor of Defendants and terminate both the lead action, CV 18-00066, and the consolidated action, CV 18-03133.

**Dated this 26th day of March, 2021.**

_____
Honorable Rosemary Márquez
United States District Judge