Anant Kumar Tripati 102081
Arizona State Prison-East Unit
Post Office Box 5000
Florence, Arizona 85132



Plaintiff, Pro Per

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ANANT KUMAR TRIPATI,

      Plaintiff.

Vs.
CORIZON INC et al.,

      Defendants.

CIV 18-0066   TUC RM (CONS)

NOTICE OF APPEAL AND
REQUEST FOR   COUNSEL

Plaintiff appeals the judgment and post trial motion in this matter. Due to the complexity of these issues, he asks for the appointment of counsel, to aid the court.

## **ISSUES FOR THIS APPEAL**

¶ 1 When I showed in my Rule 56(d) Declarations specific facts that are in the   documents, I asked for and defendants refused to give me, specifying what the documents were, it was error to deny that motion. **Jones v. Blanas, 393 F.3d 914 (9th Cir. 2004)**

¶ 2 When by clear and convincing evidence I showed, through documents created by Defendants and court orders by Arizona Federal Judges that Defendants, after the filing of the complaints, and while these proceedings were pending, seized evidence from me that pertained to the allegations, that were in the original

complaints in these cases, it was error to deny leave to amend/supplement. **Keith v. Volpe,   858 F.2d 467, 474 (9th Cir. 1989)**

¶ 3 When in my Rule 59 and inherent power motions, I produced court orders by Arizona Federal Judges, along with documents, showing that these Defendants and their lawyers, at the time  they denied the existence of specific records I asked for  and submitted declarations, they knew these declarations were false, it was error to refuse to vacate the judgment.

## TABLE OF CONTENTS

Issues For This Appeal  1

Table Of Contents  2

Table Of Authorities  3

Cases  3

Treatises  4

Summary Of These Exhibits  4

Reasons Why This Appeal Should Be Allowed  8

The District Court Should Have Denied Summary Judgment When I Have Shown By Clear And Convincingevidence That Defendants Have  The Evidence I Need  And Refuse To Give These To Me  8

My Rule 56(D) Applications Should Have Been Granted Because I Set Forth In Very Detail What Evidence Was Concealed, What The Evidence Would Have Revealed, And Subsequent Decision By Judge Roslyn O. Silver Is   Evidence That Are Not  Part Of Inmate Medical Records As I Have Set Forth In My 56(D) Declarations  12

I Have Shown By Orders Judge Silver And Other Arizona Federal Judges   By And Through The Use Of Strawmen, Wexford, Corizon, Centurion, Ryan, Shinn With The Attorney For Defendants, Have Deceived Federal Judges In Arizona And Judge Marquez  14

After Judge Silver Directed A Statement Under Penalty Of Perjury, Corizon, Centurion, Ryan, Shinn, Barnes, Fernandez, Quintairios And Broening Oberg Make 801(D)(2) Statements That Medical Records Do Not Have The Complete Record Of Inmate Treatment 15

After Attorney Ericke Advised Judge Silver Medical Records Do Not Have Emails, He Was Terminated By Corizon, Quintairios, Fernandez 16

I Have Shown After Arizona Attorney General Was Caught Concealing Emails, The Court Reopened Summary Judgment, Directing Crossmotion Be Filed 16

Plra Does Not Require Repeated Exhaustion Of Claims Repeatedly Rejected By The Grievance System As To The Plaintiff 16

By Clear And Convincing Evidence I Have Shown Adoc Destroys My Original Records And Then Disputes The Contents Of Records They Destroyed 19

Retaliation For Using The Grievance 20

No Available Remedy 22

Vexatious Grievance 22

These Lawyers Have   Violated The Public Policy Of Fairness And Truthseeking Used By Federal Courts 23

I Have Presented Clear And Convincing Evidence That The Evidence I Asked For And Which Defendants Denied Existed,  Exist And Would Have Changed The Results   As To Me 23

I Have By Clear And Convincing Evidence Shown That Upon Directives Of Counsel And Defendants,  Ullibarri Was Sent To Search And Seize Evidence, Hence I Should Have Been Alowed To Supplement And Or Amend My Complaint 24

Request For Appointment Of Counsel 24

Conclusion 25

# TABLE OF AUTHORITIES

## Cases

Ake v. Oklahoma, 470 U.S. 68 (1985).————————————————————————— 21

Alexander v. Robertson, 882 F.2d 421, 424 (9th Cir. 1989) ———————————————— 11

Bowmar Instrument Corp v. Texas Instruments Inc., 25 Fed. Rules. Serv. 2d. (Callaghan) 423, 427 (N.D. Ind. 1977) ———————————————————————————————— 21

Camp v. Brennan, 219 F.3d 279, 280 (3rd Cir. 2000).————————————————————————15

DeFranco v. Wolfe, 2007 WL 1704770, 4 (WD Pa. June 12, 2007).————————————————15

England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960)————————————————————————11

In re Griffith, 800 N.E.2d 259 (Mass. 2003) ————————————————————————————8

Jones v. Blanas, 393 F.3d 914 (9th Cir. 2004) ————————————————————————————1

Keith v. Volpe, 858 F.2d 467, 474 (9th Cir. 1989)————————————————————————2

Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 362 (D. Md. 2008) ————————9

Reeder v. Doe, 507 F. Supp. 2d 462, 482 n 16 (D. De. 2007)————————————————————15

Robinson v. Johnson, 343 Fed. Appx. 778, 781-82(3rd Cir. 2009).————————————————15

Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978). ————————————————11

Spruill v. Gillis, 372 F.3d 218, 234 (3rd Cir. 2004)————————————————————————15

## **TREATISES**

Alex B. Long, Attorney Deceit Statutes: Promoting Professionalism Through Criminal
  Prosecutions and Treble Damages, 44 U.C. DAVIS L. REV. 413, 423 (2010) ————————————7

General William Tecumesh————————————————————————————————————8

Robert W. Gordon, The Ethical Worlds of Large-Firm Litigators: Preliminary Observations, 67
  FORDHAM L. REV. 709, 736 (1998).—————————————————————————————————7

W. Bradley Wendel, Rediscovering Discovery Ethics, 79 MARQ. L. REV. 895, 895 (1996————————7

## **SUMMARY OF THESE EXHIBITS**

## EXHIBITS A

¶ 4 Documents created by prison officials informing me that I should not grieve the issues as to my medical condition, and they will decide what issues I shall be allowed to grieve.

## EXHIBITS B

¶ 5 Documents showing that  Grievance Coordinator, Boschuweicz is destroying grievance records, and created alternate records. They also show when I complained to ADOC management against her, they directed the person destroying the records to investigate and clear herself.

## EXHIBITS C

¶ 6 Documents shows      Boschuweicz destroys records and removing all records of grievances having being ever turned in. There is no record of these in prison records, though prison staff have signed receipts receiving them,  as Boschuweicz destroyed and altered the records.

## EXHIBITS D

¶ 7 Documents from the 13 year investigation by the Inter-American Commission on Human Rights about the conduct against me by Arizona.

## EXHIBITS E

¶ 8 Documents showing prison authorities losing my original records, and creating alternate records that support what they want the records to state, at the time the issue is being reviewed.

## EXHIBITS F

¶ 9 Documents showing   prison authorities asking prison officials to manufacture records when it pertains to me because I have challenged their falsifying evidence.

## EXHIBITS G

¶ 9 Documents showing Paul Edward Carter, counsel in this case, asking prison authorities to forge documents when it comes to me. He has done this, because since bout 1993, he has been very active in concealing evidence, falsifying evidence, in prisoner litigation, and I am one of the few who is repeatedly pointing this out to the courts, who decline to order hearings.

## EXHIBITS H

¶ 10 Court order finding Boschuweicz  retaliated and destroyed records as to inmate grievances.

## EXHIBITS I

¶ 11 Letter from counsel to ADOC director about retaliation.

## EXHIBITS J

¶ 12 Letter from counsel to Defense counsel and me about retaliation.

## EXHIBITS K

¶ 13 ADOC refused to give me records I asked for, but gave me partial records, after this case was closed, on April 23, 2021

## EXHIBITS L

¶ 14 Order directing Corizon to produce emails  because emails are not a part of inmate medical records, though they speak of inmate treatment.

## EXHIBITS M
¶ 15 Letter to Class counsel

## EXHIBITS N
¶ 16  Prison authorities directing my treatment be changed for non medical reasons.

## EXHIBITS O
¶ 17 Corizon mysteriously finds emails that they say did not exist, exactly what they told Judge Marquez.

## EXHIBITS P
¶ 18 Emails from ADOC that counsel said did not exist to Judge Marquez, similar to the order I sought, but Judge Marquez refused to issue.

## EXHIBITS Q
¶ 19 Emails from Wexford that counsel said did not exist to Judge Marquez, similar to the order I sought, but Judge Marquez refused to issue.

## EXHIBITS R
¶ 20 Emails from Centurion that counsel said did not exist to Judge Marquez, similar to the order I sought, but Judge Marquez refused to issue.

## EXHIBITS S
¶ 21 Emails from Corizon that counsel said did not exist to Judge Marquez, similar to the order I sought, but Judge Marquez refused to issue.

## EXHIBITS T

¶ 22 ADOC mysteriously finds non existent emails after court order, similar to the order I sought, but Judge Marquez refused to issue.


## EXHIBITS U

¶ 23 Corizon ordered to explain how these   non existent emails mysteriously surfaced, after court order.


## EXHIBITS V

¶ 24 Sarah Barnes, the lawyer for Centurion, obtains a false declaration from Dr. Wendy Orm that Centurion does not use emails to discuss inmate care, but subsequent emails, shows otherwise. Exhibit R


## REASONS WHY THIS APPEAL SHOULD BE ALLOWED


## THE DISTRICT COURT SHOULD HAVE
## DENIED SUMMARY JUDGMENT WHEN
## I HAVE SHOWN BY CLEAR AND CONVINCING
## EVIDENCE THAT DEFENDANTS
## HAVE  THE EVIDENCE I NEED
## AND REFUSE TO GIVE THESE TO ME


¶ I appear pro se because lawyers do not wish  to expend resources fighting Defendants, stating they engage in litigation misconduct. I have spoken to more than 100 lawyers, nationwide, since 1992, but, when it comes to Arizona, they all are unanimous, in this regards.

¶ Defendants take prisoner litigation, like war. They take the position that, as lawyers they can make prisoners   life miserable, put them through hell, and will eventually defeat your adversary. As one scholar noted, "[t]hough perceptions  differ, there seems to

be some consensus that adversary excess is frequent, often  not by any standard justifiable as zealous representation, and that many lawyers will indeed cross ethical lines when they think they can get away with  it, which, because of the weakness of monitoring agents, they usually do." **Robert W. Gordon, The Ethical Worlds of Large-Firm Litigators: Preliminary Observations, 67 FORDHAM L. REV. 709, 736 (1998).**

¶ The most harmful form of discovery abuse is likely in the form of attorney deceit, which I proved by clear and convincing evidence. No one  can dispute "the discovery system is designed to facilitate truth-finding." **W. Bradley Wendel, Rediscovering Discovery Ethics, 79 MARQ. L. REV. 895, 895 (1996).** Yet,  deception during discovery is all too common, especially with these lawyers, as I showed, Judge Roslyn Silver found . As one scholar noted, "one reason  for [attorney misconduct] is the tension inherent in the discovery process." **Alex B. Long, Attorney Deceit Statutes: Promoting Professionalism Through Criminal Prosecutions and Treble Damages, 44 U.C. DAVIS L. REV. 413, 423 (2010)**. Absent information protected by the attorney-client privilege or work product  doctrine, the rules of civil procedure require full disclosure during discovery;  yet providing an opposing party with information that might harm the  client's case seems to conflict with zealous advocacy.   I demonstrated Defendants abusing this privilege to conceal non privileged documents and regular business records, with the court rubber stamping them. This quandary appears to be a true Catch-22 from which there is no escape. Thus, when these mutually conflicting situations arise, "the natural tendency for many lawyers is to resist  the disclosure of client information"  or consciously deceive the opposing party  in order to gain a tactical advantage.

¶ Defendants violated their duty of full and fair disclosure of material facts and evidence, and their failure invalidates the judgment.   These facts and evidence   are under their control, known to them and their counsel,   affecting  my rights and interests.   I specifically requested these facts and evidence , and

Defendants denied their existence , by declarations and oral representations to the courts. They had the duty to disclose and by so doing they prevented just adjudication of my claims. **I showed how these documents show that the version of facts Defendants present are false.**

¶ There is an old adage that nice guys finish last. It is well documented that in litigation, this maxim oftentimes rings true. General **William Tecumesh Sherman stated, "War is Hell!" William Tecumseh Sherman, WIKIQUOTE,** http://en.wikiquote.org/wiki/William_Tecum seh_Sherman (last visited Jan. 5, 2016).

¶ **In re Griffith, 800 N.E.2d 259 (Mass. 2003)** an attorney was disciplined for failing to make critical disclosures during discovery and trial concerning his client's medical records and treatment. In that case, the lawyer represented the estate of Morris Pina, Jr. in a lawsuit against the City of New Bedford for police misconduct. New Bedford police officers arrested Pina and, while in custody, he died. Before commencing the trial, however, the lawyer for the estate learned that Pina was being treated for medical problems and had tested positive for human immunodeficiency virus (HIV). And when specifically asked through interrogatories whether Pina had ever been treated or admitted to a hospital prior to the alleged incident, the estate responded that it had no knowledge of any treatment or admissions. These responses were false. The estate was also served with a request for documents, including a request to produce all medical records with any doctor or hospital rendering treatment on behalf of Pina for a period of five years prior to Pina's death. The lawyer never produced the documents he had in his possession that would have been responsive to this request. Furthermore, the attorney retained an expert economist to testify on damages arising from Pina's alleged wrongful death. However, the lawyer never told the expert about the HIV. Accordingly, the expert calculated the decedent's total loss of pleasure of life exceeded two million dollars.

¶ At trial, the estate was awarded damages in the amount of $435,000. But, during trial the defendant learned of the HIV and

opposing counsel's calculated efforts to conceal this material information. Following trial, the parties settled for $555,000 and defense counsel sought sanctions against the lawyer, alleging that he had withheld this critical information during discovery and trial. After a hearing, the judge entered an order in which he found that the lawyer had "engaged in a pattern of activity to hide [Pina's HIV status] from the defendants and initially . . . from the court, and had engaged in deliberate misconduct in connection with [plaintiff's] responses to the defendants' interrogatories."

¶ Violating or otherwise ignoring these discovery-based rules have broad implications. As **Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 362 (D. Md. 2008)** (citation omitted) noted, a lawyer who makes boilerplate objections to discovery requests without particularizing their basis, or who is evasive or incomplete in responding to discovery, or pursues discovery in order to make the cost for his or her adversary so great that the case settles to avoid the transaction costs, or who delays the completion of discovery to prolong the litigation in order to achieve a tactical advantage, or who engages in any of the myriad forms of discovery abuse that are so commonplace is . . . hindering the adjudication process, and . . . violating his or her duty of loyalty to the "procedures and institutions" the adversary system is intended to serve. I provided orders by Arizona Federal Judges showing this. **EXHIBITS   L T, U**

¶ The Advisory Committee's Notes to Rule 26(g) provide further guidance: Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through . In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions. The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. ... If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act

responsibly and avoid abuse. I provided clear and convincing evidence of this and the court declined to do anything because I am a prisoner. **EXHIBITS L T, U**

¶ Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud. **Universal Oil Prods. Co. v. Root Refining Co., 328 U.S. 575 (1946)** Though I provided clear and convincing evidence of this, the court declined to take any action, because these persons happen to be lawyers. **EXHIBITS L T, U**

¶The logic is clear: "[T]he law favors discovery and correction of corruption of the judicial process even more than it requires an end to lawsuits." The United States Supreme Court—in a case a few years after the Hazel- Atlas case—discussed some of the appropriate procedures used in adjudicating fraud on the court claims. The power to unearth such a fraud is the power to unearth it effectively.

## MY RULE 56(d) APPLICATIONS SHOULD HAVE BEEN GRANTED BECAUSE I SET FORTH IN VERY DETAIL WHAT EVIDENCE WAS CONCEALED, WHAT THE EVIDENCE WOULD HAVE REVEALED, AND SUBSEQUENT DECISION BY JUDGE ROSLYN O. SILVER IS EVIDENCE THAT ARE NOT PART OF INMATE MEDICAL RECORDS AS I HAVE SET FORTH IN MY 56(d) DECLARATIONS

¶ I filed Rule 56(d) declarations showing the court how the ADOC, Corizon, Centurion systems work and how records are generated, and that the emails are not in my medical and prison records. **I**

**also showed how I know these emails exist, and how, when produced, they would result in a decision in my favor.**

¶Counsel submitted declarations and pleadings denying these facts made by me. Defendants had the court decide this case on manufactured facts and I showed this by clear and convincing evidence. **Alexander v. Robertson, 882 F.2d 421, 424 (9th Cir. 1989) England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960) Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978).**

¶In plain language by letter Assistant Arizona Attorney General Paul carter advised me he shall not give me these documents and I gave that letter to the judge. (See Exhibits J, letter concerning the role of Paul Carter in falsifying evidence as to me)

¶    By orders of District Judge Roslyn Silver and the Magistrate Judge,      Corizon, Ryan, Shinn released never before seen documents . **EXHIBITS L  T, U**

¶  The Wexford emails going to July 2012   show Centurion May 20, 2020    Corizon going to 2013    Ryan Shinn emails going to December 14, 2011   show that those in the prisons, healthcare providers and other prison employees, do not make decisions. They are straw men who signoff . **EXHIBITS L  T, U**

¶ For example, Igwe **(my healthcare provider)**  had to get approval to provide treatment **(one of my allegations),** Sego the FHA had to get approval about Pentaho Reports which I asked for and they said did not exist . Dr. Johnson had to direct Kary **(my provider)** to defer treatment **(one of my allegations)** Dr. Robertson directs the treatment be given   **(directed my treatment stopped) (one of my allegations that ADOC Central Office staff not providers were directing my treatment and emails support this fact)** Wexford Mullinex directed treatment **(one of my allegations)**   Dr. Whalen for Centurion directed Igwe provide care   directives were sent by emails as to what care to be given. **(one of my allegations)** Centurion Barnes had Dr. Orm give a declaration    used before

Judges Silver and Liburdi stating "Centurion providers do not communicate patient care issues through email" a fact they knew was false. **(one of my allegations)**    Wexford, Centurion, Corizon, Ryan and Shinn obtained declarations by straw men, who stated they were exercising their independent professional judgment in making healthcare decisions, when these emails show otherwise. **(one of my allegations)**   Decisions are actually made by Wexford, Corizon, Centurion, Ryan and Shinn corporate employees. **(one of my allegations)**   With these emails, these prisoners would have prevailed. These are not discrete acts but continuing wrongful conduct, concealing material facts. **(one of my allegations)** **EXHIBITS L  T, U**

## <u>I HAVE SHOWN BY ORDERS JUDGE SILVER AND OTHER ARIZONA FEDERAL JUDGES   BY AND THROUGH THE USE OF STRAWMEN, WEXFORD, CORIZON, CENTURION, RYAN, SHINN WITH THE ATTORNEY FOR DEFENDANTS, HAVE DECEIVED FEDERAL JUDGES IN ARIZONA AND JUDGE MARQUEZ</u>

¶    Attached email    dated January 30, 2019 is a sample of documents that I read. In this document the Director of ADOC Health Services directed providers to change medical treatment for non medical reasons. I read about 200 such directives from ADC including Johnson,  Erwin,  and others, 22 from Wexford, 35 from Corizon, 62 from Arizona Attorney General's Office employees Copple, Gottfried, Carter, O'Toole, Morrissey, Brodsky, and others.

¶ By orders of District Judge Roslyn Silver and the Magistrate Judge    Corizon, Ryan, Shinn released, never before seen documents on March 10, 2021 and March 19, 2021    They submitted a 31 Page privilege log, showing that their previous contentions, made in prisoner litigation nationwide, that documents do not exist, are false. **EXHIBITS K,T,U**

## AFTER JUDGE SILVER DIRECTED A STATEMENT UNDER PENALTY OF PERJURY, CORIZON, CENTURION, RYAN, SHINN, BARNES, FERNANDEZ, QUINTAIRIOS AND BROENING OBERG MAKE 801(d)(2) STATEMENTS THAT MEDICAL RECORDS DO NOT HAVE THE COMPLETE RECORD OF INMATE TREATMENT

¶ Counsel for the Centurion and Corizon Defendants averred that communications concerning Plaintiff's medical care are contained in Plaintiff's medical records, which he has been provided or had access to, and that neither Centurion nor Corizon Defendants have any further emails." (Doc 428 CV 18-0066 RM pp 2 line 25-28). This is a material false statement for this was and has never been done. These attached emails, and exhibits show these representations are and were false, and they knew they to be false.

¶ "Within fourteen days of this Order, Corizon and Corizon employees must file a statement explaining which emails were provided to Plaintiff. If no emails were provided, Corizon and Corizon employees must provide a declaration, under penalty of perjury, explaining why no emails were available for production." (Judge Roslyn Silver 19-CV 04638 ROS JFM Shank v Corizon Doc 93 pp 4 line 9-13)

¶ Fernandez and Quinairos Prieto represented in Doc 96 "An extensive email search was completed and Defendants were just granted access to these search results today" (19-CV 04638 ROS JFM Shank v Corizon Doc 96 line 18-20) When a declaration under penalty of perjury was ordered, all of a sudden emails surface.

¶ Fernandez, Quintairios, Ryan, Shinn And Corizon Admit They Have Concealed Evidence After Judge Roslyn O. Silver Directs Statement Be Given Under Penalty Of Perjury submitting an extensive privileged log on documents they contend do not exist

¶ When I presented this evidence to the court, the judge declined to issue an order, though this showed, evidence exists.

## AFTER ATTORNEY ERICKE ADVISED JUDGE SILVER MEDICAL RECORDS DO NOT HAVE EMAILS, HE WAS TERMINATED BY CORIZON, QUINTAIRIOS, FERNANDEZ

¶ Attorney Jaric Ericke advised Judge Silver that Corizon concealed emails. Corizon, Quintarios, Fernandez terminated his services for advising the court that Corizon Quintairos concealed evidence. This shows that Corizon and counsel do not want to disclose evidence in inmate litigation.

## I HAVE SHOWN AFTER ARIZONA ATTORNEY GENERAL WAS CAUGHT CONCEALING EMAILS, THE COURT REOPENED SUMMARY JUDGMENT, DIRECTING CROSSMOTION BE FILED

¶ Gottfried represented "Counsel for the ADOC Defendants averred at the hearing that Defendants searched ADOC's email records for Plaintiff's name and provided Plaintiff with all non-privileged emails within the time period relevant to his current complaints, along with a privilege log" (Doc 428 CV 18-0066 RM pp 2 line 22-25). This is a material false statement for this was and has never been done. **EXHIBITS T** they made a similar representation and when the judge ordered emails searched, they provided emails, resulting in the court ordering reopening of summary judgment briefings.

## PLRA DOES NOT REQUIRE REPEATED EXHAUSTION OF CLAIMS REPEATEDLY REJECTED BY THE GRIEVANCE SYSTEM AS TO THE PLAINTIFF

¶ Application of grievance policy must not be inconsistent with 1983. **Spruill v. Gillis, 372 F.3d 218, 234 (3rd Cir. 2004)**

¶ There is only one Arizona State Prison and it is their grievance policy that governs. PLRA does not apply to Corizon, or Centurion,

but to the prison system. When the prison system is presented the claims, they are exhausted. Exhaustion is governed by policy of the prison. I exhausted these remedies over and over as to the clams on prison conditions. And no declaration reflects otherwise. **DeFranco v. Wolfe, 2007 WL 1704770, 4 (WD Pa. June 12, 2007)**.

¶ From the declarations Defendants submitted, they, selectively omit the fact that I repeatedly have presented my claims through the grievance process, and these claims have been rejected. Allegations have been repeatedly reported through the grievance processes, investigated, rejected, hence not requiring further exhaustion. **Camp v. Brennan, 219 F.3d 279, 280 (3rd Cir. 2000).** These actions taken were through policies Shinn adopted. **Robinson v. Johnson, 343 Fed. Appx. 778, 781-82(3rd Cir. 2009).**


¶ I clearly identified the threats I received from Boschuweicz and how she took retaliatory actions against me by having Ullibarri seize privileged documents, documents as to this litigation, and advised me I shall be moved if I insist . There must be a shared factual basis, not perfect overlap, between grievance and complaint. **Reeder v. Doe, 507 F. Supp. 2d 462, 482 n 16 (D. De. 2007)** I have been told not to grieve these issues and Deputy Warden Arnold has informed me ADOC will decide what grievances ADOC shall file.


¶ I have been directed by Co IV John Mattos not to grieve these issues. Mr. Mattos stated "These issues have been sent through our grievance process and you no longer have to grieve these issues since they have been grieved previously." February 20, 2018 I submitted a grievance appeal to the Director stating "I have given Moore, Radford, Boschuweicz, Mendoza in excess of 12 grievances. Boschuweicz called me to her office. When I refused to withdraw these Boschuweicz –in my presence shredded these grievances. She told me if I complained she will say there is no record, and no one

will believe me. She should be disciplined and the grievances recorded." **EXHIBITS A**

¶    June 2, 2019 I submitted a grievance appeal to the director "Between February 2018 through June 2019 I have turned in 12 grievances and appeals and all have been destroyed by the CO IV. These are no record of these. I ask they be located." All these have been turned in as appeals and there is no record of these. These have been destroyed. Boshuweicz destroys the complete grievance records and these Exhibits are proof of this fact. **EXHIBITS A**

¶    I have been told by Boschuweicz in early 2018 if I were to continue the grievance process, she shall have me disciplined and moved. I lodged complaints about this threats but no action was taken.

¶    As I have seen Boschuweicz move inmates Williams, Reed, Sheppard and others for using the grievance process, I knew she would move me, if I used the process.

¶    I know she can do this because after Debra Han told me not to grieve issues which I grieved, she had me moved to East Unit in April 2016.

¶ In 2010 when I insisted on using the grievance process DW Anna Jacobs had me moved from Santa Rita to Manzanita.

¶ In 2009 when I insisted on grieving Charles Ryan I was moved by the CO IV from Cimmaron to Santa Rita.

¶    In 2006 when I insisted on using the grieving process Jenniffer Romwebber had me moved from Barchey to Cook.

¶    So based on my past experience I know if I did not listen to Boschuweicz she would have moved me.

¶    As retaliation for using the grievance process and courts,  In March 2019 upon the orders of Boschuweicz, Erwin, Glynn, Dudley, Ryan and others, Ullibarri took 35 CDS/DVDS with privileged documents, kept these for 79 days, and 14 of these are missing.

## **BY CLEAR AND CONVINCING EVIDENCE I HAVE SHOWN ADOC DESTROYS MY ORIGINAL RECORDS AND THEN DISPUTES THE CONTENTS OF RECORDS THEY DESTROYED**

¶    ADOC destroys my records as a matter of routine and then disputes the contents of the records ADOC destroys.

¶ Daryl Johnson sent a memo  asking staff to retaliate against me. As a consequence from four secure locations my records were destroyed and I prevailed in the grievance process,    and Defendants denied the contents of these records, though emails support them. As these records exposed Johnson, Klausner, Ryan, Carter, Morrissey, Attorney General's staff and others to liability, Johnson had Shelly Sonberg declare the reconstructed records invalid. **THIS HAS NEVER BEEN DONE PREVIOUSLY IN THE HISTORY OF THE ARIZONA PRISON SYSTEM.**    Defendants then disputed the contents of the records.

¶  My medical records were also destroyed   as a consequence of Johnson's memo. Defendants denied me the treatment that I received and were in these records they destroyed. **EXHIBITS D**

¶    In order to prevent me from seeking relief in courts my legal materials were lost    preventing me from seeking PCR relief and presenting evidence. Paul Carter had CO III Diana Bullock forge documents    and Erwin, Ullibarri, Dossett, Glynn, Boschuweicz. Johnson, Klausner, Ryan, Carter, Morrissey, Attorney General's staff, Ryan, Shinn directed prison officials **not to follow policy** as to legal access when it came to me.

¶    In March 2019 upon the orders of Boschuweicz, Erwin, Glynn, Dudley, Ryan  and others, Ullibarri took 35 CDS/DVDS with

privileged documents, kept these for 79 days, and 14 of these are missing  Defendants disp uted the contents of these.

¶      Boschuweicz in no uncertain terms advised me that my grievances were destroyed when I spoke to her in early 2018 and 2020. In fact in early 2018 she called me to her office about 12 grievances. Boschuweicz asked me to withdraw them. When I refused to withdraw these, in my presence, Boschuweicz shredded these. She told me these are now resolved and that if I were to complain, no one would believe me. I submitted appeals to the Director about her destroying these grievances, and not keeping records, of grievances I submitted.

¶      In line with the ADOC practice of destroying my records and disputing their existence, Boschuweicz denied there was any record that my grievances were unprocessed.

## RETALIATION FOR USING THE GRIEVANCE

¶    As retaliation for my using the grievance process Boschuweicz had Ullibarri seize 35 CDS and 14 are missing. ADOC as retaliation lost my legal documents preventing me from seeker PCR relief .

¶    I have been moved 21 times as retaliation for using the grievance process and judicial process.

¶    I have  also been directed by Deputy Warden James Arnold that ADOC will decide whether or not they will allow me  to grieve issues and what issues I  will be allowed to grieve.   Cheryl Dossett has repeatedly told me  in writing that issues will not be addressed when I have  submitted appeals.  I have presented these issues too many times through the grievance process and obtained no relief.

CO IV Diane Boschuweicz has destroyed the grievances I gave her and told me if I insist on grieving the issues, I shall be transferred again.

¶ Recently Judge G. Murray Snow issued an order finding colorable and scheduling a evidentiary hearing, that Boschuweicz is destroying grievance records and retaliating, Gottfried waived the defense, as Gottfried cannot put Boschuweicz on the stand. She will lie as emails by her which Gottfried conceals contradict what she states.

¶ The documents that I asked for and which were concealed contradict the assertion by Defendants Corizon; Centurion; Ryan; Shinn; and show most, if not susbstantial part of the allegations I contend are correct.

¶ I have no available administrative remedies because those who administer the process have been directed to not afford him relief. Boscuhweicz destroys all grievance records and Gottfried are aware of this have refused to ensure corrective action be taken.

¶ These documents sought show the regular manner by which ADOC responds to inmates who use the grievance and litigation process to challenge the misconduct by prisoner employees is retaliation.I have stated and documents attached support this fact, that Central Office employees and Attorney General staff have directed I be retaliated against.

¶ I have also stated that as retaliation for my access to courts and using the grievance process, ADOC Central Office staff with approval of Attorney Genera's staff have directed staff deny me access to courts, discipline me, change orders against me. The attached documents support this.

¶ I presented these issues too many times through the grievance process and obtained no relief. CO IV Diane Boschuweicz has destroyed the grievances I gave her, and told me if I insists on grieving, I shall be transferred again. On December 20, 2020 I

again contacted the administration about these issues, and Deputy Warden Patrick O'Brien refused to take any action. Recently, Judge G. Murray Snow of Phoenix, Arizona issued an order finding Boschuweicz is destroying inmate grievances and retaliating, scheduling an evidentiary hearing, but Gottfried waived the defense, as Gottfried fears, Boschuweicz will lie under oath, and Gottfried has concealed emails that show Boschuweicz destroys records and retaliates.

## NO AVAILABLE REMEDY

¶   I have no available administrative remedies because those who administer the process have been directed to not afford  me relief. Boscuhweicz destroys all grievance records and Gottfried;   aware of this have refused to ensure corrective action be taken. December 20, 2020 when I brought this to the attention of Deputy Warden Patrck O'Brien, he covered this up.   I have no available administrative remedies for these reasons      and because those who administer the process have been directed to not afford me relief. Boscuhweicz destroys all grievance records and Gottfried; aware of this have refused to ensure corrective action be taken, and as I have been transferred  as retaliation.

## VEXATIOUS GRIEVANCE

¶   I know Boshuweicz had the authority to place me on the vexatious grievance list as she placed inmate Reed 108264 on it.

¶   I was put on the grievance abuse list by DW James Arnold in 2006 and am still on it because I insisted on using the grievance .

¶   I have repeatedly been told by Cherly Dossett Central Office grievance officer not to grieve issues previously decided, even if there are new facts, because issues one decided, are final.

¶    Julliette Respicio-Moriarity Central Office Medical Grievance officer sent a email to CO IV Nelson and directed him to tell me not to grieve issues as to my blood pressure, medication etc, because Central Office has decided these against me.

## THESE LAWYERS HAVE   VIOLATED THE PUBLIC POLICY OF FAIRNESS AND TRUTHSEEKING USED BY FEDERAL COURTS

¶ The public policy of federal courts is truth seeking and fairness which is not satisfied by access to the courthouse doors  **Ake v. Oklahoma, 470 U.S. 68 (1985).** In other words the "fact- finding process in our courts (must not) be reduced to a mockery" (text modified for emphasis). **Bowmar Instrument Corp v. Texas Instruments Inc., 25 Fed. Rules. Serv. 2d. (Callaghan) 423, 427 (N.D. Ind. 1977). Williams v BASF Catalysts, 765 F3d 306 (3rd Cir.2014)**

¶ The 56(d) declarations and orders by other Arizona Federal judges that I presented,   show    how emails concealed by Defendants mysteriously appeared when    Judge Roslyn Silver ordered a declaration under penalty of perjury be submitted, violating the public policy of federal courts.

## I HAVE PRESENTED CLEAR AND CONVINCING EVIDENCE THAT THE EVIDENCE I ASKED FOR AND WHICH DEFENDANTS DENIED EXISTED,   EXIST  AND WOULD HAVE CHANGED THE RESULTS    AS TO ME

¶ I have through court orders that medical records and prison records do not have    emails, internal reports, audits, directives to staff, directives not to treat me, directives to retaliate against me,

complaints against Corizon, Ullibari Centurion, and employees who took actions on their behalf against me. These would have changed the results in the cases from which these were concealed, and Plaintiff would have prevailed .

## I HAVE BY CLEAR AND CONVINCING EVIDENCE SHOWN THAT UPON DIRECTIVES OF COUNSEL AND DEFENDANTS, ULLIBARRI WAS SENT TO SEARCH AND SEIZE EVIDENCE, HENCE I SHOULD HAVE BEEN ALOWED TO SUPPLEMENT AND OR AMEND MY COMPLAINT

¶ In May 2018 I received CDS/DVDS from counsel and this was the first time that I saw documents that reflect the concealment of evidence, a subject matter of this case. I have been told by Boschuweicz that Ullibarri gave these privileged documents that were on CDS/DVDS to Erwin and Glynn, and their contents discussed with Gottfried, and counsel for Corizon, Centurion and Wexford by orders of Ryan. Shelby Negron advised me that documents on Wexford were mailed to Wexford in Pittsburgh by her. The evidence that I read on the CDS/DVDS I received in May 2018 were not presented to the judges in the cases, because Defendants concealed them, for had they been presented Plaintiff would have prevailed in the litigation. In no uncertain terms the documents that I read in these CDS/DVDS from Weber Gallagher, Wexford, Corizon, Centurion, Centurion LLC, Gottfried, , Morrissey, Klausner, Struck and others , direct lawyers, not to disclose evidence to prisoners and to use every procedural device to frustrate prisoner litigation .

## REQUEST FOR APPOINTMENT OF COUNSEL

¶   The issues in this case are highly technical and complex. The Arizona Prison System does not have law libraries. I ask that counsel be appointed to aid the court in this matter.

## **CONCLUSION**

¶ Plaintiff submits this Notice of Appeal, asks for Leave to appeal and requests counsel. These issues of fact and law are very complex, and counsel can better aid the Honorable court to adequately resolve this matter.

Respectfully submitted,

ANANT KUMAR TRIPATI